FILED
KENNETH J. MURPHY

00 SEP 29 PM 12: 49

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

CLIFFORD D. WILLIAMS    :    CASE NO. 1:99CV438

       Petitioner,    :

     :    JUDGE SMITH
     :    MAGISTRATE JUDGE KING

v.    :

     :

BETTY MITCHELL, Warden    :

     :

       Respondent.    :

## RESPONDENT BETTY MITCHELL'S RETURN OF WRIT

**BETTY D. MONTGOMERY**
Attorney General

STUART A. COLE (0020237)
Assistant Attorney General
Capital Crimes Section
State Office Tower
30 East Broad Street, 26th Floor
Columbus, Ohio 43215-3428
(614) 728-7055
(614) 728-8600 (FAX)

**COUNSEL FOR RESPONDENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

STATEMENT OF THE CASE ................................................................ 2

AEDPA - STANDARD OF REVIEW ....................................................20

   1. Introduction ........................................................................20

   2. Exhaustion ..........................................................................20

   3. Claims Adjudicated on the Merits in State Court ...................21

   4. Presumption of Correctness ................................................22

   5. Evidentiary Hearing ...........................................................24

   6. Applicability to Williams' Petition .......................................25

PROCEDURAL DEFAULT ...................................................................26

   A. Claims not Raised in the State Courts ..................................26

   B. Claims Barred in State Post-Conviction Proceedings .............27

   C. Plain Error Review ..............................................................29

   D. Claim Based on Different Theory ..........................................29

STATEMENT OF FACTS .....................................................................31

DISCUSSION OF CLAIMS PRESENTED ................................................34

   First and second grounds for relief .........................................34

      Procedural Posture .........................................................34

      **Williams was not deprived of a fundamentally fair trial by the proper joinder of the charges against him. Severance is not constitutionally required where evidence of each of the joined offenses would be admissible at separate trial as "other acts" evidence. Moreover the evidence of the shooting and aggravated robbery of Jeff Wallace was properly admitted as constituting probative evidence of Williams' identity and as tending to prove the aggravating circumstances.** .....................34

   Third ground for relief ..........................................................39

ii

Procedural Posture....................................................................... 39

**Williams was not deprived of any material evidence.**...............................39

Fourth ground for relief ..............................................................44

    Procedural Posture.....................................................................44

**State procedural rule violations are not cognizable in federal habeas corpus. Moreover, Ohio Criminal Rule 16(B)(1)(g) was not violated by the failure to preserve the cumulative and consistent statement of James Trivett.** ...................................46

Fifth Ground for Relief................................................................48

    Procedural Posture.....................................................................48

**It was not constitutional error for the trial court to properly instruct the jury on Ohio law**...............................................................48

Sixth Ground for Relief...............................................................57

    Procedural Posture.....................................................................57

**The trial court correctly provided the jury with instructions containing an accurate definition of aggravating circumstances as defined in Ohio Revised Code Section 2929.04**...............................57

Seventh Ground for Relief............................................................59

    Procedural Posture.....................................................................59

**The prosecutor did not improperly comment on the nature and circumstances of Williams' offense.**.................................................60

Eighth ground for relief.............................................................62

    Procedural Posture.....................................................................62

**Williams' conviction was not contrary to the manifest weight of the evidence.** ..................................................................................62

Ninth ground for relief..............................................................66

    Procedural Posture.....................................................................66

**Williams was not constitutionally entitled to a "mitigation specialist" to assist appointed counsel in preparation for the penalty phase of Williams' trial**...............................................................66

Tenth and eleventh ground for relief ............................................69

    Procedural Posture.....................................................................69

**Williams was accorded the effective assistance of counsel at trial**.....................................................................................................70

Twelfth ground for relief..................................................................80

    Procedural Posture............................................................80

    **It was not constitutional error for the trial court to properly instruct the jury**...............................................................80

Thirteenth ground for relief ..........................................................82

    Procedural Posture............................................................82

    **Williams was not denied fundamental fairness by the trial court's discretionary decision to refuse to compel the prosecutor to disclose the identity of the confidential informant.** ..............82

Fourteenth ground for relief ........................................................84

    Procedural Posture............................................................84

    **Williams was accorded the effective assistance of appellate counsel during his direct appeal.**.........................................84

Fifteenth ground for relief............................................................88

    Procedural Posture............................................................88

    **Federal habeas corpus cannot be used to challenge alleged errors and deficiencies from state post-conviction proceedings**...................88

Sixteenth ground for relief ..........................................................90

    Procedural Posture............................................................90

    **The prosecutor's comments did not deprive Williams of a fundamentally fair trial.** ..................................................91

Seventeenth ground for relief ....................................................102

    Procedural Posture..........................................................102

    **Williams was not denied fundamental fairness by proper trial court discretionary decisions to deny various Williams' motions.** ............ 103

Eighteenth ground for relief......................................................107

    Procedural Posture..........................................................107

    **The trial court did not commit constitutional error when it properly questioned prospective jurors on their relationship with law enforcement officers, refused to exclude qualified jurors, and excluded a juror unequivocally opposed to the death penalty**.................................................................107

Nineteenth ground for relief .................................................................112

    Procedural Posture..................................................................112

    **Williams was not denied a fundamentally fair trial by well-reasoned trial court discretionary decisions.** ...........................112

Twentieth ground for relief ....................................................................116

    Procedural Posture .................................................................116

    **The "cumulative effect" of Williams' allegations do not amount to a constitutional deprivation.** ................................................116

Twenty-first ground for relief ................................................................117

    Procedural Posture..................................................................117

    **In a death penalty case, statistical evidence is insufficient to demonstrate a violation of the Equal Protection Clause.**...........117

Twenty-second ground for relief ...........................................................118

    Procedural Posture .................................................................118

    **Ohio's statutory framework for the imposition of capital punishment is constitutional.** ..............................................119

Twenty-third ground for relief ...............................................................129

    Procedural Posture..................................................................129

    **Federal habeas corpus cannot be used to challenge alleged errors and deficiencies from state post-conviction proceedings**..............130

Twenty-fourth ground for relief .............................................................132

    Procedural Posture..................................................................132

    **Williams' constitutional rights were not violated by the Ohio Supreme Court's proper denial of his motion to supplement.**...................133

CONCLUSION ......................................................................................136

CERTIFICATE OF SERVICE ..................................................................137

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CLIFFORD D. WILLIAMS | : | CASE NO. 1:99CV438 |
| | : | |
| Petitioner, | : | JUDGE SMITH |
| | : | MAGISTRATE JUDGE KING |
| v. | : | |
| | : | |
| BETTY MITCHELL, Warden | : | |
| | : | |
| Respondent. | : | |

## RESPONDENT BETTY MITCHELL'S RETURN OF WRIT

**Introduction**

Petitioner Clifford Donta Williams, #237-994 (hereinafter Williams), has been sentenced to death by the courts in the State of Ohio. On June 11, 1999, Williams filed in this Court a one-hundred-thirty-four (134) page petition for writ of habeas corpus pursuant to 28 U.S.C. Section 2254. On August 8, 2000, this Court issued a scheduling order, which required the filing of a response to Williams' petition by September 30, 2000. Although this Court's Order requires Respondent to respond only to issues of waiver[1], Respondent has addressed both the procedural posture and merits of claims contained within Williams petition in the hope that this case can proceed to a timely disposition.

---

[1]  As discussed below, Respondent is asserting procedural default as to relatively few of Williams' grounds for relief.

Statement of the Case

Respondent Betty Mitchell (hereinafter Respondent) denies each and every allegation contained in the instant petition for writ of habeas corpus, except as may be expressly admitted in this return and any attachments hereto. Respondent says that, as Warden of the Mansfield Correctional Institute, she has custody of Williams by virtue of a journal entry of sentence issued by the Court of Common Pleas of Butler County, in *State v. Williams*, Case No. CR90-08-0665.

On August 03, 1990, Clifford Williams murdered Wayman Hamilton, a taxi cab driver, by inflicting a single gunshot wound to the head at close range while committing robbery. Three days later, on August 06, 1990, Williams also robbed Jeff Wallace and shot him in the head. Williams was charged under a four-count indictment on September 19, 1990 by the September, 1990 Term of the Butler County Grand Jury. (Apx. at Vol. I, p.60).

Count one charged Williams with the aggravated murder of Wayman Hamilton in violation of Ohio Revised Code Section 2903.01(B) with two death penalty specifications and a firearm specification. The first death penalty specification to count one charged Williams with committing the offense while committing or attempting to commit an aggravated robbery pursuant to Ohio Revised Code Section 2929.04(A)(7). The second death penalty specification to count one of the indictment charged Williams with committing the murder for the purpose of escaping detection, apprehension, trial, or punishment for another offense pursuant to Ohio Revised Code Section 2929.04(A)(3). The firearm specification to count one charged Williams with having a firearm on or about his

2

person or under his control while committing the offense in violation of Ohio Revised Code Sections 2929.71 and 2941.141. Count two of the indictment charged Williams with the aggravated robbery of Wayman Hamilton pursuant to Ohio Revised Code Section 2911.01(A)(1) with a firearm specification. Count three charged Williams with the aggravated robbery of Jeff Wallace in violation of Ohio Revised Code Section 2911.01(A)(1) with a firearm specification. Count four charged Williams with the felonious assault of Jeff Wallace in violation of Ohio Revised Code Section 2903.11(A)(2) with a firearm specification.

Williams was arrested and arraigned. On September 21, 1990 Williams plead not guilty to all charges. The cause came for trial before a jury on January 07, 1991 where Williams was found guilty on all counts on January 18, 1991. (Apx. at Vol. II, p. 8).

On January 2, 1991, one day prior to the scheduled commencement of trial, Williams' counsel filed a motion and affidavits in support of the disqualification of Judge Anthony Valen. (Apx. at Vol. I, p. 394). The Ohio Supreme Court dismissed the affidavit of disqualification based on Williams' failure to timely file pursuant to Ohio Revised Code Section 2701.03. The Ohio Supreme Court further held that "unsworn allegations" do not support a finding of prejudice. *In re Disqualification of Valen,* 652 N.E.2d 793 (1991). (Apx. at Vol. I, p. 468).

A penalty phase hearing was held on January 17, 1991 pursuant to Ohio Revised Code Section 2929.04(B) and on January 18, 1991 the jury made the recommendation that the sentence of death be imposed pursuant to Ohio Revised Code Section 2929.03(D)(2). In accordance with Ohio Revised Code Section

3

2929.03(D)(3), the trial court thereafter independently reviewed the relevant evidence, found that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt and adopted the jury's recommendation that the sentence of death be imposed. (Apx. at Vol. II, p. 27, Case No. CR90-08-0665). Williams was further sentenced to a term of ten to twenty-five years for the aggravated robbery and an additional term of three years actual incarceration for the firearm specification in count two. Williams was sentenced to a term of ten to twenty-five years for the aggravated robbery and an additional term of three years actual incarceration for the firearm specification in count three. Williams was also sentenced to a term of eight to fifteen years as to the felonious assault in count four.

Williams filed a timely notice of appeal of his conviction to the Court of Appeals of Ohio for the Twelfth District, Butler County on April 5, 1991 (Case No. CA91-04-060, CA92-06-110). (Apx. at Vol. II, p. 51). Williams then filed a merit brief on January 21, 1992 alleging the following eight assignments of error:

1. The court erred in failing to sever counts one and two, the charges dealing with Hamilton's murder, from counts three and four, the charges dealing with Jeff Wallace.

2. The trial court erred by instructing the jury at the penalty phase that they could consider all of the evidence presented at the guilt phase of the trial.

3. The jury's verdict is against the manifest weight of the evidence and contrary to law.

4. The trial court erred in instructing the jury during the penalty phase that the jury's verdict regarding the death penalty was only a recommendation to the judge.

4

5. The proportionality review is arbitrary and capricious and favors the imposition of the death penalty as mandated by O.R.C. §2929.05.

6. The trial court erred when it overruled various pre-trial motions "pertaining to constitutional rights and the legal aspects of Ohio's death penalty statute."

7. The trial court erred in overruling Williams' motion for a new trial.

8. The prosecution's closing arguments in both the guilt and penalty phases denied him a fair trial.

(Apx. at Vol. II, p. 88). On March 21, 1992, the State filed a merit brief in response. (Apx. at Vol. II, p. 135). The court issued a memorandum decision and judgment entry on November 2, 1992, pursuant to Ohio Revised Code Sections 2929.04(B) *et.seq.* and 2929.05., affirming the trial court's decision. *State v. Williams*, 1992 WL 317025 unreported. (Apx. at Vol. II, p. 210, Case Nos. CA91-04-060/CA92-06-110).

Williams' case was then transferred to the Public Defenders office.[2]

---

[2] The Court of Appeals affirmed Williams' conviction and sentence on November 02, 1992. (Apx. at Vol. II, p. 210). On December 01, 1992, Williams filed a timely notice of appeal. (Apx. at Vol. II, p. 246). Williams filed a notice of entry of counsel in the Supreme Court of Ohio on February 04, 1993 (Apx. at Vol. II, p. 258) and filed original papers with the Supreme Court of Ohio of March 16 and 18, 1993. Williams' merit brief was thereby due to be filed no later than April 27, 1993, see S.Ct.Prac.R. V, § 1. On May 24, 1993, the State filed a motion to show cause as to why the case should not be dismissed for a lack of prosecution. (Apx. at Vol II, p. 262). Williams filed a motion and memorandum in response. (Apx. at Vol. II, p. 265). On August 4, 1993, the Ohio Supreme Court denied the State's motion. (Apx. at Vol. II, p. 274). The appeal was pending in the Ohio Supreme Court for fourteen months and Williams had yet to file his merit brief when the State again filed a motion to show cause in the Supreme Court of Ohio. (Apx. at Vol. II, p. 305). On March 13, 1994, Williams filed a response. (Apx. at Vol. II, p. 309). On March 25, 1994, the State filed a reply. (Apx. at Vol. II, p. 314). By virtue of an entry on April 08, 1994, it was ordered that Williams file his brief no later than May 08, 1994. On May 06, 1994, Williams filed yet another motion for an extension of time. (Apx. at Vol. II, p. 318). On May 11, 1994, the Supreme Court of Ohio granted Williams' request. (Apx. at Vol. II, p. 320).

On October 19, 1993, Williams filed a motion to supplement the record and affidavit in support, (Apx. at Vol. II, p. 275), to which the State filed a memorandum in opposition on November 12, 1993. (Apx. at Vol. II, p. 284). The court denied Williams' October 19, 1993 motion to supplement the record on November 24, 1993[3]. (Apx. at Vol. II, 289). On November 30, 1993 Williams filed a Motion for Rehearing of Denial of Motion to Supplement the Record. (Apx. at Vol. II, p. 290), which the Ohio Supreme Court denied on January 12, 1994. (Apx. at Vol. II, p. 304).

On May 13, 1994, Williams filed a multi-volume merit brief, which raised the following thirty-four propositions of law:

1. It is prejudicial error in a capital case to join for trial two separate offenses occurring at different times and places. Joinder of unrelated offenses denies a capital defendant the right to a trial and sentencing which is both fair and reliable, in contravention of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

2. Appellant Williams' death sentence was a product of the jury's consideration of evidence that was not relevant to the aggravating circumstances charged against him or the nature and circumstances of the charged capital crime in violation of his rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

3. An Appellate court must have the complete record of a capital case in order to adequately review the case pursuant to Ohio Rev. Code Ann. Section 2929.05. This court's denial of appellant Williams' requests to supplement the record of his

---

[3] Williams attempted to supplement the record with various pre-trial transcripts that were not part of the trial record in CR90-08-0665. Additionally, Williams attempted to supplement the record with pre-sentence investigation material unrelated to the death penalty review under Ohio Revised Code Section 2929.05(A).

case to ensure a complete record deprived appellant of his rights to effective assistance of counsel, equal protection, due process of law and meaningful appellate review under the Eighth and Fourteenth Amendments of the United State Constitution and Article I, Sections 2, 10, and 16 of the Ohio Constitution.

4.  The jury and trial court's consideration of duplicative aggravating circumstances tipped the weighing process against the appellant, destroyed the reliability of the arbitrary and capricious imposition of the death sentence in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9 and 16 of the Ohio Constitution. Further, the court of Appeals' consideration of the duplicative specifications eradicated the reliability of its Ohio Rev. Code Ann. Section 2929.05 review.

5.  When the jury at the penalty phase returns its verdict after announcing a stalemate and before the trial court can instruct, and one of the jurors then expresses hesitancy in the jury poll, the trial court has a duty to make further inquiry of the jury. Failure to make such an inquiry violates the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10, and 16 of the Ohio Constitution.

6.  Misconduct by the government's attorneys throughout appellant Williams' capital trial deprived him of his rights to due process, a fair trial and a fair and reliable determination of his guilt and sentence as guaranteed by the Fourth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

7.  It was improper for the trial court, at the guilt phase of appellant's capital case, to refer to the penalty phase when that reference communicated to the jury appellant's guilt. Those references violated the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10, and 16 of the Ohio Constitution.

8.  A capital defendant is entitled to have a judge preside over his capital trial who has not predetermined his guilt. A capital trial conducted by a judge who has predetermined guilt violates the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10, and 16 of the Ohio Constitution.

7

9.    A capital defendant is denied the right to adequate appellate review when the trial court refuses to order a state's witness's statement to be preserved in the records of the court upon appeal in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

10.   At the penalty phase of a capital case, defense counsel must be permitted to argue the defendant's reaction to the guilt verdict. The reaction constitutes relevant, mitigating evidence under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10, and 16 of the Ohio Constitution.

11.   The out-of-court identification procedures used to implicate Clifford Williams for the shooting of Jeff Wallace were unduly suggestive. The subsequent in-court identifications were not independently reliable, and so the failure to suppress the identification evidence deprived appellant Williams of his due process rights as guaranteed by Article I, Sections 9, 10, and 16 of the Ohio Constitution; and the Sixth, Eighth and Fourteenth Amendments of the United States Constitution.

12.   When irrelevant and highly inflammatory evidence is presented at the guilt phase of a capital trial it taints the guilt phase and operates to deny the capital defendant a fair trial.

13.   The failure to exclude misleading firearms identification evidence whose prejudicial effect was compounded by inaccurate prosecutorial argument violated appellant's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

14.   Clifford Williams was unfairly prejudiced by the inclusion of an alias in his indictment, and references to that alias during his trial. Because the alias was not necessary for connecting him to the acts charges, the inclusion and use of that alias deprived appellant Williams of his due process rights guaranteed by Article I, Sections 9 and 16 of the Ohio Constitution and the Eighth and Fourteenth Amendments of the United States Constitution.

15.   The trial court's failure to suppress illegally obtained evidence for want of standing was erroneous. The court did not consider, nor did Clifford Williams' defense counsel argue, the

proper standard for determining one's standing to challenge the validity of a search. Hence, Clifford Williams was deprived of his rights guaranteed by Article I, Sections 9, 10, and 14 of the Ohio Constitution, and the Fourth, Sixth, and Eighth Amendments of the United States Constitution.

16. The trial court's actions during appellant's trial prevented appellant from receiving a fair trial and violated appellant's constitutional rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10, and 16 of the Ohio Constitution.

17. A capital defendant is denied the right to a fair and impartial trial and adequate appellate review of his conviction when the trial court refuses to order the prosecutor's file to be sealed for in camera review in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, and 16, Article I, of the Ohio Constitution.

18. The Fourteenth Amendment of the United States Constitution and Section 16, Article I of the Ohio Constitution require the state to produce sufficient evidence to prove every essential element of the crime beyond a reasonable doubt. If sufficient evidence is not presented, the accused must be acquitted of the charge.

19. The instructions the trial court gave during the course of appellant Williams' trial violated appellant's constitutional rights as guaranteed by Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10, and 16 of the Ohio Constitution.

20. Queries by the trial court during group voir dire as to whether appellant's jurors would be embarrassed to return a not guilty verdict violated appellant's constitutional rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10, and 16 of the Ohio Constitution.

21. The trial court failed to ensure that the jury selection process accorded Mr. Williams his constitutional rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 5, 9, 10, and 16 of the Ohio Constitution.

22.     The Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, Sections 9, 10, and 16, Article I of the Ohio Constitution and Section 2945.25(C) of the Ohio Revised Code Section guarantee an accused a fair trial and an impartial jury. The trial court's exclusion of potential juror Ronald Partin denied appellant these Constitutional guarantees.

23.     The trial courts denial of appellant's request for expert assistance to prepare for the sentencing phase of his trial violated appellant's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and sections 10 and 16, Article I, of the Ohio Constitution.

24.     The trial court's instructions at the penalty phase of appellant's capital trial were constitutionally infirm. The instructions violated the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10 of the Ohio Constitution.

25.     The trial court's instructions and the state's voir dire discussion on reasonable doubt, violated appellant's constitutional rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10, and 16 of the Ohio Constitution.

26.     The trial court's comments at appellant's sentencing hearing and its opinion issued after the hearing contain irrelevant and improper considerations for sentencing Mr. Williams to death. These considerations violated appellant Williams' constitutional rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10, and 16 of the Ohio Constitution.

27.     The sentence of death imposed on appellant Williams is unreliable and inappropriate. The death sentence in his case violates the Eighth and Fourteenth Amendments to the United States Constitution and Ohio Rev. Code Ann. Section 2929.05.

28.     The Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 5, 9, and 16, Article I of the Ohio Constitution, guarantee a capital defendant an impartial determination by the jury at his guilt and mitigation phases. To commit jurors to a death verdict during individual voir dire violates these constitutional guarantees.

10

29. The prosecutor's systematic use of peremptory challenges to exclude all prospective jurors with some reservations about the death penalty violated appellant Williams' right to equal protection and a fair and impartial jury in a capital case under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 5, 10, and 16 of the Ohio Constitution.

30. Defense counsel's actions and omissions at Mr. Williams' capital trial deprived him of the effective assistance of counsel as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10, and 16 of the Ohio Constitution.

31. The failure to raise or adequately address substantial capital and other well-established criminal law issues on appeal as of right deprives the capital defendant of the effective assistance of appellant counsel and the meaningful appellate review of a capital conviction guaranteed by the Sixth and Fourteenth amendments of the United State Constitution, Article I, Sections 10 and 16 of the Ohio Constitution and Ohio Rev. Code Ann.. Section 2929.05.

32. Ohio's mandatory capital sentencing scheme prevented the jury from deciding whether death was the appropriate punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10, and 16 of the Ohio Constitution.

33. The Fifth, Eighth and Fourteenth Amendments to the United States Constitution, Article I, Sections 10 and 16 of the Ohio Constitution and Ohio Rev. Code Ann. Section 2929.05, guarantee a convicted capital defendant a fair and impartial review of his death sentence. The statutorily mandated proportionality process in Ohio does not comport with this constitutional requirement and thus is fatally flawed.

34. The Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10, and 16 of the Ohio Constitution establish the requirements for a valid death penalty scheme. Ohio Rev. Code Ann. Sections 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.05, and 2929.05, Ohio's statutory provisions governing the imposition of the death penalty, do not meet the

> prescribed constitutional requirements and are unconstitutional,
> both on their face and as applied.

(Apx. at Vol. II, p. 321, Vol. III, p.1). The State thereafter filed a merit brief in the

Supreme Court of Ohio (Apx. at Vol. III, p. 224) and Williams next filed a reply

brief. (Apx. at Vol. III, p. 376).

On August 16, 1995 the Ohio Supreme Court affirmed the Court of Appeals

decision. *State v. Williams*, 73 Ohio St.3d 153, 652 N.E.2d 721 (1995). (Apx. at

Vol. IV, p. 2). On August 28, 1995, Williams filed a motion for reconsideration

(Apx. at Vol. IV, p. 24), which the Supreme Court of Ohio denied on October 04,

1995. *State v. Williams*, 74 Ohio St.3d 1409, 655 N.E.2d 188 (1995). (Apx. at

Vol. IV, p. 59). A subsequent petition for *certiorari* which Williams filed in the

United States Supreme Court was denied at *Williams v. Ohio*, 516 U.S. 1161

(1996).

Williams next filed a petition for post-conviction relief pursuant to Ohio

Revised Code Section 2953.21 in the Butler County Court of Common Pleas on

September 20, 1996, in which he raised the following seventeen (17) claims:

1. Judge Anthony Valen was biased and prejudiced and should have recused himself from the trial.

2. The prosecution denied Williams' post-conviction access to certain items of trial evidence for independent analysis by an expert.

3. Williams was denied the effective assistance of trial counsel under the standards established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed2d. 674 (1986), by the failure of trial counsel to present additional evidence.

4. The trial court erred in denying appellant's request for funds for a mitigation specialist.

12

5.    Trial counsel was ineffective for failure to present cultural expert mitigation testimony during the penalty phase of trial.

6.    Trial counsel rendered ineffective assistance of counsel during voir dire of potential jurors.

7.    The trial court's instructions to the jury were ambiguous, misleading and unintelligible.

8.    It was error for the court to dismiss his claim concerning the withholding of exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

9.    The appellate proportionality review as undertaken by Ohio appellate courts is in violation of state and or federal constitutional law.

10.   Electrocution as a means to carry out a death sentence is cruel and unusual punishment.

11.   Conviction and sentence are void or voidable because mitigating factors must be proved by a preponderance of the evidence, or because sentencing laws preclude consideration of all mitigating evidence and compel a presumption of the death penalty.

12.   Appellant alleges that the death penalty is disproportionately meted out in Butler County in violation of state and or federal constitutional law.

13.   Appellant alleges that the jury selection utilized in Butler County results in juries that are racially biased.

14.   Trial counsel was ineffective under the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1986).

15.   The trial court erred in permitting the prosecution to argue that the nature and circumstances of the offense was aggravating rather than mitigating.

16.   The death penalty is without penological justification.

13

17. The cumulative error of William's substantive claim merits reversal or a remand for a proper post-conviction process.

(Apx. at Vol. V, p. 26). The State filed a motion to dismiss on September 24, 1996. (Apx. at Vol. VI, p. 340). On October 08, 1996, Williams filed a response. (Apx. at Vol. VI, p. 351). On July 14, 1997 the Court of Common Pleas of Butler County issued findings of fact and conclusions of law dismissing Williams' petition for post-conviction relief. (Apx. at Vol. VII, p. 37).

On February 24, 1998, Williams appealed the dismissal of his post-conviction petition to the Court of Appeals for the Twelfth Appellate District of Ohio, setting forth the following five assignments of error:

1. The trial court erred in its application of the doctrine of res judicata to several of appellants claims for relief, thus violating his rights under the fifth, sixth, eight, ninth and fourteenth amendments to the United States Constitution and Article I, Sections 1, 2, 5, 9, 10, 16, and 20 of the Ohio Constitution.

2. The trial court erred when it denied appellant Williams an evidentiary hearing and discovery on his petition for post-conviction relief, thus violating his rights under the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution and Article I, Section 1, 2, 9, 10, 16, and 20 of the Ohio Constitution.

3. The trial court erred in denying appellant's petition to vacate or set aside sentence in violation of the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution and Article I, Section 1, 2, 9, 10, and 16 of the Ohio Constitution.

4. The trial court erred when it denied appellant's motions for funds for experts assistance in violation of appellant's right guaranteed under the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution and Article I, Section 1, 2, 9, 10, and 16 of the Ohio Constitution.

14

5.    The cumulative error of appellant's substantive claim merits reversal or a remand for a proper post-conviction process.

(Apx. at Vol. VII, p. 144). The State filed a merit brief in response on March 24, 1998. (Apx. at Vol. VII, p. 293). On June 22, 1998, the Court of Appeals for the Twelfth Appellate District of Ohio, Butler County issued a judgment entry affirming the Butler County Court of Common Pleas dismissal of Williams' petition for post-conviction relief. (1998 WL 330539 unreported). (Apx. at Vol. VIII, p. 93, Case No. CA97-08-162).

On August 05, 1998, Williams appealed the denial of his post-conviction petition appeal to the Supreme Court of Ohio by filing a notice of appeal and memorandum in which he raised the following propositions of law:

1.    When a death penalty is affirmed by denial of a petition for post-conviction relief, a post-conviction petitioner has an appeal as a matter of right to the Supreme Court of Ohio.

2.    The trial court and court of appeals erred in their application of the doctrine of res judicata to several of appellant's claims for relief, thus violating his rights under the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution and Article I, §§ 1, 2, 5, 9, 10, 16, and 20 of the Ohio Constitution.

3.    The trial court and court of appeals erred when they denied appellant an evidentiary hearing and discovery on his petition for post-conviction relief, thus violating his rights under the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution and Article I, §§ 1, 2, 9, 10, 16, and 20 of the Ohio Constitution.

4.    The ineffective assistance of counsel provided to appellant violated his rights to due process and a fair trial and sentence, as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, §§ 5, 9, 10, and 16 off the Ohio Constitution.

15

5. The trial court and court of appeals erred in denying Appellant's claims of racial discrimination in violation of the Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution and Article I, §§ 2, 9, 10, and 16 of the Ohio Constitution.

6. The trial court and court of appeals erred in denying appellant's challenge to the electric chair in violation of the Eighth Amendment of the United States Constitution and Article I, §§ 2, 9, 10, and 16 of the Ohio Constitution.

7. The trial court erred when it denied appellant's motions for funds for expert assistance in violation of appellant's right guaranteed under the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution and Article I, §§ 1, 2, 9, 10, and 16 of the Ohio Constitution.

8. The trial court and court of appeals erred in denying appellant's claim of judicial bias in trial court in violation of the Sixth, Eighth, and Fourteenth Amendments.

9. State interference with post-conviction investigation constitutes a violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments.

10. The failure to grant a defense request for expert assistance in the form of a mitigation specialist violates the Fifth, Sixth, Eighth, and Fourteenth Amendments.

11. The trial court and court of appeals erred in denying appellant's post-conviction claim concerning the state's suppression of exculpatory evidence in violation of appellant's Fifth, Sixth, Eighth, and Fourteenth Amendments.

12. Proportionality review in Ohio fails to comply with the Fifth, Sixth, Eighth, and Fourteenth Amendments.

13. The trial court and court of appeals erred in denying appellant's Eleventh, Fifteenth, and Sixteenth claims in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments.

14. The court of appeals erred by not deciding each assignment of error and giving reasons in writing for its decisions in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments.

15. The cumulative error of appellant's substantive claims merits reversal or a remand for a proper post-conviction process.

(Apx. at Vol. VIII, p. 109). The State filed its Memorandum in Response on September 01, 1998. (Apx. at Vol. VIII, p. 251). On October 07, 1998, the Supreme Court of Ohio dismissed Williams' claim *sua sponte*, stating that, "no substantial constitutional question and discretionary appeals if applicable, not allowed." *State v. Williams*, 83 Ohio St.3d 1449, 700 N.E.2d 332 (1998). (Apx. at Vol. VIII, p. 284, Case No. 98-1587).

Williams is now before this Court upon the filing of an application for writ of habeas corpus pursuant to 28 U.S.C. Section 2254 alleging the following grounds for relief:

1. The trial court's denial of Petitioner's motion to sever the August 3, 1990 and August 6, 1990 offenses violated Petitioner's rights as guaranteed by the Eighth and Fourteenth Amendments to the United States' Constitution.

2. The trial court's decision to admit into evidence at the penalty phase of the August 3, 1990 offense all evidence admitted during the guilt/innocence phase regarding the August 6, 1990 offense (involving State witness Jeff Wallace) violated Petitioner's rights as guaranteed by the Eighth and Fourteenth Amendments to the United States' Constitution.

3. The State's failure to properly provide relevant discovery regarding State witness Jeff Wallace's criminal history violated Petitioner's rights as guaranteed by the Eighth and Fourteenth Amendments to the United States' Constitution.

4. The trial court's errors in failing to require provision to trial counsel of the written statement of a State witness, and in refusing to preserve for the record such statement at Petitioner's request, violated Petitioner's rights as guaranteed by the Eighth and Fourteenth Amendments to the United States' Constitution.

5. The trial court's errors in providing improper jury instructions at the penalty phase of Petitioner's trial, including an instruction that a life sentence must be by unanimous verdict, violated Petitioner's rights as guaranteed by the Eighth and Fourteenth Amendments to the United States' Constitution.

6. The trial court's error in considering duplicative aggravating circumstances and other irrelevant and improper factors in the sentencing of Petitioner violated Petitioner's rights as guaranteed by the Eighth and Fourteenth Amendments to the United States' Constitution.

7. The trial court's error in permitting the State to argue the nature and circumstances of the offense as an aggravating factor violated the Petitioner's rights as guaranteed by the Eighth and Fourteenth Amendments to the United States' Constitution.

8. The jury's verdicts of guilty with respect to the August 3, 1990 charges were contrary to the weight of the evidence and law in violation of Petitioner's rights as guaranteed by the Eighth and Fourteenth Amendments to the United States' Constitution.

9. The trial court's error in denying Petitioner's motion for provision of an expert to assist in preparation and presentation of mitigation evidence during the penalty phase violated Petitioner's rights as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States' Constitution.

10. Trial counsel's numerous failures regarding preparation and presentation of evidence at the penalty phase of the trial constituted ineffective assistance of counsel in violation of Petitioner's rights as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States' Constitution.

11. Trial counsel's numerous failures with respect to the guilt/innocence phase of Petitioner's trial constituted ineffective assistance of counsel in violation of Petitioner's rights as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States' Constitution.

12. The trial court's provision of improper jury instructions as the guilt/innocence phase of Petitioner's trial violated the Petitioner's rights as guaranteed by the Eighth and Fourteenth Amendments to the United States' Constitution.

13. The trial court's denial of Petitioner's motion for disclosure of the State's confidential informant violated Petitioner's rights as guaranteed by the Eighth and Fourteenth Amendments to the United States' Constitution.

14. The assistance rendered by Petitioner's appellate counsel was ineffective in violation of Petitioner's rights as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States' Constitution.

15. The State's refusal to release to Petitioner's post-conviction counsel the physical ballistics evidence, including the shell casings found at the scene of the offenses, for independent evaluation, and the trial court's refusal during state post-conviction proceedings to grant funds for such evaluation, violated Petitioner's rights as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States' Constitution.

16. Prosecutorial misconduct committed throughout the stages of Petitioner's capital trial violated Petitioner's constitutional rights as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

17. The trial court's erroneous rulings regarding various pre-trial motions violated Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

18. The trial court's erroneous rulings and remarks during the jury selection process violated Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

19. The trial court committed numerous other prejudicial errors throughout Petitioner's trial in violation of Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

20. The cumulative effect of all the errors at trial and sentencing violated Petitioner's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

21. The jury selection process in Butler County is racially biased and violated Petitioner's rights as guaranteed by the Eighth and Fourteenth Amendments to the United States' Constitution.

22. Various aspects of the Ohio Death Penalty scheme violate provisions of the Eighth and Fourteenth Amendments to the United States' Constitution.

23. Ohio's post-conviction review system does not provide capital defendants with a meaningful opportunity to redress violations of their state and federal rights, in violation of Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States' Constitution.

24. The Ohio Supreme Court's denial of Petitioner's appellate motion to complete the record denied Petitioner's rights as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

(See Petition). Williams' petition must be dismissed for the reasons to follow.

## AEDPA - STANDARD OF REVIEW

### 1. Introduction

On April 24, 1996 President Clinton signed the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214, (hereinafter "AEDPA") into law. The AEDPA made significant changes in habeas law including a one-year statute of limitations, restrictions on issues that can be appealed, vastly heightened respect for state court factual and legal determinations, and restrictions on the ability to file successive petitions and timetables for federal courts to act on capital habeas actions when certain prerequisites have been met.

### 2. Exhaustion

Prior to seeking federal habeas relief, a state prisoner must demonstrate that he has exhausted all available state court remedies. *See,* 28 U.S.C. Section 2254 (b) and (c); *Castille v. Peoples,* 489 U.S. 346, 348-50 (1989). The policy

underlying the exhaustion requirement is "to give the state an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *See, Keener v. Ridenour*, 594 F.2d 581, 584 (6th Cir. 1979).

"Available" state court remedies are those remedies still open to the habeas petitioner at the time he files his petition in federal court. *Engle v. Isaac*, 456 U.S. 107, 125-26 n.28 (1982); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The remedies that a habeas petitioner must exhaust include direct appeal, delayed direct appeal, and post conviction relief. *Allen v. Perini*, 424 F.2d 134 (6th Cir.), *cert. denied*, 400 U.S. 906 (1970). Exhaustion of only one of the alternate state remedies is required. *Brown v. Allen*, 344 U.S. 443 (1953), provided that the remedy pursued allows "fair presentation" of the federal claims to the state courts. *Castille*, 489 U.S. at 348-50.

In the instant case, Williams has resorted to all levels of state appellate review with respect to his direct appeal and post-conviction petitions.

## 3.    *Claims Adjudicated on the Merits in State Court*

Under 28 U.S.C. Section 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

21

Recently, in *Terry Williams v. Taylor*, 120 S.Ct. 1495 (2000) the United States Supreme Court provided guidance on the meaning of the habeas standard of review. Specifically the Court held that a writ may not issue unless:

> the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

The Sixth Circuit Court of Appeals has similarly recognized that under AEDPA standards a federal habeas petitioner is required to show that the state courts:

> either failed to apply clearly established federal law to [petitioner's] claims, issued a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings", or denied [petitioner's] claims even though the facts of [petitioner's] case were "materially indistinguishable" from a case in which the Supreme Court granted relief.

*Sanders v. Freeman*, 221 F.3d 846 (6th Cir. 2000); *Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000); *Machacek v. Hofbauer*, 213 F.3d 947 (6th 2000).

### 4.   *Presumption of Correctness*

28 U.S.C. Section 2254 (e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Pursuant to the required deference, a writ of habeas corpus should not be granted unless "the state court decision [is] so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *Nevers v. Killinger*, 169 F.3d 352, 361-62 (6th Cir.), *cert. denied*, 527 U.S. 1004, 119 S.Ct. 2340 (1999) (quoting *O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir.1998)).

Federal courts must therefore defer to state court factual findings, affording a presumption of correctness that a habeas petitioner may rebut only with clear and convincing evidence. *See,* 28 U.S.C. Section 2254(e)(1). "The presumption * * * applies to implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996). Here, the Ohio courts adequately ensured Williams' constitutional right to due process and provided him with full, fair and adequate hearings. As a result, the state courts' findings of facts are entitled to the presumption of correctness. *Mitchell v. Rees*, 114 F.3d 571, 577 (6th Cir. 1997) (applying former version of 28 U.S.C. Section 2254).

In his petition, Williams makes the incredible statement that "none of the state court factual findings if they are found to exist are entitled to a presumption of correctness." (Petition, p. 1). Williams' specious hyperbole does not begin to overcome the presumption of 28 U.S.C. Section 2254(e)(1) that:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of

23

rebutting the presumption of correctness by clear and convincing evidence.

*See also, Marshall v. Lonberger*, 459 U.S. 422 (1983).

### 5. *Evidentiary Hearing*

Under 28 U.S.C. Section 2254:

(e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows –

(A) the claim relies on –

(I)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(II)  a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

In *Michael Williams v. Taylor*, 120 S.Ct. 1479 (2000), the United States Supreme Court addressed Section 2254(e)(2). The Court held that AEDPA prohibited a federal district court from holding an evidentiary hearing to consider factual issues to situations unless it could be established that the claim relied upon either a new retroactive rule of constitutional law or a factual basis that could not have been discovered by due diligence, **and** that the facts underlying the claim could establish by clear and convincing evidence that but for the error, no reasonable factfinder would have found the petitioner guilty. *Williams* at 1489.

The *Williams* Court also noted that Section 2254(e)(2) eliminated the freestanding "miscarriage of justice" exception contained in *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 12 (1992). As the Court stated, "To be sure, in requiring that prisoners who have not been diligent satisfy Section 2254(e)(2)'s provisions rather than show cause and prejudice, and in eliminating a freestanding 'miscarriage of justice' exception, Congress raised the bar *Keeney* imposed on prisoners who were not diligent in state-court proceedings." *Williams* at 1489.

## 6. Applicability to Williams' Petition

The AEDPA applies to this case because Williams filed his petition on June 11, 1999, over three years after the enactment of the statute. *Williams v. Taylor*, 120 S.Ct. 1495 (2000); *Breard v. Greene*, 523 U.S. 371, 118 S.Ct. 1352, 1355 (1998); *Lindh v. Murphy*, 521 U.S. 320 (1997); *Nevers v. Killinger*, 169 F.3d 352 (6th Cir.), *cert. denied*, 527 U.S. 1004, 119 S.Ct. 2340 (1999); *Williams v. Coyle*, 167 F.3d 1036 (6th Cir. 1999). Any argument that the AEDPA does not apply in this case is without merit. Other capital habeas petitioners in Ohio have routinely argued that the application of the AEDPA is impermissibly retroactive and that each provision of the AEDPA should be subjected to retroactivity analysis pursuant to *Landgraf v. USI Film Products*, 511 U.S. 244 (1994) as applied to every claim. This argument is belied by the numerous cases applying the AEDPA without such concerns - and those that have rejected this retroactivity argument on the merits. *See, Muller v. Angleone*, 181 F.3d 557, 565-72 (4th Cir. 1999). The United States Supreme Court, Sixth Circuit and numerous Courts of Appeals have applied the AEDPA to petitions filed after the effective date without any such concerns.

## PROCEDURAL DEFAULT

Even where a prisoner exhausts available state court remedies, if a federal habeas petitioner fails to fairly present a constitutional claim to the state courts, he procedurally defaults his claim on federal habeas corpus. A petitioner who has defaulted such claims may not bring his claims in federal habeas corpus unless he can demonstrate cause for the default and actual prejudice. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *United States v. Frady*, 456 U.S. 152, 168 (1982). Demonstrating "cause" requires showing that an objective factor external to the defense impeded counsel's efforts to comply with the State procedural rule. *Murray, supra*, at 488. Demonstrating "prejudice" requires showing a disadvantage "infecting" the trial with constitutional error. *Frady, supra,* at 168.

In extreme cases, a federal habeas court may hear a defaulted constitutional claim where cause and prejudice cannot be shown if the petitioner shows that his conviction is the result of a fundamental miscarriage of justice. A fundamental miscarriage of justice is the conviction of one who is "actually innocent." *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray, supra* at 496

### A. Claims not Raised in the State Courts

A petitioner is generally procedurally barred from presenting claims never raised in the state courts, unless he can demonstrate cause to excuse his failure to present the claims in the state courts and actual prejudice resulting from the failure. *See, Coleman v. Thompson*, 501 U.S. 722, 723 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 89-90 (1977). In the Sixth Circuit, the failure to fairly present issues on

26

direct appeal to the Ohio Supreme Court bars habeas consideration of the claim absent a showing of cause and prejudice. *Leroy v. Marshall*, 757 F.2d 94, 97-99 (6th Cir. 1983) *cert. denied*, 474 U.S. 831 (1985).

### B.   Claims Barred in State Post-Conviction Proceedings

The United States Supreme Court has observed that Ohio's post-conviction statute does not allow petitioners to raise claims that could have been litigated before judgment or on direct appeal - such issues raised in post-conviction are procedurally defaulted on habeas corpus. *Engle v. Issac*, 456 U.S. 107, 125 n.28 (1982).

In the Sixth Circuit, procedural default is generally analyzed under a four-part test, known as the *Maupin* test. The test asks the following: (1) whether the petitioner failed to comply with an applicable state procedural rule; (2) whether the state courts actually enforced the procedural sanction; (3) whether the state procedural bar is an adequate and independent state ground on which the state can foreclose federal review; and (4) whether the petitioner can demonstrate cause for, and actual prejudice resulting from, the procedural default. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

A determination in the Ohio courts that a claim is *res judicata* in state post-conviction is a procedural default on federal habeas corpus and requires the petitioner to show cause and prejudice for his default satisfying the *Maupin* test. *Dennis v. Mitchell*, 68 F. Supp. 2d 863 (N.D. Ohio 1999); *Norris v. Schotten*, 146 F.3d 314 (6th Cir.), *cert. denied*, 525 U.S. 935 (1998); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Ewing v. McMackin*, 799 F.2d 1143, 1149-51 (6th Cir.

27

1986). *See also, Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) ("Because Rust failed to raise his constitutional issues in his direct appeal, and because Rust's procedural default constituted an 'adequate and independent' state ground on which the state relied to foreclose judicial review of his constitutional claims, we may not consider Rust's constitutional claims unless he can show cause to excuse his failure to present the claims in state court and actual prejudice to his defense at trial or on appeal.").

Ohio's appellate courts have long relied upon the doctrine of *res judicata* to dismiss constitutional claims based upon the record that are raised for the first time in state post-conviction. *State v. Perry*, 10 Ohio St.2d 175 (1967). Similarly, the Sixth Circuit has repeatedly recognized the "*Perry* rule" as an independent and adequate ground upon which to procedurally bar consideration of habeas claims. *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000); *Norris v. Schotten, supra; Rust v. Zent, supra.*

Most recently, in *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), the Sixth Circuit rejected Scott's claim that the contemporaneous objection rule is not an "independent and adequate state ground" under *Maupin*. The Sixth Circuit stated that "In cases where stated procedural grounds have not been enforced by federal courts because they were not firmly established and regularly applied, the facts have been much more extreme than these isolated examples of discretion," (*citing Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *Warner v. U.S.*, 975 F.2d 1207, 1213-14 (6th Cir. 1992), whereas Scott's case was "more like those in which some minor inconsistency in

28

applying the rule has been noted but held not to be severe enough to override the federalism, finality and comity interests served by enforced the bar." (*citing*, *Coleman v. Thompson*, 501 U.S. 722, 758 (1991); *Dugger v. Adams*, 489 U.S. 401, 410 n.6 (1989); *Shepard v. Foltz*, 771 F.2d 962, 966 (6th Cir. 1985).

Further, state post-conviction is not constitutionally required and such contentions are irrelevant to the procedural default analysis. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987).

### C. Plain Error Review

Plain error review by a state appellate court does not open a claim to consideration on federal habeas when the state court rests its decision on a procedural bar. *Scott v. Mitchell*, *supra*, (quoting *Harris v. Reed*, 489 U.S. 255, 257 (1989):

> [state courts] need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgement, even when the state court also relies on federal law. Thus, by applying this doctrine to habeas cases, *Sykes* curtails reconsideration of the federal issue on federal habeas as longs as the state court explicitly invokes a state procedural bar rule as a separate basis for the decision."

see also, *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989).

### D. Claim Based on Different Theory

A constitutional claim presented to the federal courts that does not rest on the *same theory* as was presented to the state courts is procedurally defaulted. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (rejecting ineffective assistance of counsel claim on theory that counsel ineffective for failing to

investigate and find third expert because claim raised in state court alleged counsel ineffective for failing to present insanity defense - "This circuit has held that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court"); *Pillete v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

## STATEMENT OF FACTS

In its rejection of Williams' direct appeal, the Ohio Supreme Court at 73 Ohio St. 3d 153-56 rendered the following binding factual findings with respect to the overwhelming evidence which was adduced at Williams' trial:

On Friday, August 1990, at approximately 10:20 P.M., Hamilton police officers responded to a call that someone had been shot in the one hundred block of Beckett Street in the city of Hamilton, Ohio. When the police arrived, they found a red cab from the Clifton Cab Company of Cincinnati with its motor stalled and the meter stopped, displaying a fare of $32.10. The driver, Wayman Hamilton, was slumped to the right behind the steering wheel with a single gunshot wound in his forehead. Paramedics airlifted Hamilton to a hospital in Cincinnati, where he was pronounced dead. Doctors recovered a .25 caliber bullet from Hamilton's head.

On the front seat of the cab, detectives recovered a single .25 caliber cartridge casing from a semiautomatic weapon. Hamilton's trip sheet indicated that, in addition to the $32.10 fare shown on the cab's meter, he had generated approximately $50 in fares that evening. While Clifton cab drivers customarily carried money to make change in their shirt pockets, there was no money in Hamilton's shirt pockets; his wallet contained $60.24.

Earl Jones, a dispatcher for the Clifton Cab Company, testified that at approximately 9:20 p.m. on the night of the shooting, Hamilton's cab had been dispatched to pick up a fare at the Fuel Mart gas station on Compton Road in Mt. Healthy. The person who wanted the cab stated that he was going to Hamilton, Ohio. Jones indicated he received three or four calls over a period of approximately one hour from the Fuel Mart; two or three calls came from the person who wanted the cab and one came from a Fuel Mart employee.

William Teasley and James Trivett were working at the Fuel Mart that evening. They identified appellant, Clifford Donta Williams, as the person who called for the cab at the gas station. Teasley testified that appellant walked into the gas station and asked if he could use the phone because he did not have any money to use the pay phone on the corner. Teasley handed the phone and phone book to appellant to call a cab. Appellant waited at the gas station for the

31

cab for approximately twenty to forty-five minutes, talking with Teasley and Trivett. Appellant inquired about potential employment at Fuel Mart. He expressed concern that, because of his juvenile record, he may not be hired. Appellant stated in the course of the conversation that he did not have any money, that he had just come from Los Angeles, and that he was staying in Mt. Healthy. After a period of time, a red Clifton cab arrived just as Trivett made a final call to the cab company. Appellant got in the front seat of the cab and left the Fuel Mart.

On Monday, August 6, 1990, Jeff Wallace, a resident of Columbus, Ohio, was in Hamilton searching for work. At approximately 9:45 p.m., Wallace left his hotel to go to the store. A few blocks away, Wallace picked up appellant, who was hitchhiking. At appellant's request, Wallace drove him to an apartment in Hamilton, where appellant changed clothes. Appellant then offered to pay Wallace gas money if Wallace would drive him somewhere else. Wallace agreed and followed appellant's directions until appellant asked Wallace to drive down an alley in the vicinity of South Second Street near Central Avenue in downtown Hamilton. Wallace became suspicious and asked appellant to get out of the truck. At that time, appellant pulled a .25 caliber pistol out of his pocket, shoved a clip into it, told Wallace, "I got one bullet in the chamber" and demanded all of Wallace's money. Wallace shifted the truck into low gear and accelerated. As he did this, Wallace heard one gunshot. Appellant fired a second shot that hit Wallace on the back of the head. After a struggle, appellant fled the scene, and Wallace sought help for his injury.

While Wallace was in the hospital, he saw a newspaper article that showed a picture of the appellant, who had been arrested for the murder of Wayman Hamilton. Wallace recognized appellant as the person who shot him. Wallace called the police and subsequently identified appellant from a group of photographs the police showed him at the hospital and also from a police line-up.

Detectives examined the truck that Wallace drove the night of the shooting. The detectives discovered two fired .25 caliber cartridge casings in the truck. The detectives submitted the two casings found in the truck and the casing recovered from the scene of the Wayman Hamilton murder to the Ohio Bureau of Criminal Investigation ("BCI") for comparison.

David Hall, a ballistics and firearms expert from BCI, testified that all three of the cartridge casings had at one time been loaded in,

chambered in, and extracted from the same firearm. Hall's testimony indicated that although he could not conclusively determine whether the cartridge casings had been fired from the same firearm, they had been extracted from the same firearm. Hall explained that he found matching characteristics on the rims of all three cartridge casings where the firearm's extractor hooks in and pulls the casing out of the chamber. Hall also testified that the three fired cartridge casings had similar, uniformly smooth firing pin impressions that indicated that they could have been fired from the same .25 caliber semiautomatic firearm. Hall did indicate, however, that there was not sufficient detail for a conclusive determination due to the smoothness of the firing pin and the hardness of the casings.

Forensics analysis also revealed human blood on a pair of appellant's jeans that police recovered during the execution of a search warrant in an apartment where appellant was staying. Experts at BCI were unable to identify the type of blood found on the jeans.

## DISCUSSION OF CLAIMS PRESENTED

**First and second grounds for relief**

    **Procedural posture:**

As his first ground for relief Williams attacks the denial of his motion to sever. Williams' second ground for relief challenges the trial court's admission of evidence regarding the shooting and aggravated robbery perpetrated by Williams upon Jeff Wallace at the penalty phase of Williams' trial. On direct appeal, Williams fairly presented these claims to the Ohio courts as his first and second assignments of error in both the Ohio Court of Appeals and Ohio Supreme Court.

> **Williams was not deprived of a fundamentally fair trial by the proper joinder of the charges against him. Severance is not constitutionally required where evidence of each of the joined offenses would be admissible at separate trial as "other acts" evidence. Moreover the evidence of the shooting and aggravated robbery of Jeff Wallace was properly admitted as constituting probative evidence of Williams' identity and as tending to prove the aggravating circumstances.**

The trial court's decisions not to sever the charges against Williams and to admit evidence regarding the shooting and aggravated robbery perpetrated by Williams upon Jeff Wallace at the penalty phase of Williams' trial, wholly involve matters uniquely within the discretion of the state trial judge that does not rise to a constitutional magnitude. *Bell v. Arn*, 536 F.2d 123 (6th Cir. 1976); *Broffard v. Marshall*, 751 F.2d 845 (6th Cir.), *cert. denied*, 474 U.S. 872 (1985). It is well established that "a state evidentiary violation in and of itself does not support habeas corpus relief * * * before such relief may be granted the violation must rise to the level of a denial of 'fundamental fairness.'" *Shaw v. Boney*, 695 F.2d 528,

530 (11th Cir. 1983). Thus, the Sixth Circuit observed in *Lundy v. Campbell*, 888

F.2d 467, 473 (6th Cir. 1989), *cert. denied*, 495 U.S. 950 (1990) that:

> It is, as we have said, the whole trial that we evaluate for fairness, not
> just the assignments of procedural error raised by the petitioner. The
> ultimate question we must answer is whether the asserted trial errors,
> measured according to the fundamental principles of a fair criminal
> process implicit in the due process clause of the Fourteenth
> Amendment, were so egregious as to have nullified the legitimacy of
> the properly admitted substantive evidence of the defendant's guilt.

The writ of habeas corpus extends only to one restrained in violation of a

federally secured right. 28 U.S.C. Section 2241(c)(3); *Donnelly v. DeChristoforo,*

*416 U.S. 637 (1974).* A federal district court does not sit as a further Court of

Appeals to review interpretations of state law. *See e.g., Wright v. Dallman*, 999

F.2d 174 (6th Cir. 1993). Hence, without a showing of error of constitutional

magnitude, Williams' attack upon the propriety of the trial court's discretionary

decisions is simply not cognizable in federal habeas corpus.

Despite the convenient conclusion that his trial was "fundamentally unfair",

Williams' attack upon the trial court's alleged abuse of discretion for failing to

follow Ohio's procedural rules constitutes an issue of state law that fails to set

forth a constitutional claim. In this regard it is noteworthy that Ohio's procedural

rules are similar to Rule 8(a) of the Federal Rules of Criminal Procedure which

permits joinder of multiple offenses in the same indictment or information in cases

involving a single defendant. Joinder of offenses is permissible under Rule 8(a) if

the offenses are (1) of the same or similar character, (2) based on same act or

transaction, or (3) based on acts or transactions that are connected. Thus in

*United States v. Gray,* 958 F.2d 9, 14-15 (1st Cir. 1992), the First Circuit found no

35

constitutional infirmities in the joinder of separate bank robberies all within two-month period, in same part of town, targeted similar institutional victims, and defendant used same *modus operandi*, often wearing same clothing. *Id.*

The following Ohio Supreme Court factual determinations remove all doubt as to the propriety of the trial court's decisions to deny Williams' severance motion and to admit evidence regarding the shooting and aggravated robbery perpetrated by Williams upon Jeff Wallace at the penalty phase of Williams' trial:

> The prosecution in this case met both tests. "'[E]vidence of other crimes may be presented when "they are so blended or connected with the one on trial as [*sic*] that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged." ' " *State v. Wilkinson* (1980), 64 Ohio St.2d 308, 317, 18 O.O.3d 482, 488, 415 N.E.2d 261, 269, quoting *United States v. Turner* (C.A.7, 1970), 423 F.2d 481, 483-484.
>
> In this case, the ballistics evidence, although not conclusive, tended to show that the same gun was involved in the murder of Wayman Hamilton and the assault on Jeff Wallace. A ballistics and firearms expert from BCI testified that all three of the cartridge casings, the one recovered from the scene of the Hamilton murder and two casings recovered from the cab of Wallace's truck, had at one time been loaded in, chambered in, and extracted from, the same firearm.
>
> Evidence tending to show that the same gun was used in both crimes is pertinent to the issue of identity. Wallace identified appellant through a picture in the newspaper, by selecting his photo from a police photo array, and in a police line-up. Wallace's identification coupled with the .25 caliber casings found at the Hamilton crime scene and in the cab of Wallace's truck connected the two crimes and served to identify appellant as the perpetrator of both crimes. Due to the proximity in time and location, the apparent use of the same gun, and Wallace's identification of the appellant as the perpetrator, the trial court correctly permitted joinder of the separate crimes. Appellant has not shown that he was prejudiced by the trial court's failure to sever the charges, nor has he shown that the trial court abused its discretion in failing to sever the charges. Appellant's challenge is without merit.

Appellant also contends that the evidence of the Wallace counts was graphic and inflammatory, that it provided the jury with evidence portraying Wallace as victimized by the appellant, that the evidence concerning the crime against Wallace was prejudicial in both the guilt and penalty phase of the trial, and that the evidence influenced the jury to recommend death. "Pursuant to R.C. 2929.03(D)(1), the prosecutor, at the penalty stage of a capital trial, may introduce ' * * * any evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing * * *.'" *State v. DePew* (1988), 38 Ohio St.3d 275, 528 N.E.2d 542, paragraph one of the syllabus. The guilt phase evidence must be relevant to the aggravating circumstance to be admitted into evidence during the penalty phase. The question of relevancy must be governed by the Rules of Evidence, as the rules apply to the sentencing phase of a capital trial. The Rules of Evidence impose upon the trial court the duty to weigh the probative value of the evidence against the potential for unfair prejudice, confusion of the issues, and misleading of the jury.

In this case, the aggravating circumstances included appellant's commission of the aggravated murder of Wayman Hamilton as principal offender while he was committing or attempting to commit aggravated robbery. The evidence of Jeff Wallace's shooting and aggravated robbery would have been admissible in the murder trial under R.C. 2945.59 and Evid. R. 404(B), irrespective of joinder, because it was probative of appellant's identity as Hamilton's killer. The evidence of the assault on Wallace was relevant in the penalty phase as tending to prove the aggravating circumstances. The facts of the Wallace assault were sufficiently similar to the circumstances of Hamilton's murder to suggest that appellant robbed Hamilton. Furthermore, the trial court gave a limiting instruction, indicating to the jury that it should consider the evidence pertaining to the Wallace assault only for proving again the aggravating circumstances. It is presumed the jury followed the instructions of the court. *State v. Murphy* (1992), 65 Ohio St.3d 554, 584, 605 N.E.2d 884, 907.

*State v. Williams*, 73 Ohio St.3d 153, 158-59 (1995), [footnote omitted].

The above Ohio Supreme Court holding is neither contrary to clearly established federal law nor based upon an unreasonable determination of the facts in light of the evidence presented. Williams was tried for similar offenses and the

evidence of each joined offense would have been admissible at a separate trial as "other acts" evidence. Additionally the evidence of Williams' similar assault upon Jeff Wallace was admissible as tending to prove the aggravating circumstance that Williams murdered Hamilton during the course of a robbery. As such, the trial court's denial of Williams' severance motion and its admission of evidence regarding the shooting and aggravated robbery perpetrated by Williams upon Jeff Wallace at the penalty phase of Williams' constitute proper discretionary decisions which in no way deprived Williams of a fundamentally fair trial. Williams' first and second grounds for relief are not actionable in federal habeas corpus.

**Third ground for relief**

> **Procedural posture:**

As his third ground for relief Williams accuses the State of Ohio of failing to disclose what Williams mistakenly refers to as "exculpatory evidence." Williams' so-called *Brady* claim was addressed on the merits by the Ohio Court of Appeals in Williams' post-conviction petition appeal. Although utterly meritless, the claim has been fairly presented to the Ohio courts

### Williams was not deprived of any material evidence.

Williams claims that the State failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The rejection of Williams' suppressed evidence claim was neither contrary to clearly established Federal law nor based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Brady,* the Court articulated the now well-established principle that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith of the prosecution." *Brady* at 87. *See also, United States v. Bagley,* 473 U.S. 667 (1985). To prevail on a *Brady* claim, the petitioner must show that the evidence was favorable to the defense, was suppressed by the prosecution, and was material to the case. *See, Kyles v. Whitley,* 514 U.S. 419 (1995).

Recently, in *Strickler v. Green*, 119 S.Ct. 1936 (1999), the Court reemphasized that *Brady* and its progeny established a duty on the part of the prosecution to disclose material evidence whether or not requested by the defense. Further, the Court recognized that such evidence includes both exculpatory and impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). Thus evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995). Each prosecutor has an affirmative duty to disclose of any favorable evidence that may by known by anyone working on the case for the government, including police and investigators. *Id*. at 437.

As set forth by the Court, there are three components of a *Brady* violation:

1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;

2) the evidence must have been suppressed by the State, either willfully or inadvertently; and

3) prejudice must have ensued.

In order to obtain relief for a *Brady* violation, a petitioner must satisfy **all** three requirements.

Unlike the so-called *Brady* claim at bar, *Stricker* concerned a claim, which at first glance appeared somewhat substantive. Specifically in 1990, a jury sentenced Tommy Strickler ("Strickler"), to death subsequent to his convictions for capital murder, robbery, and abduction. Upon federal habeas review, the District Court found that the prosecution withheld documents that thoroughly discredited Anne

40

Stoltzfus, who had testified in vivid detail as the prosecution's sole witness to the abduction. The suppressed documents showed that, upon being interviewed by police investigators immediately following the commission of the crime, Stoltzfus could not recall the encounter in any specific detail, nor could she positively identify either the suspect, his accomplices, or even the victim. Months later, as the prosecution's star trial witness, Stoltzfus offered confident testimony regarding the abduction, describing the situation in particular detail and identifying the suspect "beyond any doubt." Obviously, the suppressed documents would have discredited Stoltzfus' convincing testimony.

In *Strickler*, the Court ultimately concluded that Strickler failed to establish the prejudice required to overcome procedural default or to mount a successful *Brady* claim. In this context, the Court found prejudice to mean the "'reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Strickler*, 119 S.Ct. at 1952. The question was **not** whether it was likely that Strickler's conviction would be overturned in light of newly discovered evidence. Instead, prejudice depended on whether "in [the suppressed evidence's] absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434.

Even though the suppressed evidence in *Strickler* did not rise to the level of a constitutional violation, the *Strickler* suppressed evidence was of a manifestly **greater** significance that the so-called "*Brady* evidence" at bar. Indeed, Stoltzfus was the prosecution's only eyewitness to the abduction, and she confidently identified Strickler as the primary instigator of the crime. The suppressed evidence

41

would have thoroughly discredited Stoltzfus by demonstrating that, immediately after the crime's commission, this "confident" eyewitness could only provide police with a vague account of what occurred and no positive identifications. Despite the gross disparity between Stoltzfus' initial interviews and later testimony, the Court upheld the verdict against Strickler based solely on the existence of other evidence in absence of the tainted testimony.

Ultimately, in light of the weight of the independent evidence against Strickler and the Court's conclusion that the suppression of the impeachment evidence did not intrinsically deprive him of a fair trial, the Court decided that Strickler failed to meet the standard of prejudice required to overcome procedural default and to prove a *Brady* violation. Accordingly, the Court affirmed the Court of Appeals' reinstatement of Strickler's conviction.

Applying the *Strickler* standard to the present case, Williams' assertions are utterly void of merit. In *Strickler*, the suppression of evidence substantially undermining the testimony of a key prosecution witness was not sufficiently prejudicial to constitute a reasonable probability that the trial would have resulted differently. Here Williams' third ground for relief concerns the "suppression" of a criminal record which Williams victim Jeffrey Wallace openly acknowledged at trial. In its rejection of Williams' "*Brady*" claim, the Court of Appeals rendered the following binding factual determinations:

> The alleged exculpatory evidence offered is the criminal record of the shooting victim, Jeff Wallace. A review of the record reveals that at trial Wallace testified that he had felony convictions for battery and grand theft. Furthermore, Wallace testified he had used cocaine earlier on the day of the shooting. Accordingly, the trial court found that

there was no Brady violation where the information at issue was admitted into evidence at the trial and considered by the trier of fact.

(Apx. at Vol. VIII, p. 104).

The circumstances at bar do not remotely constitute an actionable *Brady* violation. It is dispositive that the materiality of a failure to disclose favorable evidence "must be evaluated in the context of the entire record." *United States v. Agurs,* 427 U.S. 97, 112-13 (1976). As reasonably determined by the Ohio courts in post-conviction, there is **no** reasonable probability of a different result since the so-called suppressed evidence was directly admitted into the record. More importantly, such evidence "could [not] reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id*. Williams' third ground for relief is not actionable in federal habeas corpus.

43

**Fourth ground for relief**

**Procedural posture:**

As his fourth ground for relief Williams contends that Ohio Criminal Procedure Rule 16(B)(1)(g) was violated when the written statement of witness James Trivett was not preserved in the record. Williams' did **not** raise this claim in the Court of Appeals on direct appeal. Thereafter, when Williams improperly attempted to raise the claim in his Ohio Supreme Court appeal, the Ohio Supreme Court found the claim to be procedurally defaulted as it held at *Williams, supra* at 161, "Appellant did not present this assignment of error in the court of appeals. Consequently the allegation of error has been waived."

Under the *Maupin* analysis, *supra*, this claim is procedurally defaulted. First, it is beyond dispute that the Ohio Supreme Court explicitly recognized and relied upon Williams' procedural default. In terms of this Court's procedural default analysis it is of no consequence that the Ohio Supreme Court also addressed Williams' claim on the merits. *Scott v. Mitchell, supra.* Indeed in *Harris v. Reed*, 489 U.S. 255, footnote 10 (1989), the Court rejected the argument that a procedural default could be excused by an alternative merits decision as it held:

> Moreover, a state court need not fear reaching the merits of a federal claim in an alternative holding. **By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.** (Citations omitted). Thus, by applying this doctrine to habeas cases, *Sykes* curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

44

(Emphasis added).

The third *Maupin* criteria has also been met as the procedural rule of waiver is an adequate and independent state ground to bar habeas claims. The state procedural rule serves the State's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. *See Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). Fourth, since the Ohio appellate courts enforced the state procedural rule of waiver which Williams violated, Williams is now required to demonstrate that there was cause and that he was actually prejudiced by the alleged constitutional error. To date, Williams has not even attempted to establish cause or prejudice for his procedural default. The *Maupin* criteria has been entirely satisfied.

Beyond the four part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." *Murray*, 477 U.S. at 496. Williams' claim regarding an alleged violation of Ohio Criminal Rule 16(B)(1)(g) does not raise an issue with respect to actual innocence. Furthermore, as discussed with respect to Williams' eighth habeas corpus ground for relief, the record contains an abundance of evidence demonstrating Williams' guilt.

45

**State procedural rule violations are not cognizable in federal habeas corpus. Moreover, Ohio Criminal Rule 16(B)(1)(g) was not violated by the failure to preserve the cumulative and consistent statement of James Trivett.**

Williams' assertion that the trial court violated Ohio Criminal Rule 16(B)(1)(g) by failing to preserve a statement of witness James Trivett lacks merit. It is well-established that a "necessary predicate for the granting of federal habeas relief. . . is a determination by the federal court that (the petitioner's) custody violates the Constitution, laws or treaties of the United States, 28 U.S.C. Section 2241." *Rose v. Hodges*, 423 U.S. 19, 21 (1975); *see also, Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir.), *cert. denied*, 488 U.S. 866 (1988). A federal habeas corpus court does not function as an additional state appellate court reviewing state court decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988), *cert. denied,* 488 U.S. 1011 (1989). "[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id. quoting Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985). In the case at bar, Williams' fourth ground for relief is entirely predicated on an alleged violation of Ohio law. As such, this Williams claim does not involve a question of constitutional dimension necessary to raise an actionable federal habeas corpus claim.

In addition to failing to raise a claim of constitutional dimension, Williams' fourth ground for relief does not even set forth an actionable state law violation. As factually determined by the Ohio Supreme Court in *State v. Williams*, *supra* at 162, Williams' claim is based on the following:

Trivett testified that appellant came to the Fuel Mart to call a cab, that appellant stayed at the Fuel Mart for approximately twenty to forty-five minutes, that he, Teasley, and appellant smoked a cigarette together, and that he saw appellant get into the front seat of the cab when the cab finally arrived.  Trivett also testified that he previously gave a statement to the police.  The defense attorney asked the court to review the statement for any inconsistencies.  **The trial court reviewed Trivett's statement and found that it was devoid of inconsistencies that the defense could have used for impeachment.**  Trivett's testimony essentially corroborated the testimony of his co-worker, William Teasley.  Trivett's testimony was cumulative and did not provide any additional information.

(Emphasis added).  The above trial court actions do not constitute a Rule 16(B)(1)(g) violation.  Indeed as held by the Ohio Supreme Court, "[Williams] has not shown a single instance in which incompleteness of the record precluded effective review.  As there is no indication that [Williams] has been prejudiced by the exclusion of these items, Propositions of Law III and IX are not well taken".  *Id.*

**Fifth Ground for Relief**

    **Procedural posture:**

As his fifth ground for relief Williams accuses the trial court of improperly instructing the jury: 1) that a verdict of life must be unanimous under Ohio law; 2) as to the definition of mitigating factors; 3) that the jury recommendation was a recommendation; and 4) as to the definition of reasonable doubt. On direct appeal, the Ohio Supreme Court rejected this claim on the merits when it was presented as Williams' nineteenth proposition of law.

    **It was not constitutional error for the trial court to properly instruct the jury on Ohio law.**

    **a.    Unanimity instruction**

Williams' unanimity instruction claim is the precise claim which the Sixth Circuit explicitly rejected in *Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998), *cert. denied*, 120 S.Ct. 110 (1999), and *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000). The instructions at issue in *Coe*, *Scott*, and here are constitutional for the reasons articulately expressed by the Sixth Circuit:

> Their language requires unanimity as to the results of the weighing, but this is a far different matter than requiring unanimity as to the presence of a mitigation factor. Nothing in this language could reasonably be taken to require unanimity as to the presence of a mitigation factor.

*Coe* at 338.

Ignoring the fact that "it does not mislead the jury to impress upon it the importance of unanimity....[it also] does not necessarily mislead a jury regarding its role to avoid disclosing what will happen if the jury fails to achieve unanimity",

48

*Coe*, at 339, Williams challenges the trial court's instruction that unanimity was required in order to return a life sentence recommendation. However, as in *Coe*, at most "the jury was given incomplete information, but not misleading information".

The Sixth Circuit's position in *Coe* and *Scott* was further embraced by the United States Supreme Court in *Jones v. United States,* 527 U.S. 373, 119 S.Ct. 2090 (1999). In *Jones*, the petitioner was sentenced to the death penalty pursuant to the Federal Death Penalty Act of 1994, 18 U.S.C. Section 3591 after the district court had denied his request for a jury instruction on the consequences of the jury deadlock. *Id*. at 2096. In its affirmance of Jones' death penalty conviction, the Court held:

> We have never suggested, for example, that the Eighth Amendment requires a jury be instructed as to the consequences of a breakdown in the deliberative process. On the contrary, we have long been of the view that '[t]he very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves.' *Allen v. United States*, 164 U.S. 492, 501 (1896).

*Id*. at 2099. (FN5 omitted). The Court also approvingly noted the **uniform rejection of the unanimity requirement by various Courts of Appeals including the Sixth Circuit:**

> FN6   It is not insignificant that the Courts of Appeals to have addressed this question, as far as we are aware, are uniform in rejecting the argument that the Constitution requires an instruction as to the consequences of the jury's inability to agree. See, e.g., *Coe v. Bell*, 161 F.3d 320, 339-340 (6th Cir. 1998); *Green v. French*, 143 F.3d 865, 890 (4th Cir. 1998); *United States v. Chandler*, 996 F.2d 1073, 1088-1089 (11th Cir. 1993); *Evans v. Thompson*, 881 F.2d 117, 123-124 (4th Cir. 1989).   Indeed, the Fifth Circuit, in the alternative, reached the same conclusion in this very case. See 132 F.3d 232, 245 (1998).

*Id*. at FN6, 2099.

49

Perhaps recognizing the weakness of his constitutional argument, Williams primarily predicates his challenge to the trial court's unanimity instruction on state law grounds.  However, **a constitutional deprivation, rather than a state law violation, must be established prior to the granting of a petition of federal habeas corpus.**

It is well-established that a "necessary predicate for the granting of federal habeas relief. . . is a determination by the federal court that (the Petitioner's) custody violates the Constitution, laws or treaties of the United States, 28 U.S.C. Section 2241." *Rose v. Hodges*, 423 U.S. 19, 21 (1975); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.), *cert. denied*, 488 U.S. 866 (1988).  A federal habeas corpus court does not function as an additional state appellate court reviewing state court decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988), *cert. denied,* 488 U.S. 1011 (1989).  "[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition.  *Id*. quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985).

Although a violation of Ohio law does not constitute an actionable federal habeas corpus claim, the trial court's unanimity instruction was not even contrary to Ohio law.  Indeed, by providing that "if the trial jury, unanimously finds. . . the offender guilty. . . the trial jury shall recommend to the court that the sentence of death be imposed. . .", **Ohio Revised Code Section 2929.03(D)(2) contains no specific language limiting jury unanimity to only death recommendations.**  The

statute is ambiguous and does not expressly exclude the need for jury unanimity with respect to recommendations that reject the imposition of capital punishment.[4]

Additionally, the trial court's instructions were in full accord with both Ohio law and Ohio Criminal Rule 31(A) which requires that verdicts shall be unanimous. In Part XI of *State v. Jenkins*, 15 Ohio St.3d 164, 473 N.E.2d 264 (1984), the Ohio Supreme Court **rejected** a capital inmate argument that Ohio law provides for the imposition of a life sentence absent a unanimity recommendation. *Jenkins*, 473 N.E. 2d at 306-07. In so ruling the Ohio Supreme Court relied upon the provision of Ohio Criminal Rule 31(A) that "the verdict must be unanimous. It shall be signed by all jurors...and returned by the jury to the judge in open court", to hold that:

> Application of the foregoing rule to the cause *sub judice* resolves any ambiguity raised by appellant under R.C. 2929.03(D)(2), and is, without question, consistent with the scope and applicability of the Rules of Criminal Procedure. Moreover, absent the application of Criminal Rule 31(A), it is, nevertheless well-recognized that when statutes allow a jury in a criminal prosecution to influence punishment, such as the recommendation of life imprisonment in place of death, and the statute fails to expressly authorize a nonunanimous vote, the jury cannot secure the lesser punishment absent unanimity. See, Annotation (1965), 1 A.L.R.3d at 1461, at 1462.

> Accordingly **we conclude that in returning a sentence of life imprisonment under R.C.2929.03(D)(2), the jury's verdict must be unanimous.**

*Jenkins,* 473 N.E.2d at 307. (Footnote omitted). (Emphasis added).

---

[4]  Williams additionally claims that *Mapes v. Coyle*, 171 F.3d 408 (6th Cir.) *cert. denied*, 120 S.Ct. 369 (1999), supports his state law argument. However, as held by this Court in *Scott*, 209 F.3d at 877 *"Mapes* dicta cannot preclude us from following *Coe."*

Cases subsequent to *Jenkins* have further clarified Ohio law with respect to distinguishable instructions. In *State v. Springer*, 63 Ohio St.3d 167, 586 N.E.2d 96 (1992), the Ohio Supreme Court held that a defendant could not be sentenced to death where the jury was hopelessly deadlocked. More recently, in *State v. Brooks*, 75 Ohio St.3d 148, 661 N.E.2d 1030 (1996), the Ohio Supreme Court condemned an instruction which prohibited a jury from considering the appropriateness of a life sentence prior to a unanimous determination that the death penalty was unwarranted.

Williams apparently interprets *Springer* and *Brooks* as exempting a jury's life imprisonment verdict from the unanimity requirement.[5] Contrary to Williams' assertion, under Ohio law a life sentence will not be automatically applied in the event of a jury deadlock. In *Jenkins*, the Ohio Supreme Court held "that in returning a sentence of life imprisonment under Ohio Revised Code Section 2929.03(D)(2), the jury's verdict must be unanimous." *Jenkins*, 473 N.E.2d at 307. In both *Springer* and *Brooks*, the jury was instructed that the verdict must be unanimous. *Springer*, 586 N.E.2d at 98; *Brooks*, 661 N.E.2d at 1032. Moreover, there was no limiting instruction given to either jury that the unanimity requirement applied only to a death sentence. *Id.* Ultimately, under Ohio law, a jury must make

---

[5] The Sixth Circuit rejected this argument by noting in *Scott*, 209 F.3d at 876, that whether "the instruction violated Ohio law by not conforming with the Ohio Supreme Court's subsequent decision in *Brooks* (**which we find doubtful, given that court's approval of Scott's sentence**), it does not violate Scott's federal constitutional rights."

a unanimous finding because the unanimity requirement applies to any sentence of death or life imprisonment.

In accordance with the trial court's instruction, the Williams' jury unanimously reached a death penalty recommendation. The trial court's instruction was in full accord with Ohio law and constitutional when evaluated under the criteria set forth by the Sixth Circuit in *Coe* and *Scott*. Williams' unanimity instruction claim is not actionable in federal habeas corpus.

### b.    Mitigating factors

Williams' next attacks the adequacy of the trial court's definition of "mitigating factors" based on an excerpt of the trial court's mitigation instruction. With respect to this type of claim, the Court in *Penry v. Lynaugh*, 492 U.S. 302, 328 (1989), held that the jury "must be able to consider and give effect to any mitigating evidence relevant to a defendant's background, character, or the circumstances of the case." In complete accord with *Penry*, the trial court instructed the jury at Tr. Vol. XI, 201-02:

> You will also consider any mitigating factors including but not limited to the nature and circumstances of the offense, or the history, character, and background of the Defendant, and all of the following:
>
> (1)    Whether at the time of committing the offense the Defendant because of mental disease, or defect, lacks substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.
>
> (2)    The youth of the Defendant.
>
> (3)    Any other factors that are relevant to the issue of whether the Defendant should be sentenced to death.

> Mitigating factors are factors that while they do not justify or excuse the crime, nevertheless, in fairness and mercy, may be considered by you as extenuating or inducing the -- reducing the degree of the Defendant's blame or punishment.

The trial court's instruction was neither erroneous nor constitutionally defective.

### c. Recommendation language

Williams next contends that it was constitutional error for the trial court to correctly instruct the jury as to its responsibility in the sentencing process under Ohio law. Although Williams purports to base his argument on *Caldwell v. Mississippi*, 472 U.S. 320 (1985), unlike the Mississippi law at issue in *Caldwell*, it is an accurate statement of Ohio law to instruct a jury that their finding of death is a recommendation. Indeed, such an instruction is in full accord with Ohio Revised Code Section 2929.03(D)(2), which provides:

> ...If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, **the trial jury shall *recommend* to the court that the sentence of death be imposed on the offender...**

(Emphasis added).

Ohio Revised Code Section 2929.03(D)(2) thus provides, essentially, that if the jury unanimously finds that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt, the jury shall recommend a sentence of death. Absent such a finding, it must recommend a sentence of life imprisonment. Ohio Revised Code Section 2929.03(D)(3) then provides that if the jury recommends a sentence of death, the court must determine for itself whether

aggravating circumstances outweigh mitigating factors, and if it so finds, it must impose a sentence of death.

The jury instructions challenged by Williams constitute an accurate statement of Ohio law. Justice O'Connor's separate opinion in *Caldwell* makes it clear that it is constitutionally permissible to give accurate information regarding the jury's role in capital sentencing scheme. *Caldwell*, 472 U.S. at 341-43. In decisions subsequent to *Caldwell*, the Court has reiterated that,

> if the challenged instructions accurately described the role of the jury under state law, there is no basis for a *Caldwell* claim. To establish a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law.

*Dugger v. Adams*, 489 U.S. 401, 407 (1989), *See also, Darden v. Wainwright*, 477 U.S. 168, 183-84, n.15 (1986). Similarly, in *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), the Sixth Circuit recently held, "to establish a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law".

Here the trial court did not misstate Ohio law or mislead the jury as to its responsibility in the sentencing process. To the contrary, the trial court's charge that the jury's duty was to recommend a sentence was a correct statement of Ohio law. Similarly, the trial court at no point mentioned the appellate process or allowed the jury to minimize their role through dependence on said process. Williams' attack upon the trial court's accurate Ohio law instruction on the jury's role in the sentencing process must be denied.

### d. Reasonable doubt

Williams finally characterizes the trial court's reasonable doubt instruction as "constitutionally defective". However, the trial court fully and accurately set forth the quantum of proof necessary to establish proof beyond a reasonable doubt as it read verbatim Ohio Revised Code Section 2901.05(D) to the jury at Tr. Vol. XI, 202:

> Reasonable doubt is present when, after you have carefully considered and compared all the evidence, you cannot say you are firmly convinced that the aggravating circumstances outweighs the factors in mitigation. Reasonable doubt is not mere possible doubt because everything relating to human affairs and depending upon moral evidence is open to some possible or imaginary doubt. Proof beyond reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs.

The above quoted instruction leaves no question as to the requirement and definition of proof beyond a reasonable doubt. In *Thomas v. Arn*, 704 F.2d 865, 869 (6th Cir. 1983), the Sixth Circuit upheld Ohio's statutory definitions of reasonable doubt and proof beyond a reasonable doubt as defined in Ohio Revised Code Section 2901.05(D). In so ruling, the Sixth Circuit held that the jury instructions, "* * * when read as a whole and taken in the context in which the instructions are presented here, do not offend due process or any other federally guaranteed constitutional right." *Id.* As this exact jury instruction was upheld by the Sixth Circuit in *Thomas* at 869, Williams' allegations are totally lacking in merit.

56

## Sixth Ground for Relief

**Procedural posture:**

As his sixth ground for relief Williams contends that the trial court's instructions regarding aggravating circumstances was contrary to Ohio law. On direct appeal, Williams fairly presented this claim to the Ohio Supreme Court as his fourth proposition of law.

**The trial court correctly provided the jury with instructions containing an accurate definition of aggravating circumstances as defined in Ohio Revised Code Section 2929.04.**

Williams erroneously contends that proper instructions were contrary to Ohio law. It is well-established that a "necessary predicate for the granting of federal habeas relief. . . is a determination by the federal court that (the petitioner's) custody violates the Constitution, laws or treaties of the United States, 28 U.S.C. Section 2241." *Rose v. Hodges*, 423 U.S. 19, 21 (1975); *see also, Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir.), *cert. denied*, 488 U.S. 866 (1988). A federal habeas corpus court does not function as an additional state appellate court reviewing state court decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988), *cert. denied,* 488 U.S. 1011 (1989). "[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id*. *quoting Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985). In the case at bar, Williams' sixth ground for relief is entirely predicated on an alleged violation of Ohio law. As such, this Williams claim does not involve a

question of constitutional dimension necessary to raise an actionable federal habeas corpus claim.

Moreover, even if raised as a constitutional claim, Williams' sixth ground for relief lacks merit. Williams alleges that Ohio Revised Code Section 2929.04(A)(7) (felony murder perpetrated by principal offender or committed with prior calculation and design) and Ohio Revised Code Section 2929.04(A)(3)(offense committed with purpose of escaping detection for another offense) are duplicative and involve one course of conduct. However, contrary to Williams' conclusory assertions, the challenged aggravated circumstances can be mutually exclusive. Certainly not every felony murder is committed with a purpose to escape detection. Similarly the crimes listed under Ohio Revised Code Section 2929.04(A)(7) do not constitute an exhaustive list of possible crimes that could be committed to escape detection of an aggravated murder. Furthermore there is no requirement in the statute that the jury must specify an aggravating circumstance nor is there a requirement that one aggravating circumstance excludes the other.

Under Ohio Revised Code Section 2929.04(A)(7), the jury is not required to specify which alternative applies and aggravating circumstances are not mutually exclusive. Consequently, the trial court properly instructed the jury on the definition of aggravated circumstances. Williams' sixth claim for relief is not actionable in federal habeas corpus.

**Seventh Ground for Relief**

**Procedural posture:**

In his seventh ground for relief, Williams asserts that the prosecutor improperly argued the nature and circumstances of the offense as an aggravating factor. Williams failed to present this claim on direct appeal. Under a *Maupin* analysis, this claim is procedurally defaulted. Since this claim was not presented on direct appeal, the first and second prongs of *Maupin* have been satisfied.

The third *Maupin* prong has also been met, as the procedural rule of waiver is an adequate and independent state ground to bar habeas claims. The state procedural rule serves the State interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. *Rust v. Zent* 17 F.3d 155, 161 (6th Cir. 1994). Fourth, since the Ohio appellate courts were deprived of the opportunity to enforce the state procedural rule of waiver which Williams violated, Williams must demonstrate that there was cause and that he was actually prejudiced by the alleged constitutional error. To date, Williams has not established cause or prejudice for his procedural default. The *Maupin* criteria has been entirely satisfied.

Beyond the four part *Maupin* analysis, this court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . " *Murray*, 477 U.S. at 496. Williams' seventh claim consists of meritless allegations that do not raise an issue with respect to actual innocence. Furthermore, the record contains an abundance of evidence demonstrating Williams' guilt.

**The prosecutor did not improperly comment on the nature and circumstances of Williams' offense.**

As his seventh ground for relief Williams brands a list of prosecutor comments as "improper"[6].  Although based on the title of Williams seventh ground for relief it appears that Williams believes that the prosecutor argued that the nature and circumstances of the offense constituted the aggravating factor for which Williams was charged, in **none** of the actual comments cited by Williams does the prosecutor ever put forth such a claim.  Indeed of the comments at issue, the only mention that the prosecutor makes to an aggravating circumstance concerns the value of the cab fare.  This comment was both correct and proper, as murder in the course of an aggravated robbery was in fact one of the aggravating circumstances for which Williams was charged.

Moreover, the comments now at issue, **which were not even deemed objectionable by Williams at trial,** made no difference in the outcome of the trial, particularly in light of the statutory aggravating circumstances Williams was found guilty of committing and the lack of credible mitigating evidence presented by Williams.  Certainly, the trial court properly instructed the jury that the only aggravating circumstances at issue were the specifications of aggravating circumstances that the jury had previously found Williams guilty of committing. (Tr. Vol. XI, 201).  Furthermore, the trial judge repeatedly told the jurors to ignore

---

[6]    In his petition, Williams does not offer any explanations for why he deems the cited comments to be "improper"

60

statements of law from counsel because the Court would instruct on the applicable law. As conceded by Williams within his twelfth ground for relief, the Court also repeatedly told the jury that arguments of counsel were not evidence. (Tr. Vol. VII, 32; Tr. Vol. IX, 7-8, 80). The instruction was clear in this regard, and there is no reason to presume that the jury could not follow the trial court's instructions. Williams thus cannot show that the prosecutor's comments had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Williams cannot make this showing because the trial court properly instructed the jury as to the weighing process in mitigation and jurors are presumed to follow instructions from the Court.

Finally, even if the prosecutor's argument regarding the nature and circumstances of the offense was improper, independent, appellate reweighing cured any constitutional deficiencies. *Clemons v. Mississippi*, 494 U.S. 738 (1990). *See also*, *Jones v. United States*, *supra* at 2109. (Constitution does not require any particular method of appellate reweighing pursuant to *Clemons*). Appellate reweighing of aggravating circumstances and mitigating factors is both proper and constitutional. *Richmond v. Lewis*, 506 U.S. 40, 48 (1992); *Romano v. Oklahoma*, 512 U.S. 1, 11 (1994); *Bolender v. Singletary*, 16 F.3d 1547, 1568 (11th Cir.), *cert. denied* 513 U.S. 1022 (1994).

**Eighth ground for relief**

    **Procedural posture:**

    As his eighth ground for relief Williams attacks the sufficiency of the evidence upon which his conviction is based. On direct appeal, Williams fairly presented this claim to the Ohio courts as his third assignment of error in the Ohio Court of Appeals and eighteenth proposition of law in the Ohio Supreme Court.

    **Williams' conviction was not contrary to the manifest weight of the evidence.**

    Williams erroneously evaluates the sufficiency of the evidence **in a light most favorable to Williams** to reach the predictable self-serving conclusion that "a number of plausible scenarios exist that exculpate [Williams]". (Petition, pp. 43-44). However, in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) the Supreme Court of the United States stated that a federal tribunal on habeas corpus reviewing the sufficiency of the evidence must make the following inquiry:

> Whether, after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

However, the Court carefully placed limits on its decision in *Jackson*. The Court made it clear that this test does not require that the federal habeas corpus court sit as a trier of fact. Rather, the federal district court should give every weight to the jury's ability to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basis facts to ultimate facts.

    Williams attacks the sufficiency of the evidence with respect to the theft offense underlying his murder conviction, the jury's finding that the murder was

perpetrated to escape detection, and his guilt of the Wayman Hamilton murder.  In

its rejection of Williams' direct appeal, the Ohio Supreme Court set forth binding

factual findings at *Williams*, 73 Ohio St. 3d at 153-56. In addition to these

findings, in its rejection of Williams' sufficiency of the evidence claim at 73 Ohio

St. 3d at 165-66, the Ohio Supreme Court held:

> Circumstantial evidence and direct evidence inherently possess the
> same probative value and therefore should be subjected to the same
> standard of proof.  When the state relies on circumstantial evidence to
> prove an essential element of the offense charged, there is no need for
> such evidence to be irreconcilable with any reasonable theory of
> innocence in order to support a conviction.  Therefore, where the jury
> is properly and adequately instructed as to the standards for
> reasonable doubt a special instruction as to circumstantial evidence is
> not required.
>
> *               *               *
>
> The evidence presented at trial, although circumstantial, was sufficient
> to meet this test.  Furthermore, we will not substitute our evaluation
> of a witness's credibility for that of a jury.  "Not even in a capital case
> may we sit as a 'thirteenth juror' * * *as to a judgment of conviction.

As thus demonstrated, the record at bar contains an abundance of evidence

to support the jury's verdict.  Specifically, two disinterested witnesses, William R.

Teasley and James Uhl Trivett, positively identified Williams as entering the Fuel

Mart on August 3, 1990, where without money he used the gas station pay phone

to summon a Clifton Cab to take him to Hamilton, Ohio.  (Tr. Vol. VII, 110-40).

Clifton Cab dispatcher Earl Jones records demonstrated that at approximately 9:20

p.m. Wayman Hamilton's cab was dispatched to take the fare from the Fuel Mart to

Hamilton, Ohio.  (Tr. Vol. VII, 86-87).  About an hour later, police found Wayman

dead in his cab in Hamilton, Ohio, shot between the eyes at point-blank range in the

middle of his forehead. (Tr. Vol. VII, 68-69). The cab meter reflected a fare of $32.10. (Tr. Vol. VII, 243-48). This fare, plus the $50 in additional fares which Hamilton's trip sheet indicated had been generated earlier that evening, exceeded the money found on his person. (Tr. Vol. VII, 90).

Viewed in a light most favorable to the prosecution, the evidence supports a finding that Williams, who lacked the money for a 25 cent telephone call, did not pay for the $32.10 cab ride to Hamilton, Ohio, but instead robbed Wayman Hamilton of the money which he had earned that evening, and then killed the only person who he believed could identify him. The evidence additionally reflected that Williams perpetrated a remarkably similar felonious assault upon Jeff Wallace within days of his aggravated robbery/murder of Wayman Hamilton, which resulted in a positive identification of Williams by Wallace. In its rejection of Williams direct appeal, the Ohio Supreme Court factually determined at, 73 Ohio St. 3d at 158 that the ballistics evidence:

> tended to show that the same gun was involved in the murder of Wayman Hamilton and the assault on Jeff Wallace. A ballistics and firearms expert from BCI testified that all three of the cartridge casings, the one recovered from the scene of the Hamilton murder and two casings recovered from the cab of Wallace's truck, had at one time been loaded in, chambered in, and extracted from, the same firearm.
>
> Evidence tending to show that the same gun was used in both crimes is pertinent to the issue of identity. Wallace identified appellant through a picture in the newspaper, selecting his photo from a police photo array, and in a police line-up. Wallace's identification coupled with the .25 caliber casings found at the Hamilton crime scene and in the cab of Wallace's truck connected the two crimes and served to identify appellant as the perpetrator of both crimes. Due to the proximity in time and location, the apparent use of the same gun, and

64

Wallace's identification of the appellant as the perpetrator, the trial court corrected permitted joinder of the separate crimes.

As thus demonstrated, the minimum standards of *Jackson* have been met and exceeded. The rejection of Williams' sufficiency of the evidence claims was not contrary to United States Supreme Court precedent nor based on an unreasonable determination of the facts in light of the evidence presented. Williams' eighth ground for relief is void of merit. *See also, Walker v. Russell,* 57 F.3d 472 (6th Cir.) *cert. denied*, 516 U.S. 975 (1995); *Neal v. Morris,* 972 F.2d 675 (6th Cir. 1992).

**Ninth ground for relief**

**Procedural posture:**

As his ninth ground for relief Williams complains that the trial court unconstitutionally denied him the assistance of a mitigation specialist. On direct appeal, the Ohio Supreme Court rejected this claim on the merits when it was presented as Williams' twenty-third proposition of law.

**Williams was not constitutionally entitled to a "mitigation specialist" to assist appointed counsel in preparation for the penalty phase of Williams' trial.**

Williams does not, and of course cannot, deny that he was accorded expert assistance at the penalty phase of his trial. Indeed, to the contrary, the trial court approved the appointment, at state's expense pursuant to Ohio Revised Code Section 2929.024, of psychiatrist Dr. Glenn Weaver who thereafter testified on Williams' behalf. Additionally, the record reflects that, although not called as a defense witness, an individual named Larry Dehus was appointed for the defense to examine the firearm evidence and consult with Williams' counsel. (Entry, November 28, 1990, Apx. at Vol. I, p. 233).

Since he cannot dispute that he was accorded expert assistance, Williams ninth ground for relief is entirely predicated on the trial court's denial of a "mitigation specialist" who allegedly would have provided assistance to defense counsel in their penalty phase preparation. The trial court fully explained its basis at Tr. Vol. IX, 14, for denying this Williams motion as follows:

> This Court has never denied you the use of any expert if you could show the necessity for it. You still have not shown me the necessity of a mitigation specialist. You have not told me anything except that the Public Defender School told you that you have to have one.

In *Ake v. Oklahoma*, 470 U.S. 68 (1985), the Court set forth a three factor test to determine when expert psychiatric assistance is required in preparing a defense. The three factors are as follows: The private interest that will be affected by the action of the State; the governmental interest that will be affected if the safeguard is to be provided; and the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided.

By entry filed January 23, 1991, the trial court fully articulated its basis for overruling Williams' "mitigation specialist" motion. Specifically the trial court held that Williams' counsel were "amply qualified to conduct interviews and accumulate information in this regard". Stating further that "the Court has received no specific information, or demonstration of need, from defense counsel" and emphasizing its willingness to approve funds for flight transportation for counsel to interview witnesses, the trial court reiterated that it "must have more than vague assertions" and that defense counsel had failed to identify specific individuals who needed to be interviewed. (Entry, January 23, 1991, Apx. at Vol. II, p. 20).

Similarly, in its denial of Williams direct appeal, the Ohio Supreme Court held at *State v. Williams*, 73 Ohio St. 3d 153, 171 that,

> Ohio requires a criminal defendant to demonstrate a particularized need for assistance...Absent such demonstration, the trial court does not abuse its discretion in denying court-appointed expert assistance. In our view, a review of the record reflects that the appellant did not demonstrate a particularized need for a mitigation specialist.

The above quoted state court determinations are not contrary to, nor an

unreasonable application of, clearly established United States Supreme Court precedent nor unreasonable in light of the evidence presented in the State court. Williams received all the expert assistance to which he was entitled under *Ake*. Williams' ninth ground for relief is not actionable in federal habeas corpus.

**Tenth and eleventh ground for relief**

**Procedural posture:**

In his tenth and eleventh grounds for relief, Williams complains that his defense counsel provided ineffective assistance of counsel by:

1. inadequately preparing for the mitigation-penalty phase of the trial;

2. not objecting to the jury instructions during the mitigation-penalty phase of the trial;

3. not objecting to allegedly improper statements by the prosecution during the mitigation-penalty phase of the trial;

4. not properly instructing the jury during *voir dire*;

5. not presenting any scientific evidence regarding the shell casings;

6. not objecting to the jury instructions during the guilt/innocence phase of the trial;

7. not objecting to allegedly improper statements by the prosecutor during the guilt/innocence phase of the trial;

8. not objecting to various discretionary trial court rulings and admissions.

Williams failed to present sub-claim one and five on direct appeal. Williams presented the remaining sub-claims of his tenth and eleventh grounds for relief to the Ohio Supreme Court on direct appeal as his thirtieth proposition of law.

Under a *Maupin* analysis sub-claim one and five are procedurally defaulted. As these sub-claims were not presented on direct appeal, the first and second prongs of *Maupin* have been satisfied.

69

The third *Maupin* prong has also been met, as the procedural rule of waiver is an adequate and independent state ground to bar habeas claims. The state procedural rule serves the State interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. *Rust v. Zent* 17 F.3d 155, 161 (6th Cir. 1994). Fourth, since the Ohio appellate courts were deprived of the opportunity to enforce the state procedural rule of waiver which Williams violated, Williams must demonstrate that there was cause and that he was actually prejudiced by the alleged constitutional error. To date, Williams has not established cause or prejudice for his procedural default. The *Maupin* criteria has been entirely satisfied.

Beyond the four part *Maupin* analysis, this court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . " *Murray*, 477 U.S. at 496. Williams' sub-claims one and five consist of meritless allegations that do not raise an issue with respect to actual innocence. Furthermore, the record contains an abundance of evidence demonstrating Williams' guilt.

**Williams was accorded the effective assistance of counsel at trial.**

In *Strickland v. Washington*, 466 U.S. 668, 698 (1984), the United States Supreme Court held that in order to show that counsel was ineffective, a habeas petitioner must demonstrate first that counsel's performance was deficient, and second that such performance prejudiced the defense. In order to amount to prejudice, an error must be such that there is "a reasonable probability that *** the result of the proceeding would have been different." *Id.* at 694. A habeas court

70

need not determine whether there was deficient performance by counsel before considering the prejudice issue. *Id*. at 697. Therefore, if a federal habeas corpus court fails to find **either** prong of the *Strickland* test, a writ will not issue.

The Court further held that "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. Thus, a habeas corpus claim of ineffective assistance of counsel must clearly establish the following:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. **First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.** Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id*. at 687. (Emphasis added).

The Sixth Circuit Court of Appeals has applied *Strickland* to reject habeas corpus claims regarding strategic defense counsel decisions. In *Meeks v. Bergen*, 749 F.2d 322 (6th Cir. 1984), the Sixth Circuit held:

> In *Strickland, supra,* the Supreme Court stated that where there is more than one possible defense, and counsel conducts a substantial investigation into the possible defenses, the strategic choice made as a result of the investigation is "virtually unchallengeable," the Court noted additionally that, even should counsel fail to conduct a substantial investigation into each of several plausible lines of defense, the representation might nonetheless be effective.

71

*Meeks* at 328. *See also, Chandler v. Jones*, 813 F.2d 773 (6th Cir. 1987); *Krist v. Foltz*, 804 F.2d 944 (6th Cir. 1986).

On the issue of prejudice, it should be noted that in 1993, the Court revisited the prejudice prong of the *Strickland* test in *Lockhart v. Fretwell,* 506 U.S. 364 (1993). In *Lockhart*, the Court held that with respect to Sixth Amendment claims, a defendant must show that "[t]he 'prejudice' component of the *Strickland* test does not implicate these concerns. It focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id*. at 372. The Court explained further that "unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. Like the multitude of claims asserted individually in his petition and then again as instances of ineffectiveness, the allegations within Williams's third ground for relief entirely encompass well reasoned defense counsel tactics. It is, of course, manifest that courts "should not conjure up tactical decisions an attorney could have made, but plainly did not*." Griffin v. Warden, Md. Correctional Adjustment Ctr.,* 970 F.2d 1355 (4th Cir. 1992). In the case at bar, Williams' ineffective assistance of counsel claims are entirely comprised of such trivial tactical challenges. Williams' ineffective assistance of counsel complaints epitomize precisely the type of after the fact strategic second guessing which is **not** actionable under *Strickland.*

72

a. **Trial counsel effectively prepared for the mitigation-penalty phase of Williams' trial.**

In his first sub-claim, Williams erroneously claims that his trial counsel failed to adequately prepare for the mitigation-penalty phase of his trial. Williams defense counsel did initially object to moving forward into mitigation at the onset of the mitigation hearing. However, after raising the objection, which was actually based on their denied request for a mitigation specialist, Williams' counsel stated for the record that "[w]e are here ready to proceed. . ." (Tr. Vol. XI, 12). After this response, the trial court asked William's counsel again if they were ready to proceed and counsel responded affirmatively. (Tr. Vol. XI, 12). As the mitigation hearing proceeded, William's trial counsel displayed their preparation by immediately calling mitigation witnesses.

Williams then proceeds to reiterate his ninth ground for relief by attacking his defense counsel's failure to obtain and present a cultural expert. As stated earlier, Williams received all the expert assistance to which he was entitled. Consequently, his defense counsel was not ineffective for failing to present a cultural expert at trial.

Williams next asserts that his counsel failed to adequately investigate and interview mitigation witnesses. Under *Strickland*, a defendant must overcome the presumption that, under the circumstance, the challenged action might be considered sound trial strategy. 466 U.S. at 698. Thus, a defendant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons not to pursue every possible trial tactic. In this case, Williams' counsel

73

called his mother and grandmother as mitigation lay witnesses. It is unclear from the record how many mitigation witnesses were actually contacted and not called as witnesses. Obviously, Williams' counsel made a strategic decision about which witnesses to call during mitigation based on their ability to bolster Williams' case. Therefore, Williams' defense counsel was not ineffective for failing to call every available witness during mitigation.

Williams finally complains that his defense counsel failed to promptly obtain a psychiatrist. The trial court approved the appointment of psychiatrist Dr. Glen Weaver who thereafter testified on Williams' behalf. Dr. Weaver examined Williams for several hours about a week before the mitigation hearing. (Tr. Vol. XI, 54). Williams' examination included collecting a history, a mental status and running several tests. (Tr. Vol. XI, 74). From the record, there is no support for Williams' current speculation that an earlier examination would have changed the testing results. (Tr. Vol. XI, 127). Furthermore, there is no evidence that outside documents and records would have changed Dr. Weaver's diagnosis. In fact, Dr. Weaver testified several times during cross-examination that, although having access to Williams' past mental health records and juvenile records would have added to his opinion, they were not necessary to formulate his opinion. (Tr. Vol. XI, 86-89). Consequently, Dr. Weaver was adequately prepared to render an opinion at Williams' mitigation hearing and defense counsel was not ineffective for calling Dr. Weaver during the mitigation phase of the trial.

Since the record reveals that Williams' defense counsel performed effectively during the mitigation-penalty phase of the trial and there is no evidence of

prejudice, Williams has failed to satisfy either prong of the *Strickland* test. 466 U.S. at 698. Williams' first sub-claim is meritless.

### b. Trial counsel was not ineffective during the jury instructions at the mitigation-penalty phase.

In his second sub-claim, Williams reiterates his fifth and sixth ground for relief by erroneously contending that defense counsel failed to object to proper jury instructions. As fully addressed in the fifth and sixth claims, the trial court properly instructed the jury during the mitigation-penalty phase of Williams' trial. Consequently, Williams cannot meet either prong of the *Strickland* test since his defense counsel was not deficient for failing to object to proper jury instructions and there is no evidence of prejudice. 466 U.S. at 698. Williams' second sub-claim for ineffective assistance of counsel is meritless.

### c. Trial counsel was not ineffective for failing to object to various remarks made by the Prosecutor during the mitigation-penalty phase of the trial.

In his third sub-claim, Williams repeats his sixteenth ground for relief by claiming that defense counsel failed to object to allegedly improper statements by the prosecution. As fully discussed in the sixteenth claim, the prosecutor's comments did not deprive Williams of a fundamentally fair trial. As a result, Williams cannot meet either prong of the *Strickland* test since his defense counsel's performance was not deficient and there is no evidence of prejudice. 466 U.S. at 698. Williams' third sub-claim is meritless.

### d. Trial counsel was not ineffective during *voir dire*.

In his fourth sub-claim, Williams claims that his defense counsel was ineffective during *voir dire* for misstating the law to the jury with regard to the weighing process. Williams further contends that this misstate of the weighing process led the jury to incorrectly weigh the mitigating factors against the aggravating circumstances. However, Williams fails to cite to any specific examples in the record where defense counsel misstated the law. Thus, there is no evidence to support the contention that the jury incorrectly weighed the evidence. Consequently, Williams cannot satisfy either prong of the *Strickland test*, since defense counsel's performance was not deficient and there is no evidence of prejudice. 466 U.S. at 698. Williams' fourth sub-claim is meritless.

### e. Trial counsel effectively presented scientific evidence regarding the shell casings.

In his fifth sub-claim, Williams complains that his defense counsel failed to present any expert testimony or scientific evidence at trial regarding the shell casings. Specifically, Williams argues that his defense counsel was ineffective for not calling their own ballistics expert. This is simply incorrect. The record reflects that, although not called as a defense witness, an individual named Larry Dehus was appointed for the defense to examine the firearm evidence and consult with Williams' counsel. (Entry, November 28, 1990, Apx. at Vol. I, p. 233).

Mr. Dehus examined the evidence and submitted a ballistics report to Williams' defense counsel prior to trial. As even admitted by Williams' in his petition, "[t]he written report essentially reached the same conclusion as the

76

state's expert regarding the inconclusiveness as to whether the three subject cartridges had been fired from the same gun." (Petition, p. 59). At trial, the State's expert, David Hall, testified as follows during cross-examination:

| Mr. Davidson: | So, if I understand it correctly from your testimony, that you look at the chamber, the firing pin and the breach mark to determine if the bullet was fired out of the same weapon; correct? |
|---|---|
| Mr. Hall: | That is correct. |
| Mr. Davidson: | And, in this case, you can – after looking at those three things, you cannot tell this jury that those three casings were fired out of the same weapon; is that correct? |
| Mr. Hall: | That is correct. **I cannot say they were fired out of the same weapon, and I cannot say they – they were. I found it inconclusive. I can't say either way.** |

(Tr. Vol. VIII, 127). (Emphasis added). Similarly, the defense's retained expert Larry Dehus stated in his report that:

. . .All three cartridges had multiple extractor markings on them indicating that they had been chambered more than once. Matching extractor markings were noted on all three cartridge casings indicating that they were chambered in the same gun. **There is insufficient evidence to conclude that these cartridge casings were fired in the same weapon**. . .

(Apx. at Vol. VI, p. 337 (Exhibit EE)). Consequently, defense counsel made a tactical decision not to call their expert since there was nothing to gain from his testimony. In fact, Mr. Dehus' testimony had the potential to negatively impact Williams' case by supporting the findings of the prosecution's ballistics expert. Thus, if anything, Williams' defense counsel could have been found ineffective for allowing Mr. Dehus to testify. Since the record reveals that Williams' defense

counsel performed effectively by not calling their ballistic expert and there is no evidence of prejudice, Williams has failed to satisfy either prong of the *Strickland* test. 466 U.S. at 698. Williams' fifth sub-claim is meritless.

> **f.      Trial counsel was not ineffective for failing to object to jury instructions during the guilt/innocence phase of the trial.**

In his sixth sub-claim for relief, Williams simply reiterates his twelfth claim by arguing that defense counsel failed to object to proper jury instructions. Williams' initially complains that his defense counsel was required to object to correct preliminary jury instructions at the guilt/innocence phase of the trial. Williams next contends that his defense counsel was required to object to accurate jury instructions on the definition of purpose. As a result, Williams cannot meet either prong of the *Strickland* test since his defense counsel was not deficient for failing to object to proper jury instructions and there is no evidence of prejudice. 466 U.S. at 698. Williams' sixth sub-claim for ineffective assistance of counsel is meritless.

> **g.      Trial counsel was not constitutionally required to lodge frivolous objections to proper prosecutorial remarks made during the guilt/innocence phase of trial.**

In his seventh sub-claim, Williams repeats part of his sixteenth claim by contending that his defense counsel failed to object to alleged misconduct by the prosecutor. Williams' first claims that his defense counsel was required to object to the prosecutor's use of peremptory challenges. As addressed in the sixteenth claim, the prosecutor properly used his peremptory challenges during *voir dire*. Williams next complains that defense counsel failed to object to various remarks made by the prosecutor throughout the trial. As discussed in the sixteenth claim,

Williams was not deprived of a fundamentally fair trial by the prosecutor's isolated remarks. Thus, Williams cannot meet either prong of the *Strickland* test since his defense counsel was not deficient for failing to object to acceptable conduct by the prosecutor and there is no evidence of prejudice. 466 U.S. at 698. Williams' seventh sub-claim for ineffective assistance of counsel is meritless.

### h. Trial counsel was not ineffective for failing to object to discretionary evidentiary rulings and admissions.

In his eighth sub-claim, Williams reiterates part of his sixteenth and seventeenth claims by attacking defense counsel's strategy of not lodging meritless objections to various trial court evidentiary rulings and admissions. However, such decisions are uniquely within the discretion of the state trial judge and do not rise to a constitutional magnitude. *Bell v. Arn*, 536 F.2d 123 (6th Cir. 1976); *Broffard v. Marshall*, 751 F.2d 845 (6th Cir.), *cert. denied*, 474 U.S. 872 (1985). Furthermore, as discussed in the sixteenth claim, the trial court decisions now at issue were imminently proper. Williams consequently cannot meet either prong of the *Strickland* test since defense counsel was not deficient for failing to object to discretionary trial court rulings, and there is no evidence of prejudice. 466 U.S. at 698. Williams' eighth sub-claim for ineffective assistance of counsel is meritless.

**Twelfth ground for relief**

　　**Procedural posture:**

　　In his twelfth ground for relief Williams argues that the trial court improperly instructed the jury during the guilt/innocence phase. On direct appeal, Williams fairly presented this claim to the Ohio Supreme Court within his nineteenth proposition of law.

　　**It was not constitutional error for the trial court to properly instruct the jury.**

　　Williams' twelfth ground for relief challenges two proper trial court remarks. William initially complains that it was "constitutionally inappropriate" for the trial court to **correctly** tell the jury that the closing arguments of counsel are not evidence. Although Williams erroneously implies that the jury was told that only the arguments of defense counsel were not evidence, the record reflects that the jury was repeatedly instructed with respect to both counsel that, "the evidence does not include...opening statements or closing arguments of counsel. The opening statements and closing arguments of counsel are designed to assist you. They are not evidence." (Tr. Vol. IX, 80). Similarly, before the arguments of **either** counsel, the jury was instructed "this is not evidence. It is merely an outline of what the attorneys expect their evidence will show". (Tr. Vol. VIII, 32). Contrary to Williams' conclusory allegations, this eminently proper trial court comment sets forth the proper standard of the law. Moreover, even if such were not the case, nothing in the trial court's comment constitutes a fundamental fairness violation necessary to sustain relief in federal habeas corpus.

Williams next contends that it was "improper" for the trial court to **accurately** instruct the jury on the definition of purpose in full accord with Ohio law. Williams does not reveal in his petition why the feels the trial court's instruction was improper and Respondent respectfully submits that correctly informing the jury as to the provisions contained in Ohio Revised Code Section 2901.22(A) in no way deprived Williams of a fundamentally fair trial.

Williams finally repeats his challenge to the trial court's "reasonable doubt" instruction. This claim lacks merits of reasons discussed with respect to Williams' fifth ground for relief. *See, Thomas v. Arn*, 704 F.2d 865, 869 (6th Cir. 1983),

**Thirteenth ground for relief**

    **Procedural posture:**

    As his thirteenth ground for relief Williams complains of the trial court's refusal to order the disclosure of the State's confidential informant. On direct appeal, the Ohio Supreme Court rejected this claim on the merits when it was presented as Williams' sixteenth proposition of law.

> **Williams was not denied fundamental fairness by the trial court's discretionary decision to refuse to compel the prosecutor to disclose the identity of the confidential informant.**

    As discussed with respect to Williams' first through fourth grounds for relief, an attack upon a trial court discretionary decision does not rise to a constitutional magnitude unless the federal habeas petitioner can demonstrate a fundamental fairness violation. In his thirteenth ground for relief Williams erroneously claims that the confidential informant in his case was "vital" to the defense. Williams' conclusory allegations are directly contrary to the binding findings of the Ohio Supreme Court, which factually determined at *Williams*, 73 Ohio St.3d 153, 172:

> Based on the facts in the record, it does not appeal that the testimony of the informant was vital to establishing an element of the crime. The informant was not an eyewitness to or participant in the crimes; the state did not intend to call the informant as a witness; and the informant would not have helped to establish appellant's alibi defense. Nor would disclosure of the informant have been beneficial to appellant in preparing or making a defense. Accordingly, the trial court did not err in refusing to compel the prosecutor to reveal the identity of the confidential informant.

    The above Ohio Supreme Court rejection of Williams' confidential informant claim was neither contrary to clearly established federal law nor based upon an

82

unreasonable determination of the facts in light of the evidence presented.

Williams' thirteenth ground for relief is not actionable in federal habeas corpus.

**Fourteenth ground for relief**

**Procedural posture:**

As his fourteenth ground for relief, Williams contends that he was denied effective assistance of appellate counsel during his direct appeal. The Ohio Supreme Court rejected this claim on the merits on direct appeal when it was presented as Williams' thirty-first proposition of law.

**Williams was accorded the effective assistance of appellate counsel during his direct appeal.**

In *Douglas v. California*, 372 U.S. 353 (1963), the United States Supreme Court recognized the constitutional right to counsel on initial direct appeal. In *Anders v. California*, 386 U.S. 738 (1967), the Court set forth minimum standards of appellate representation:

1.  Counsel must act as an active advocate for his client and try to his utmost to represent him.

2.  If, after consciencious examination of the record, counsel finds the appeal to be wholly frivolous, he must advise the court and request permission to withdraw.

3.  Counsel must submit to the court a brief referring to any arguable basis of appeal.

*Anders v. California* at 744.

In *Jones v. Barnes*, 463 U.S. 745 (1983), the Court rejected the argument that competent counsel is obligated to raise every conceivable non-frivolous issue as it held:

> "Most cases present only one, two, or three significant questions. . . .
> Usually, . . . if you cannot win on a few major points, the others are
> not likely to help, and to attempt to deal with a great many in the
> limited number of pages allowed for briefs will mean that none may

84

receive adequate attention. The effect of adding weak arguments will be to dilute the force of the stronger ones. R. Stern, Appellate Practice in the United States 266 (1981).

The Court went on to state at *Jones v. Barnes*, 463 U.S. at 752, 753:

There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review. This has assumed a greater importance in an era when oral argument is strictly limited in most courts -- often to as little as 15 minutes -- and when page limits on briefs are widely imposed. See e.g., Fed. Rule App. Proc. 28(g); McKinney's New York Rules of Court §§ 670.17(g)(2), 670.22 (1982). Even in a court that imposed no time or page limits, however, the new per se rule laid down by the Court of Appeals is contrary to all experience and logic. A brief that raises every colorable issue runs the risk of burying good arguments -- those that, in the words of the great advocate John W. Davis, 'go for the jugular,' Davis. The Argument of an Appeal, 26 A.B.A.J. 895, 897 (1940) -- in a verbal mound made up of strong and weak contentions. See generally, e.g., Godbold, Twenty Pages and Twenty Minutes -- Effective Advocacy on Appeal, 30 Sw.L.J. 801 (1976).

It is clear, therefore, that a defendant is not denied the effective assistance of counsel as measured by the test of *Strickland v. Washington* where he adheres to the guidance of the Supreme Court in *Jones v. Barnes. See also Evitts v. Lucey*, 469 U.S. 387 (1985). In *Smith v. Murray*, 477 U.S. 527, 535-536 (1986), the Court again specifically addressed the issue:

After conducting a vigorous defense at both the guilty and sentencing phases of the trial, counsel surveyed the extensive transcript, researched a number of claims, and decided that, under the current state of the law, 13 issues were worth pursuing on direct appeal. This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy. *Jones v. Barnes*, 463 U.S. 745, 751-752, 103 S.Ct. 3308, 3312-3313, 77 L.Ed.2d 987 (1983). It will often be the case that even the most informed counsel will fail to anticipate a state appellate court's willingness to reconsider a prior holding or will underestimate the likelihood that a federal habeas court will repudiate an established

state rule. But, as *Strickland v. Washington* made clear, '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'

Once again, the Court made it clear that there is no duty of counsel to raise every conceivable claim but that the best advocacy is to separate the weak and raise only the strong. *See also, McCoy v. Wisconsin Court of Appeals,* 486 U.S. 429 (1988).

The allegations within Williams's fourteenth ground for relief entirely encompass well reasoned defense counsel tactics. It is, of course, manifest that courts "should not conjure up tactical decisions an attorney could have made, but plainly did not." *Griffin v. Warden, Md. Correctional Adjustment Ctr.,* 970 F.2d 1355 (4th Cir. 1992). Williams' ineffective assistance of appellate counsel claims are entirely comprised of such trivial tactical challenges. Williams' ineffective assistance of appellate counsel complaints epitomize precisely the type of after the fact strategic second guessing which is not actionable under *Strickland.*

In the case at bar, Williams attacks his appellate counsel for failing to raise twenty-eight additional issues in the Court of Appeals on direct appeal. Williams merely lists, but does not discuss each of the twenty-eight so-called "errors" which were repudiated by the Ohio Supreme Court. An attorney does not have a constitutional duty to raise every nonfrivolous issue even if requested to do so by a criminal defendant. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Further, the decision of which claims to raise on appeal are strategic decisions. *See United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). An attorney who raises too many claims runs the very real risk of losing a court's attention or burying meritorious

claims in a sea of meritless claims. This point was echoed in R. Stern, Appellate Practice in the United States 266 (1981).n5 stating:

> Most cases present only one, two, or three significant questions . . . Usually . . . if you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention. The effect of adding weak arguments will be to dilute the force of the stronger ones.

This point was echoed in a manual on practice before the Second Circuit Court of Appeals. "A brief which treats more than three or more matters runs serious risks of becoming too diffuse and giving the overall impression that no one claimed error can be serious." Committee on Federal Courts of the Association of the Bar of the City of New York, Appeals to the Second Circuit 38 (1980).

Williams' appellate counsel raised eight assignments of error representing sixteen issues. (Apx. at Vol. II, p. 88). Appellate counsel could have decided that adding twenty-eight more issues would only hide any meritorious claims "in a sea of meritless claims". Moreover, many of the twenty-eight issues were either waived at trial or precluded by settled law. Williams' appellate counsel simply made a strategic decision not to raise frivolous claims. As a result, Williams cannot meet either prong of the *Strickland* test since his appellate counsel was not deficient for failing to raise every issue on direct appeal and there is no evidence of prejudice. 466 U.S. at 698. Williams' fourteenth claim is not actionable in federal habeas corpus.

87

**Fifteenth ground for relief**

Procedural posture:

As his fifteenth ground for relief, Williams complains of the State's desire to be present during Williams' examination of trial exhibits during his post-conviction petition litigation. This claim was addressed on the merits by the Court of Appeals which held in its rejection of Williams post-conviction petition appeal that, "[Williams] claim is not a claim affecting the trial court's judgment of conviction or sentence, the claim is not cognizable in postconviction proceedings under R.C. 2953.21". (Apx. at Vol. VIII, p. 100).

**Federal habeas corpus cannot be used to challenge alleged errors and deficiencies from state post-conviction proceedings.**

Williams' fifteenth ground for relief challenges the State's position in post-conviction that discovery regarding trial exhibits should be conducted in their presence. Since a post-conviction proceeding is civil, and not criminal in nature, Williams' allegations regarding alleged errors in said proceeding are simply not cognizable under 28 U.S.C. Section 2254.

In *Kirby v. Dutton,* 794 F.2d 245 (6th Cir. 1986), the Court of Appeals for the Sixth Circuit rejected precisely the type of claims which Williams is now alleging. In *Kirby* the Sixth Circuit held at 247:

> In contrast, Kirby claims a denial of the Sixth Amendment right to effective assistance of counsel, a denial of due process, and a denial of equal protection in the State post-conviction proceedings-claims unrelated to his detention. Kirby has raised no other claims deriving from the conviction or sentencing proceeding. If we were to hold in favor of Kirby, the result would not be release or a reduction in Kirby's time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention.

The analysis of the writ of habeas corpus in *Preiser* directs us to the conclusion that habeas corpus should not be available to Kirby...

Our conclusion that habeas corpus is not applicable to Kirby is bolstered by the decision of other circuits facing the question of whether habeas corpus can be used to challenge state post-conviction proceedings. These courts have concluded, in agreement with the Preiser analysis, that the writ is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings such as Kirby claims here because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration.

*Id.* at 247. *See also Wise v. Armontrout*, 952 F.2d 221 (8th Cir. 1991); *Golston v. Attorney General of State of Alabama,* 947 F.2d 908 (11th Cir. 1991); *Williams-Bey v. Trickey,* 894 F.2d 314 (8th Cir. 1989), *cert. den.,* 495 U.S. 936 (1990); *Tillett v. Freeman*, 868 F.2d 106 (3rd Cir. 1989); *Bryant v. Maryland*, 848 F.2d 492 (4th Cir. 1988).

Williams' fifteenth ground for relief is not actionable in federal habeas corpus.

**Sixteenth ground for relief**

**Procedural posture:**

As his sixteenth ground for relief Williams alleges prosecutorial misconduct throughout his capital trial. In his petition, Williams specifically raises the following complaints:

1. Strategy of using peremptory challenges to jurors who were perceived to be less likely to recommend death.

2. Reasonable doubt statements during *voir dire*

3. Opening statement comment on Williams' juvenile record.

4. Opening statement comment on bloodstain.

5. Opening statement comment on fingerprint.

6. Introduction of evidence deemed cumulative and unnecessary by Williams.

7. Introduction of victim impact evidence.

8. Guilt phase closing arguments

9. Prosecutorial mitigation phase comments.

On direct appeal, Williams chose **not** to attack the prosecutor's strategy of using peremptory challenges to jurors who were perceived to be less likely to recommend the death penalty. Under these circumstances, Williams has waived the right to pursue this claim in federal habeas corpus. The remaining portions of Williams' prosecutorial misconduct claim were denied on the merits by the Ohio Supreme Court when presented as Williams' sixth proposition of law.

**The prosecutor's comments did not deprive Williams of a fundamentally fair trial.**

It has long been recognized that "if every remark made by counsel outside the testimony were grounds for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced of counsel are occasionally carried away by this temptation." *Dunlop v. United States*, 165 U.S. 486, 498 (1897). It is further well established that prosecutorial comments which do not render a trial fundamentally unfair when evaluated in the context of the totality of the circumstances, cannot serve as the basis for reversal of a conviction. Indeed, before habeas corpus relief can be granted, a prosecutor's statements must be so egregious as to render the trial fundamentally unfair. *United States v. Young*, 470 U.S. 1 (1985); *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). This determination must be made by considering the totality of the circumstances of each case. *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000); *Lundy v. Campbell*, 888 F.2d 467 (6th Cir. 1989), *cert. denied*, 495 U.S. 950 (1990); *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982) (en banc).

On appeal from a United States district court's denial of a state prisoner's application for habeas corpus based on prejudicial comments of the prosecutor, the review by the federal appellate court is the narrow one of due process, and not the broad exercise of supervisory power that the court would possess in regard to its own trial court. *Donnelly v. DeChristoforo*, 416 U.S. at 642; *Cook v. Bordenkircher*, 602 F.2d 117 (6th Cir.), *cert. denied*, 444 U.S. 936 (1979). For reasons to follow,

91

none of the allegedly improper prosecutorial comments remotely sets forth a claim of constitutional dimension.

### a.    Peremptory challenge strategy

Williams first attacks the prosecutor for allegedly exercising peremptory challenges to jurors who were perceived to be less likely to recommend the death penalty. **There is nothing remotely improper with the pursuit of such a strategy.** Williams' apparent belief that the prosecutor had a constitutional duty to secure jurors less likely to render a death penalty recommendation borders on the absurd.

### b.    Reasonable doubt comment

Williams next attacks the prosecutor for asking jurors at Tr. Vol. VII, 81, if they could use their common sense in deciding issues of reasonable doubt. Contrary to Williams' conclusory allegations, there was no error here nor was the trial court's instruction deficient[7].    Indeed, there is nothing improper, constitutionally or otherwise, about the definition in Ohio Revised Code Section 2901.05(D) that reasonable doubt "is a doubt based on reason and common sense". *See, Jackson v. Virginia*, 443 U.S. 307, 317 (1970), ['reasonable doubt' at a minimum, is one based upon 'reason'].

### c.    Juvenile record comment

Williams contends that it was error, even though it was in full accord with the trial court's ruling, for the prosecutor to comment on Williams' juvenile record. In challenging the trial court's decision to allow evidence of his juvenile record for purposes of identity, Williams conveniently fails to mention that the evidence was

admissible under Ohio Evidence Rule 404(B) since at trial Williams contested his identification by Williams Teasley and James Trivett as the man who entered Wayman Hamilton's cab at the Fuel Mart. However, during the 45 minutes that Williams was at the Fuel Mart, he engaged Mr. Teasley in conversation about the possibility of employment at the gas station. (Tr. Vol. VII, 115-17). During this conversation Williams revealed that he was "fresh in from L.A.", to which Mr. Teasley explained that he would need a police report. Williams then volunteered that he had a juvenile record, to which Mr. Teasley told him not to worry. (Tr. Vol. VII, 115).

Later, when Detective Gross testified as to Williams' arrest, he noted that Williams told him "he had gotten into some trouble in California, San Diego, for an auto theft...He said that he had only been back in Hamilton form L.A. for about a year". (Tr. Vol. VII, 262). Upon objection, the prosecutor explained that the testimony was admissible as probative of identity in light of Mr. Teasley's previous testimony. Although overruling the objection, the trial court then indicated that it would give a limiting instruction that the evidence did not go to the truth of the prior record, but "merely for the purposes of identity". (Tr. Vol. VII, 168)[8].

Contrary to Williams' instant claims, the trial court's discretionary decision to allow the admission of probative evidence for purposes of identity was eminently correct. Ohio Evidence Rule 404(B) expressly provides for the admission of probative evidence of identity, notwithstanding its tendency to show the

---

[7] *See discussion of Williams' fifth ground for relief, supra.*

[8] Defense counsel declined the limiting instruction.

commission of another crime by the defendant. *State v. Woodard*, 68 Ohio St.3d 70, 73, 623 N.E.2d 75 (1991); *State v. Davis*, 62 Ohio St.3d 326, 337-39, 581 N.E.2d 1362 (1991). Here, evidence of Williams' identity became admissible once Williams chose to dispute his identification by Mr. Teasley and Mr. Trivett. That the jury could have used this admissible probative evidence to convict Williams does not set forth a claim of constitutional significance.

### d. Bloodstain and fingerprint comments

Williams contends that it was improper for the prosecutor to comment on adduced evidence pertaining to bloodstains on his pants and the presence of latent fingerprints at the death scene which were unidentifiable due to insufficient ridge detail. (Tr. Vol. VII, 53-54; Tr. Vol. VIII, 31-40, 47-56). To Williams the bloodstains and fingerprint evidence is "irrelevant" because it did not conclusively establish his guilt. Certainly, however, the decisions with respect to both the bloodstains and fingerprints were within the sound discretion of the trial court. A piece of relevant evidence need not by itself prove a fact in order to be admissible. Here, although not providing a direct tie to Williams' victims, the circumstantial evidence that Williams had unidentifiable bloodstains on his pants was relevant and admissible for whatever consideration the jury deemed proper.

It was similarly not an abuse of the trial court's discretion to admit, nor improper for the prosecutor to comment, on the latent fingerprint examiner's testimony. The fact that the expert did not implicate Williams in either the Wallace or Hamilton cases is an issue of sufficiency, not admissibility. Furthermore, any possible prejudice as to Williams was eliminated when defense counsel fully

explored the non-incriminating import of the fingerprint testimony. (Tr. Vol. VII, 37).

### e. Williams complaint regarding other "improper" evidence

Williams contends that it was improper for the trial court to admit, and for the prosecutor to comment upon, evidence which he deems cumulative. Williams specifically challenges the introduction of the testimony of Patricia Perry and Detective Claude Simpson regarding Jeff Wallace's out-of-court identification of Williams from a newspaper photograph. (Tr. Vol. VII, 200-01). Once again Williams is doing nothing more than challenging a clear proper exercise of the trial court's discretion as to the admissibility of evidence. The trial court was not bound to accept Williams' interpretation of whether evidence was "unnecessary". Williams was not denied a fundamentally fair trial by the prosecutor's comment on evidence that was properly admitted at trial.

### f. Victim impact evidence

Without citing a single case in support of his argument, Williams contends that "victim-impact" evidence was improperly introduced and commented upon by the prosecutor. The comments at issue relate to the testimony of Clifton Cab dispatcher Ray Jones regarding the fact that, fearful of being robbed, victim Wayman Hamilton worked in the supposedly safe North College Hill/Mt Healthy areas. (Tr. Vol. VII, 94). Mr. Jones also identified a clipboard containing the cab driver's trip sheet, a pocket calculator, and a book of Bible quotations found at the death scene. (Tr. Vol. VII, 89). Contrary to Williams unsupported allegations, the Constitution does not bar the introduction of evidence which incidentally reflects

upon a victim's personal situation. Indeed, to the contrary, in *Payne v. Tennessee*, 501 U.S. 808, 827 (1991), the Court recognized that "evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." Here, the victim's generalized fear of robbery while driving his cab was probative as to why he was working in the Northern Cincinnati suburbs and why he would keep his money in separate places.

### g. Guilt phase closing arguments

Williams raises a numerous challenges to the prosecutor's closing argument, **none** of which he deemed objectionable at trial. Williams mistakenly brands the following as a comment on Williams' failure to testify, "He wasn't in some insane state of mind. No proof of that". (Tr. Vol. IX, 13). Nothing in the remarks now at issue constitute a comment upon Williams failure to testify. As held by the Court in *Lockett v. Ohio*, 438 U.S. 586, 595 (1978), "the prosecution is not prevented from commenting on the failure of the defense to offer evidence in support of its case".

Williams next repeats his complaint regarding the prosecutor's comments regarding reasonable doubt. As fully discussed with respect to the "reasonable doubt" claim contained within Williams' fifth ground for relief, there was nothing remotely improper about the prosecutor's "reasonable doubt" comments.

Williams next characterizes a reference to the years of police experience that a witness had as improper vouching. It is perfectly permissible, however, for a prosecutor to argue "that the jury should arrive at a particular conclusion based

upon the record evidence, including the conclusion that the evidence proves the defendant's guilt." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999). Here the prosecutor was simply referring to a police officer's years of experience, a perfectly legitimate factor for the jury to consider in their evaluation of the witness testimony.

Williams also complains that the prosecutor improperly implied that Williams had disposed of the pistol after shooting Jeff Wallace. As recently held by the Sixth Circuit in *Byrd*, 209 F.3d at 536, it is permissible for the prosecutor to present statements as beliefs inferred from the evidence presented. Here the prosecutor's remark referred to the proximity of the apartment in which Williams was arrested (and which the jury had viewed) to the river. (Tr. Vol. VI, 148). The prosecutor's comment at Tr. Vol. IX, 56, "it wouldn't be the first time that a gun ended up in the river" was a reasonable inference based on the evidence, and an invited response to defense counsel's argument at Tr. Vol. IX, 28 that no gun was found, despite searches "looking for a gun in the places where they say Clifford hung out".

Williams next again distorts a proper prosecutorial remark by interpreting a comment regarding the failure of Williams to call their own "ballistics expert" as a comment on Williams' failure to testify. Williams' unreasonable interpretation of the prosecutor's comments was properly rejected by the Ohio appellate courts. Nothing in the remarks now at issue constitute a comment upon Williams failure to testify. As held by the Court in *Lockett v. Ohio*, 438 U.S. 586, 595 (1978), "the prosecution is not prevented from commenting on the failure of the defense to offer evidence in support of its case".

Williams finally challenges a prosecutor statement to the jury at Tr. Vol. IX, 71 that "you represent the standards of the community". *In United States v. Alloway*, 397 F.2d 105 (6th Cir. 1968) the Sixth Circuit held that it was not reversible error for a prosecutor to urge a jury to deliver a guilty verdict to send a message. *See also, United States v. Reliford*, 58 F.3d 247, 250-51 (6th Cir. 1995). Williams similarly was not deprived of a fundamentally fair trial by the prosecutor's isolated remark.

### h. Mitigation phase comments

Williams' complaints regarding the prosecutor's mitigation phase arguments are equally lacking in merit. Williams' first takes issue with the prosecutor's correct statement of the law regarding unanimity. As fully discussed with respect to the unanimity claim contained within Williams' fifth ground for relief, this claim is entirely lacking in merit. It was neither a misstatement of Ohio law nor constitutional error for the prosecutor to state to the jury that it was their responsibility to weigh the aggravating circumstance and mitigating factors to come to a unanimous sentence recommendation.

Williams claim that it was error for the prosecutor **accurately** state to the jury that a decision to impose death constitutes a recommendation is similarly flawed. As fully discussed with respect to the *Caldwell* claim contained within Williams' fifth ground for relief, it is a correct statement of Ohio Revised Code Section 2929.03(D)(2) to inform a jury that their finding of death is a recommendation.

Williams also speculates that but for unidentified prosecutorial remarks, the jury would have given greater weight to the testimony of his psychiatrist, Dr.

Green.    On direct appeal, Williams contended that it was improper for the prosecutor to refer to Dr. Green as a "hired doctor". In truth, of course, that is precisely what he was. Indeed, at Tr. Vol. XI, 53, the record reflects that Dr. Weaver examined Williams at defense counsel's request pursuant to Ohio Revised Code Section 2929.024 [as opposed to having a court-appointed doctor examine Williams pursuant to Ohio Revised Code Section 2929.03(D)91)] as a strategic maneuver because counsel "did not want a report from the psychiatrist floating around". (Tr. Vol. XI, 13).

Although Williams had no qualms about denigrating the aggravating circumstances of his crime, (Tr. Vol. XI, 156, 176): "not paying for a cab fare, thirty-two dollars, ten cents. That is what was on the meter), he classifies the comment "boys will be boys" as an unconstitutional assault upon the mitigating factor of youth. Certainly, however, youth does not automatically mitigate. Here, the prosecutor did no more than fairly present the argument that the mitigating factor of William's age failed to outweigh the aggravating circumstances.

Williams also challenges the prosecutor's comment that "Well, it comes from the legislature, and .... I guess, if ever there was a crime that deserved the death penalty, this is it." (Tr. Vol. XI, 179). As noted above, it is permissible for the prosecutor to present statements as beliefs inferred from the evidence presented. *Byrd*, 209 F.3d at 536. Here, the prosecutor was doing nothing more than correctly observing that in Ohio the death penalty is legislatively authorized for the type of crime and aggravated circumstances committed by Williams.

Williams finally objects to a prosecutor statement that Williams faced a sentence of life imprisonment with the "possibility of parole eligibility" after twenty or thirty years. (Tr. Vol. XI, 188-89). Williams conveniently forgets that he invited this argument by arguing at Tr. Vol. XI, 158:

> At the very minimum, ladies and gentlemen, at the very minimum, he is going to get life in prison with no time off -- with no time for good behavior.
>
> Now, the State is going to say, well, that might not be totally accurate. After twenty years, or after thirty years. What that merely states is, ladies and gentlemen, that after serving twenty full years, or thirty full years, he may be eligible for the possibility of parole. And that is not including what Judge Valen is going to sentence Clifford on these other crimes that you found him guilty of.

Defense counsel also stated that Williams "is gong to have to pay for this tragedy every single day for the rest of his natural life, however long that may be, if this jury would steer its way clear to give this man a sentence other than death." (Tr., Vol. XI,  177).[9]

In *United States v. Young*, 470 U.S. 1, 11 (1985) the Court applied the "invited reply" doctrine to prosecutorial comments. In *Young*, the prosecutor made certain comments in response to improper defense comments. The Court noted, at 11, while "two improper arguments - two apparent wrongs - do not make for a right result," invited reply weighed against a reversal based on misconduct. The Court then held:

> In order to make an appropriate assessment, **the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also**

---

[9]  It is also noteworthy that defense counsel had referred to parole "possibility" after twenty or thirty years in his *voir dire* of the jury. (See Tr. Vol. V, p. 238).

> **take into account defense counsel's opening salvo.** Thus the import of the evaluation has been that if the prosecutor's remarks were "invited," and did no more than respond substantially in order to "right the scale," such comments would not warrant reversing a conviction.

*Id.* at 12-13. (Footnote omitted). (Emphasis added).

Here, the prosecutor comment at issue was a fair response to defense counsel's argument. The prosecutor did not mislead the jury or assert that Williams would be paroled when he first became eligible. Rather the prosecutor only properly stated that Williams would possibly be eligible for parole under either life sentence.

In its rejection of Williams' prosecutorial misconduct claims the Ohio Supreme Court rendered the following determinations at *Williams*, 73 Ohio St.3d 153, 168-69:

> The test for prosecutorial misconduct is whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, 300. In *State v. Maurer, supra*, we reasoned that wide latitude is granted in closing argument and that the effect of any prosecutorial misconduct must be considered in light of the whole case. Read in their entirety, the prosecutor's statements, while misstating the law in some instances, were not prejudicial to the extent that [Williams'] substantial rights were affected.

As correctly recognized by the Ohio courts, the comments now at issue, almost all of which were not even deemed objectionable by Williams at trial, made no difference in the outcome of the trial, particularly in light of the statutory aggravating circumstances Williams was found guilty of committing and the lack of credible mitigating evidence presented by Williams. Williams' sixteenth ground for relief is not actionable in federal habeas corpus

**Seventeenth ground for relief**

**Procedural posture:**

As his seventeenth ground for relief Williams complains that the trial court erroneously denied:

1.  his motion to suppress;

2.  out-of-court Willliams' identifications;

3.  a multitude of additional pre-trial motions.

On direct appeal, the Ohio Supreme Court rejected Williams' first sub-claim on the merits when it was presented as Williams' fifteenth proposition of law. On direct appeal, the Ohio Supreme Court also rejected Williams' second sub-claim on the merits when it was presented as Williams' eleventh proposition of law.

It does not appear that the third sub-claim of Williams' seventeenth ground for relief has heretofore been presented to a single court. Under the first and second prongs of the *Maupin* analysis, *supra*, this portion of Williams' fifteenth ground for relief is therefore procedurally defaulted. The third *Maupin* criteria has also been met as the procedural rule of waiver is an adequate and independent state ground to bar habeas claims. The state procedural rule serves the State's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. *See, Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). Fourth, since the Ohio appellate were given no opportunity whatsoever to consider Williams' allegations, Williams is now required to demonstrate that there was cause and that he was actually prejudiced by the alleged constitutional error. To date, Williams

has not even attempted to establish cause or prejudice for his procedural default. The *Maupin* criteria has been entirely satisfied.

Beyond the four part *Maupin* analysis, this court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." *Murray*, 477 U.S. at 496. As discussed below, Williams' attack upon well reasoned trial court discretionary rulings are entirely lacking in merit. Furthermore, the allegation bear no relationship whatsoever to a claim of actual innocence. Finally, as discussed with respect to Williams' eighth habeas corpus ground for relief, the record contains an abundance of evidence demonstrating Williams' guilt.

> **Williams was not denied fundamental fairness by proper trial court discretionary decisions to deny various Williams' motions.**

> a. ***Stone v. Powell*** **precludes this Court from considering Williams challenge to the trial court's denial of his motion to suppress.**

This Court is precluded from entertaining Williams' Fourth Amendment claims by the United States Supreme Court decision in *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone v. Powell, supra* at 494-95, the Court held as follows:

> [W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal and the substantial societal costs of application of the rule persist with special force. (footnotes omitted).

*See also, Jennings v. Rees,* 800 F.2d 72 (6th Cir. 1986), *Gilbert v. Parke*, 763 F.2d 821 (6th Cir. 1985); *Moore v. Cowan*, 560 F.2d 1298 (6th Cir. 1977), *cert. denied*, 435 U.S. 929 (1978).

In the case at bar, Williams was afforded an opportunity pursuant to state law to present this claim when he filed a motion to suppress which was ultimately denied by the trial court. Thereafter, on direct appeal in the Court of Appeals, Williams could have appealed the trial court's denial of his motion to suppress. Although he chose not to raise the claim in the Court of Appeals, Williams did challenge the denial of his motion to suppress in the Ohio Supreme Court which affirmed the trial court's decision at *Williams*, 73 Ohio St. 3d 153, 166. Williams thus not only litigated his suppression claim, but in fact he also received appellate review. As such, under *Stone v. Powell*, habeas corpus review is not available. Williams' Fourth Amendment claim is not actionable in federal habeas corpus.

> **b. Under the totality of the circumstances the identification of Williams was reliable.**

In his petition, Williams erroneously brands his identification by William Teasley, James Trivett and Jeff Wallace as unconstitutionally suggestive. It is well established, however, that an identification procedure may be suggestive as long as it appears to be reliable. *Manson v. Brathwaite*, 432 U.S. 98 (1977); *Neil v. Biggers,* 409 U.S. 188 (1972); *Stovall v. Denno*, 388 U.S. 293 (1967). This recognition led the *Biggers* court to conclude that the "totality of the circumstances" must be viewed in such a situation. The Court then listed the following five (5) factors which must be considered when evaluating the likelihood of misidentification:

104

1)     opportunity to view;

2)     the witness' degree of attention;

3)     the accuracy of the description;

4)     the witness' level of certainty;

5)     the length of time between the crime and the confrontation.

See also, *Ledbetter v. Edwards*, 35 F.3d 1062 (6th Cir. 1994); *United States v. Hill*, 967 F.2d 226 (6th Cir.), *cert. denied*, 506 U.S. 964 (1992); *Thigpen v. Cory*, 804 F.2d 893 (6th Cir. 1986), *cert. denied* 482 U.S. 918 (1987).

In the case at bar, the identification of Williams by William Teasley, James Trivett and Jeff Wallace fully satisfies the *Neil v. Biggers* standards. The first factor to consider under *Neil v. Biggers* is the opportunity to view the criminal at the time of the crime. Here, Teasley, Trivett and Wallace all had an opportunity to focus on Williams. Specifically as correctly held by the Ohio Supreme Court at *Williams, supra* at 163-164, "Wallace had ample opportunity to observe [Williams] while [Williams] was a passenger in his truck"...and Teasley and Trivett spoke with [Williams] while [Williams] waited for the cab at the Fuel Mart". As thus demonstrated Teasley, Trivett and Wallace each had a significant opportunity to view Williams. The first criteria of *Neil v. Biggers* has been satisfied.

The factual findings of the Ohio Supreme Court similarly demonstrate a satisfaction of the second and third prongs of *Neil v. Biggers*. The multiple descriptions of Williams are entirely consistent. This accuracy is reflective of the high degree of attention, which Williams received from Teasley, Trivett and Wallace.

The fourth and fifth prongs of the *Neil v. Biggers* test is the witness' level of certainty, and the time between the crime and the confrontation. Once again, none of the witnesses expressed uncertainty as to their identification of Williams. Additionally, not only was Williams promptly identified by Teasley and Trivett, but only two days passed between the Willliams assault upon Wallace, and Williams' identification by Wallace. Thus, as correctly determined by the Ohio Supreme Court at *Williams*, *supra* at 164, "There is nothing in the record that indicates that the witnesses' identification was not reliable. Furthermore, nothing in the record indicates that identification methods used by the police were so suggestive that they created a risk of misidentification. The fourth and fifth prongs of the *Neil v. Biggers* have been satisfied.

For all of the above reasons, the identifications of Williams were not tainted and are reliable with no substantial likelihood of misidentification. Williams' suggestive identification claim is not actionable in federal habeas corpus.

### c. The trial court was not constitutionally required to grant all of Williams' pre-trial motions.

As the final component of his seventeenth ground for relief, Williams complains of the denial of a multitude of pretrial motions. Of course Williams does not allege, nor can he show, how the denial of said motions deprived Williams of a fundamentally fair trial. The trial court's proper discretionary denial of Williams' various pretrial motions is not actionable in federal habeas corpus.

**Eighteenth ground for relief**

    *Procedural posture:*

    As his eighteenth ground for relief, Williams contends that it was error for the trial court to minimize prejudice by questioning the impartiality of potential jurors with law enforcement connections. Williams additionally challenges the proper denial of a cause challenge to jurors who expressed an ability to fairly follow the trial court's instructions, as well as the excusal of a prospective juror unequivocally opposed to the death penalty. On direct appeal, Williams fairly presented these claims to the Ohio Supreme Court as his twentieth through twenty-second propositions of law.

> **The trial court did not commit constitutional error when it properly questioned prospective jurors on their relationship with law enforcement officers, refused to exclude qualified jurors, and excluded a juror unequivocally opposed to the death penalty.**

      **a.    Trial court questioning of prospective juror relationship with law enforcement personnel.**

    Williams first complains that the trial court committed constitutional error by asking prospective jurors, who were related to law enforcement personnel, whether they would be embarrassed by whatever verdict they returned. According to Williams it was improper for the trial court to question Juror Paul Wright and prospective juror Ben Douglas, whose son and sister-in-law, respectively, were officers, whether they would be uncomfortable or embarrassed or uncomfortable to return a **not guilty** verdict. (Tr. Vol. V, 64-65, 130). At trial Williams failed to lodge a contemporaneous objection to either of these questions, although at Tr. Vol. V, 63, defense counsel objected to an earlier trial court question to prospective

juror Judy Prior whether she would find it "embarrassing to you to return the verdict of **guilty** against [Williams]".

The record at bar directly refutes Williams assertion that trial court "created the impetus for the jury to impose a guilty verdict to avoid embarrassing themselves". (Petition, p.102). Indeed to the contrary, the possibility of any prejudice to either party was prevented when the trial court carefully and neutrally worded its questions **both ways.** Coupled with the trial court's overriding emphasis in *voir dire* on the duty of each juror to presume Williams' innocence and to be fair and impartial, the questioning at issue in no way deprived Williams of a fundamentally fair trial.

> **b.** **It was not constitutional error for the trial court to properly exclude a juror opposed to the death penalty and to refuse to exclude jurors who expressed a willingness to follow the law.**

In *Witherspoon v. Illinois*, 391 U.S. 511 (1968), the United States Supreme Court held that the state cannot exclude persons from a jury for expressing opposition to the death penalty. In *Wainwright v. Witt*, 469 U.S. 412 (1985), the Court clarified *Witherspoon*, and affirmed the standard set forth in *Adams v. Texas*, 448 U.S. 38, 45 (1980), for determining whether a prospective juror may be excluded for cause because of his or her views on capital punishment. "That standard is whether the juror's views would 'prevent or substantially impair the performance of his duties in accordance with his instructions and his oath.'" *Witt, supra,* at 424. The standard does not require that a juror's bias be proved with "unmistakable clarity." *Id.* In so ruling the Court recognized the presumption

108

of correction, which must be accorded to a trial court's binding factual finding regarding a prospective juror challenge for bias as it held:

> The trial court is of course applying some kind of legal standard to what he sees and hears, but his predominant function in determining juror bias involves credibility findings whose basis cannot be easily discerned from "factual issues" that are subject to Section 2254(d).

*Witt, supra*, at 429.

In his petition, Williams contends that jurors Thompson, Douglas and Baecher should have been excused for cause. It is initially noteworthy that Williams does not, and cannot, allege that he was prejudiced by the trial court's decision. Indeed the record reflects that Williams utilized two of his six peremptory challenges to excuse Mr. Thompson and Ms. Baecker (Tr. Vol. VI, 87-89), and then passed on his sixth available opportunity to exercise a peremptory challenge. (Tr. Vol. VI, 92). Williams thereafter utilized one of his two peremptory challenges to excuse Mr. Douglas, (Tr. Vol. VI, 94), and none of the remaining four alternates thereafter participated in Williams' trial. Since the ultimate composition of the jury, which decided Williams' case, was in no way affected by the juror exclusions at issue, Williams' claim lacks the requisite element of prejudice necessary to sustain a claim of constitutional dimension. *United States v. Martinez-Salazar*, 120 S.Ct. 744 (2000).

Moreover, the record at bar fully supports the trial court's discretionary decision to deny the challenges for cause lodged by Williams. The complained of response by Mr. Thompson that he believed in "an eye for an eye" was conditioned by the further response "If the situation warrants". (Tr. Vol. V, 188). Mr.

Thompson further indicated that he would follow the instructions of the trial court. Similarly, Ms. Baecker indicated that she would have no problem returning a sentence of less than death if she found that mitigating factors outweighed the aggravating circumstances, if so instructed. (Tr. Vol. VI, 10). Finally Mr. Douglas promised that he "would listen to the judge and make my decision from that". (Tr. Vol. VI, 43).

Williams' assertion that Mr. Partin was improperly excused for cause is similarly flawed. When initially questioned by the trial court whether he could join in signing a verdict form recommending death, Mr. Partin unequivocally responded "No, sir." (Tr. Vol. V, 254). He later explained that "it would be difficult for me to actually say, you know, you are guilty of such and such a crime and you should pay the death penalty for it", (Tr. Vol. V, 255), and agreed that he would not be able to fairly consider the death penalty. *Id*. at 261. Finally, after an extended attempt at rehabilitation by Williams, the trial court again asked Mr. Partin if he could vote for the death penalty, and Mr. Partin again unequivocally stated, "No Sir, I couldn't. (Tr. Vol. V, 273-74).

As correctly recognized by the trial court, Mr. Partin's responses reflected a desire to follow the law in the abstract (Tr. Vol. V, 269), but an inability to impose capital punishment even if such was required by Ohio law. Under these circumstances, the trial court's discretionary determination to exclude Mr. Partin was not constitutional error.

As thus demonstrated, based on their responses, there was nothing unreasonable in the trial court's factual determinations regarding those jurors at

issue. The decision of the trial judge with respect to the jurors in question must be presumed to be correct. *Rushen v. Spain*, 464 U.S. 114 (1983). The trial court carried out its duty to ensure that jurors would consider the imposition of the death penalty in accordance with the law in a fair and impartial manner.

**Nineteenth ground for relief**

**Procedural posture:**

As his nineteenth ground for relief, Williams attacks the following trial court proper discretionary decisions:

1. no *sua sponte* inquiry on moot question of earlier jury stalemate.

2. introduction of Willliams' juvenile record into evidence;

3. allowing firearms into evidence;

4. rulings and remarks throughout trial.

On direct appeal, the Ohio Supreme Court rejected Williams' first sub-claim on the merits when it was presented as Williams' fifth proposition of law. On direct appeal, the Ohio Supreme Court also rejected Williams' second sub-claim on the merits when it was presented as Williams' twelfth proposition of law. On direct appeal, the Ohio Supreme Court rejected Williams' third sub-claim on the merits when it was presented as Williams' thirteenth proposition of law. Finally, on direct appeal, the Ohio Supreme Court rejected Williams' fourth sub-claim on the merits when it was presented as Williams' seventh, eighth, tenth and fourteenth propositions of law.

**Williams was not denied a fundamentally fair trial by well-reasoned trial court discretionary decisions.**

The trial court decisions attacked within Williams' nineteenth ground for relief wholly involve matters uniquely within the discretion of the state trial judge that do not rise to a constitutional magnitude. *Bell v. Arn*, 536 F.2d 123 (6th Cir. 1976); *Broffard v. Marshall*, 751 F.2d 845 (6th Cir.), *cert. denied*, 474 U.S. 872

(1985). It is well established that "a state evidentiary violation in and of itself does not support habeas corpus relief * * * before such relief may be granted the violation must rise to the level of a denial of 'fundamental fairness.'" *Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir. 1983). Thus, the Sixth Circuit observed in *Lundy v. Campbell*, 888 F.2d 467, 473 (6th Cir. 1989), *cert. denied*, 495 U.S. 950 (1990) that:

> It is, as we have said, the whole trial that we evaluate for fairness, not just the assignments of procedural error raised by the petitioner. The ultimate question we must answer is whether the asserted trial errors, measured according to the fundamental principles of a fair criminal process implicit in the due process clause of the Fourteenth Amendment, were so egregious as to have nullified the legitimacy of the properly admitted substantive evidence of the defendant's guilt.

The writ of habeas corpus extends only to one restrained in violation of a federally secured right. 28 U.S.C. Section 2241 (c)(3); *Donnelly v. DeChristoforo, 416 U.S. 637 (1974)*. A federal district court does not sit as a further Court of Appeals to review interpretations of state law. *See e.g., Wright v. Dallman*, 999 F.2d 174 (6th Cir. 1993). Hence, without a showing of error of constitutional magnitude, Williams' attack upon the propriety of trial court discretionary decisions are simply not cognizable in federal habeas corpus.

### a. The trial court was not constitutionally required to *sua sponte* inquire on the moot question of an earlier jury stalemate.

The record and the binding determinations of the Ohio Supreme Court, reflect that Williams' first sub-claim rests on the following factual predicate:

> The record shows that the jury sent a note to the court stating that there was a stalemate. The court instructed the bailiff to call counsel and the defendant in order to review the question before giving further

113

> instructions to the jury.  **Prior to counsel's arriving and before the court could respond, the jury reached a verdict.....**The court ruled that "the question now is a moot question because they have reached a verdict, and no instructions were given to them."  When the court inquired whether either the prosecution or defense had anything further before the jury was called in, both parties responded, "No."

*Williams,* 652 N.E.2d at 733, emphasis added.  As thus demonstrated Williams is asserting nothing less than the absurd proposition that the trial court was constitutionally required to *sua sponte* instruct on the consequences of a stalemate, **to a jury that had already reached a verdict.**  Contrary to Williams' conclusory allegations, there was no duty whatsoever for the trial court to render such an improper and unnecessary instruction.

> b.  **The trial court was not constitutionally required to *sua sponte* poll the jury.**

Williams next contends that the trial court had a "duty" to question the jury as to its verdict, once it had been delivered because a juror "seemed to express hesitancy".  In its rejection of this claim at *Williams,* 652 N.E.2d at 733, the Ohio Supreme Court determined:

> As for the "hesitancy" expressed by the juror, the record reflects only the following exchange:
>
> "[Clerk]:  Gladys Pennekamp, is this your recommendation?
>
> "Judge Valen:  You have to answer.  What?
>
> "Ms. Pennekamp:  Yes it is."
>
> Contrary to appellant's assertion, we do not view this as a hesitancy that necessitated further interrogation.  The trial court was in a better position to view the demeanor and actions of the juror, as were the prosecution and defense counsel.  In the absence of an objection and on the basis of such sparse evidence, this proposition of law is without merit.

114

Once again, the above quoted state court determinations are not contrary to, nor an unreasonable application of, clearly established United States Supreme Court precedent nor unreasonable in light of the evidence presented in the State court. The trial court was not constitutionally required to *sua sponte* poll the jury.

> c. **The trial court did not error in allowing the introduction of Williams' juvenile record as probative of identity.**

Williams' assertion that the trial court erred in allowing the admission of evidence of his juvenile record as probative of identity is addressed in the above discussion of Williams' sixteenth ground for relief.

> d. **Williams remaining attack upon proper trial court discretionary decisions lacks merit.**

Within his nineteenth ground for relief, Williams next attacks trial court discretionary decisions by referencing the eleventh, fifteenth, and sixteenth grounds for relief of his petition. Each of these Willliams claims lack merit for reasons discussed above.

Williams finally lists, **but does not discuss**, six (6) "errors" which were directly repudiated by the Ohio Supreme Court. In each instance the Ohio Supreme Court rejection of Williams' claim was not contrary to, nor an unreasonable application of, clearly established United States Supreme Court precedent nor unreasonable in light of the evidence presented in the State court. As such, the laundry list of "errors" set forth by Williams in petition paragraph 364 lacks merit.

115

**Twentieth ground for relief**

Procedural posture:

Williams assertion that the cumulative effect of his allegations reflect a constitutional deprivation was addressed on the merits by the Court of Appeals which held in its rejection of Williams post-conviction petition appeal that, "The doctrine of cumulative error is not applicable to the case at bar as we have found no merit in appellant's claim of trial court error. (Apx. at Vol. VIII, p. 108).

**The "cumulative effect" of Williams' allegations do not amount to a constitutional deprivation.**

As discussed herein, Williams' grounds for relief are entirely lacking in merit. Simply put, with respect to all of his claims, Williams has failed to demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the jury's verdict. *See, O'Neal v. McAninch, 513 U.S. 432 (1995); Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994). Since there can be no cumulative effect to what were clearly non-errors, the "cumulative effect" of Williams' allegations do not amount to a deprivation of constitutional dimension. Williams' twentieth ground for relief does not set forth an actionable claim in federal habeas corpus.

116

**Twenty-first ground for relief**

 **Procedural posture:**

 Williams assertion that Butler County juries contain an inadequate number of African-Americans was denied by the Court of Appeals which held in its rejection of Williams post-conviction petition appeal that, "The trial court found, and we concur, that [Williams] failed to present evidence of intentional racial discrimination in his trial and that the claims are not supported by sufficient operative facts". (Apx. at Vol. VIII, p. 106).

 **In a death penalty case, statistical evidence is insufficient to demonstrate a violation of the Equal Protection Clause.**

 As his twenty-first ground for relief, Williams accuses the Butler County of racism in its jury selection process. To prevail under the Equal Protection Clause, Williams must prove that the decision-makers in his case acted with discriminatory purpose. In *McCleskey v. Kemp*, 481 U.S. 279 (1987), the United States Supreme Court rejected the use of the type of racial statistics which Williams is now championing as it held that statistics indicating that race bias affected Georgia's capital sentencing was insufficient to prove that the imposition of a death penalty upon a black man for murdering a white man violated either the Eighth or Fourteenth Amendment. As in *McCleskey*, in the case at bar, Williams has made no attempt to offer evidence of bias specific to his own case. Williams' "factual support" for his claim is thus totally lacking in substance. Williams' statistic based claim that Butler County employs the death penalty in a discriminatory manner is not actionable in habeas corpus.

**Twenty-second ground for relief**

    **Procedural posture:**

As his twenty-second ground for relief, Williams propounds a myriad of challenges to Ohio's death penalty law.  On direct appeal, Williams fairly presented most, **but not all,** of these claims to the Ohio Supreme Court as his thirty-second through thirty-fourth propositions of law.  Specifically on direct appeal Williams made no mention of the complaint that Ohio's death penalty statute: does not require premeditation; has a bifurcated trial requirement; allegedly encourages guilty pleas, or allows for electrocution as a means of execution.

Since it is entirely based on the record, Williams failed to fairly present the above cited death penalty claims to the Ohio appellate courts by including it in his direct appeal.  Under the first and second prongs of the *Maupin* analysis*, supra*, these portions of Williams' death penalty claims are procedurally defaulted.  The third *Maupin* criteria has also been met as the procedural rule of waiver is an adequate and independent state ground to bar habeas claims.  The state procedural rule serves the State's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.  *See, Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).  Fourth, since the Ohio appellate were given no opportunity whatsoever to consider Williams' allegations, Williams is now required to demonstrate that there was cause and that he was actually prejudiced by the alleged constitutional error.  To date, Williams has not even attempted to establish cause or prejudice for his procedural default.  The *Maupin* criteria has been entirely satisfied.

Beyond the four part *Maupin* analysis, this court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." *Murray*, 477 U.S. at 496. As discussed below, Williams' death penalty allegations are entirely lacking in merit. Furthermore, the allegation bear no relationship whatsoever to a claim of actual innocence. Finally, as discussed with respect to Williams' eighth habeas corpus ground for relief, the record contains an abundance of evidence demonstrating Williams' guilt.

**Ohio's statutory framework for the imposition of capital punishment is constitutional.**

Williams' twenty-second ground for relief asserts a litany of challenges to the constitutionality of Ohio's death penalty scheme on its face and as applied to him. The Ohio appellate courts' adjudication of these Williams claims was neither contrary to clearly established federal law nor based on an unreasonable determination of the facts in light of the evidence presented. Indeed, none of Williams' direct appeal death penalty allegations reflect constitutional violations. For example, Williams asserts that the death penalty is unconstitutionally arbitrary and capricious. However, in *Gregg v. Georgia*, 428 U.S. 153, 195 (1976), the Court rejected this Williams argument as it held:

> The concerns expressed in *Furman* that the penalty of death not be imposed in an arbitrary or capricious manner can be met by a carefully drafted statute that ensures that the sentencing authority is given adequate information and guidance. As a general proposition these concerns are best met by a system that provides for a bifurcated proceeding at which the sentencing authority is apprised of the

information relevant to the imposition of sentence and provided with standards to guide its use of the information.

In *Gregg* the Court identified the following capital sentencing procedures which reduce the likelihood of an arbitrary and capricious imposition of the death penalty:

1)  Sentencing authority consideration of a presentence report

2)  Jury sentencing,

3)  A bifurcated guilt phase/sentencing phase trial,

4)  A weighing of aggravating circumstances and mitigating factors,

5)  A specific sentencing decision, and

6)  Meaningful appellate review.

*Gregg* at 188-95. *See also, Proffitt v. Florida*, 428 U.S. 242, 252-53 (1976). Williams is now challenging an Ohio death penalty scheme, which contains all of the above chronicled features. As such, the death penalty can be imposed without the arbitrariness and capriciousness described in *Furman v. Georgia,* 408 U.S. 238 (1972).

Additionally, the exercise of prosecutorial discretion does not render capital punishment arbitrary and capricious. In *Gregg*, the Court noted the existence of "discretionary stages" in capital proceedings, including prosecutorial discretion whether to prosecute and to plea bargain, jury discretion to convict of a lesser included offense, and gubernatorial discretion to commute a sentence. *Gregg* at 199. These "discretionary stages" do not implicate the concerns expressed in *Furman*, as recognized by *Gregg* at 199:

120

> At each of these stages an actor in the criminal justice system makes a decision which may **remove** a defendant from consideration as a candidate for the death penalty. *Furman*, in contrast, dealt with the decision to **impose** the death sentence on a specific individual who had been convicted of a capital offense. Nothing in any of our cases suggests that the decision to afford an individual defendant **mercy** violates the Constitution. *Furman* held only that, in order to minimize the risk that the death penalty would be **imposed** on a capriciously selected group of offenders, the decision to **impose** it had to be guided by standards so that the sentencing authority would focus on the particularized circumstances of the crime and the defendant.

Similarly, in *McCleskey v. Kemp,* 481 U.S. 279 (1987) the Court reaffirmed that a defendant "cannot prove a constitutional violation by demonstrating that other defendants who may be similarly situated did **not** receive the death penalty" due to discretionary leniency. *McCleskey* at 306.

Apparently forgetting that he did not plead guilty, Williams also contends that Ohio's scheme is unconstitutional because "it encourages defendants to waive their fundamental rights and enter guilty pleas". In *United States v. Jackson*, 390 U.S. 570 (1968), the Court struck a federal statute provision that impermissibly induced defendants to waive their constitutional right to a trial by jury. The Court subsequently clarified its position in *Brady v. United States*, 397 U.S. 742 (1970) by stating that pleas are not invalid simply because of the possibility of the death penalty. In so ruling, the Court refused to hold "that a guilty plea is compelled and invalid . . . whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Id.* at 751.

121

In *State v. Buell*, 22 Ohio St. 3d 124 (1986), the Ohio Supreme Court persuasively rejected a contention similar to Williams':

> Likewise, we reject [the] contention that Crim. R. 11(C)(3) may encourage guilty pleas, and thereby a waiver of fundamental rights. Crim. R. 11(C)(3) is applicable only in cases where there has been an accepted plea to the charge and specifications. . . Even in cases where a plea has been accepted, Crim. R. 11(C)(3) may provide no advantage at all.

> The discretion given to the trial judge in Crim. R. 11(C)(3) to dismiss the specifications "in the interests of justice" when the defendant enters a plea of guilty or no contest to the charge of aggravated murder is neither violative of defendant's constitutional right to equal protection of the laws nor does it coerce the defendant to waive his constitutional right to a jury trial.'

> . . . [A] defendant, even if he pleads guilty or no contest, is not assured that any or all of the specifications contained in his indictment will be dismissed, since the court may dismiss such specification in the "interests of justice."'

(Citations omitted).   The Ohio Supreme Court went on to hold that the death penalty scheme does not impose an impermissible risk on defendants who proceed to trial   "[s]ince, in Ohio, a sentence of death is possible whether a defendant pleads to the offense or is found guilty after a trial." *Id.*

Williams' additional complaints regarding the constitutionality of Ohio's death penalty statute are equally meritless.   Ohio's aggravated murder statute, Ohio Revised Code Section 2903.01, contains two categories of aggravated murder: premeditated murder and felony murder.  Part (D) of Ohio Revised Code Section 2903.01 provides that no one can be convicted of aggravated murder "unless he is **specifically found to have intended to cause the death of another.**"   Thus, even a felony-murderer such as Williams must be found to have intended to kill.

122

Additionally, at the guilt phase of the trial, the jury must determine whether the defendant is guilty of one or more of the aggravating circumstances contained in Ohio Revised Code Section 2929.04(A). With respect to Williams, the seventh listed aggravating circumstance mandates in pertinent part that to be death-eligible the offender must commit the murder while committing as aggravated robbery and be the principal offender in the aggravated murder, while the third listed aggravating circumstance mandates that the offense was committed for the purpose of escaping detection for another offense committed by the offender.

Williams also argues that Ohio's death penalty scheme is unconstitutionally vague because the sentencing court must impose the death penalty if it finds that the aggravating circumstances outweigh mitigating factors [Ohio Revised Code Section 2929.03(D)(3)] and because appellate courts affirm if they are persuaded that aggravating circumstances outweigh mitigating factors [Ohio Revised Code Section 2929.05(A)]. Williams contends that this procedure fails to provide sufficient guidance on how to determine whether aggravating circumstances outweigh mitigating factors.

Contrary to Williams' allegations, in *Proffitt v. Florida*, 428 U.S. 242 (1976) a statutory scheme with the same weighing standard as the case at bar was found to be constitutional. Furthermore in *Zant v. Stephens*, 462 U.S. 862 (1983), the Court noted that it had approved Georgia's sentencing statute "even though it clearly did not channel the jury's discretion by enunciating specific standards to guide the jury's consideration of aggravating and mitigating circumstances". *Id*. at 875. Similarly, in *Franklin v. Lynaugh*, 487 U.S. 164 (1988), the Court pointedly

123

confirmed that it has "never held that a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required." *Id.* at 172-73. Williams' vagueness attack on Ohio's death penalty statute is void of merit.

Williams also mistakenly argues that Ohio law contains an unconstitutionally "anti-sympathy" requirement. This Williams argument was rejected in *California v. Brown*, 479 U.S. 538, 541 (1987), wherein the United States Supreme Court held that an instruction during the penalty phase of a capital murder trial that jurors must not be swayed by "mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling" did not violate the Eighth or Fourteenth Amendments to the United States Constitution. Instead, the Court found that a reasonable juror would understand the charge as being "an admonition to ignore emotional responses that are not rooted in the aggravating and mitigating evidence introduced during the penalty phase" which enhanced the reliability of the sentencing process.

Williams also contends that it is unconstitutional to have the same jury in the trial and mitigation phases of trial. Ohio Revised Code Section 2929.03(C)(2)(b) provides that the jury, which determines a defendant's guilt, must also determine his sentence. This statute was upheld as constitutional in *State v. Mapes*, 19 Ohio St.3d 108, 116-117, 484 N.E.2d 140 (1985).

Although the United States Supreme Court has not expressly prohibited the use of a bifurcated jury in state capital cases, *see Gregg v. Georgia, supra* at 191-92, it has never held that the same jury cannot decide guilt and sentence. Indeed

to the contrary, the Court has recognized that the states have a substantial interest in having a single jury decide all the issues in a capital trial. *Lockhart v. McCree,* 476 U.S. 162, 179-80 (1986). The Court has also acknowledged that a defendant might actually benefit at the sentencing phase from any "residual doubts" that the jury might have had during the guilt phase of the trial. *Id.* at 181. In addition, the Court has stated that, since the evidence presented at both phases of a bifurcated trial would be substantially similar, neither the prosecution nor the defense should be further burdened by having to present the evidence twice. *Id*. Given this overwhelming support for a unitary jury system, at both the state and federal level, Williams' claim that a bifurcated jury is constitutionally mandated is utterly meritless.

Williams also asserts that Ohio law provides inadequate appellate review. Although in his petition, Williams makes no effort to identify a single appellate review "inadequacy", on direct appeal Williams complained of Ohio's appellate review with respect to the proportionality of death sentences. The short answer to this argument is that proportionality review is not constitutionally required. *Pulley v. Harris*, 465 U.S. 37, 44-51 (1984); *Walton v. Arizona,* 497 U.S. 639 (1990); *McQueen v. Scroggy, supra; Martinez-Villareal v. Lewis,* 80 F.3d 1301, 1306-07, *cert. denied,* 117 S.Ct. 588 (9th Cir. 1996).

Furthermore, there is no constitutional requirement that a sentencing authority make specific findings, just as there is no right to jury sentencing. *Hildwin v. Florida,* 490 U.S. 638 (1989). Moreover, in Ohio the jury's sentencing determination is a recommendation. *See,* Ohio Revised Code Section

125

2929.03(D)(2). The trial judge is given the statutory responsibility of reweighing the aggravating circumstances and mitigating factors before determining whether to impose a death sentence or a life sentence. Ohio Revised Code Section 2929.03(D)(3). The trial judge must then state his sentencing findings in a separate opinion. Ohio Revised Code Section 2929.03(F). Thereafter, the appellate courts have both the trial judge's sentencing opinion and trial record with which to review the imposition of the death sentence.

In any event, Ohio law does in fact provide for proportionality review. The Ohio Supreme Court has described this state-mandated review as follows:

> The purpose of proportionality review is to determine whether the penalty of death is unacceptable in the case under review because it is disproportionate to the punishment imposed on others convicted of the same crime. . . For the following reasons, we are persuaded that the proportionality review contemplated by R.C. 2929.05(A) should be limited to cases already decided by the reviewing court in which the death penalty has been imposed.

> Logic dictates that only those cases which result in a conviction have any use in proportionality review, since only then will a penalty result with which the death sentence under review may be compared. It is equally logical that only convictions of a capital crime are relevant for comparison purposes, since such cases are necessarily so qualitatively different from all others that comparison with non-capital offense would be a profitless exercise. In fact, R.C. 2929.05(A), in requiring proportionality review, limits the scope of such review to 'similar' cases. We are further persuaded that a court cannot make a meaningful proportionality review unless the pool of cases is restricted to those which the reviewing court has itself decided. Comparison with cases not passed upon by the reviewing court would be unrealistic since the reviewing court could not possess the requisite familiarity with the particular circumstances of such cases so essential to a determination of appropriateness. . .

> We hold, therefore, that the proportionality review required by R.C. 2929.05(A) is satisfied by a review of those cases already decided by the reviewing court in which the death penalty has been imposed.

126

> Thus, a court of appeals need only compare the case before it with other cases actually passed on by that court to determine whether the death sentence is excessive or disproportionate. Similarly, proportionality review in this court will be limited to a review of cases we have already announced. No reviewing court need consider any case where the death penalty was sought but not obtained or where the death sentence could have been sought but was not.

*State v. Steffen*, 31 Ohio St.3d 111, 123-24, 509 N.E.2d 383 (1987), *cert. denied*, 485 U.S. 916 (1988).

Since proportionality review is not constitutionally required, states are accorded great latitude in defining the pool of cases used for comparison. *Lindsey v. Smith*, 820 F.2d 1137 (11th Cir. 1987), *cert. denied,* 489 U.S. 1059 (1989). Ohio has defined the pool of cases to be used in its proportionality review in a rational manner. As such, no constitutional provision is implicated by this process.

Ignoring the reality that Ohio law does not even mandate that he be executed by electrocution,[10] Williams finally brands electrocution as contrary to his standards of decency. It is beyond dispute that death by electrocution has **never** been found to be cruel and unusual punishment by **any** American court. Indeed for over a century it has been the law of the land that execution by electrocution does not violate the Eighth Amendment. *In re Kemmler*, 136 U.S. 436 (1890). Most recently, the Sixth Circuit Court of Appeals found that a petitioner attacking the constitutionality of death by electrocution had failed to even present an indication of a likelihood of success on the merits as it held:

> The very practice of electrocution has been upheld by other courts within the past year, and there is no argument even plausible that

---

[10] Williams has a statutory right under Ohio Revised Code Section 2949.22(B) to elect to be executed by lethal injection.

> there are differences in the level of "evolving decency" among the different circuits or states of the union, or over the last very few years.

*In re Sapp*, 118 F.3d 460, 464 (6th Cir.), *cert. denied*, 521 U.S. 1130 (1997).

As thus demonstrated, the United States Supreme Court has consistently and categorically rejected Williams' complaints regarding Ohio's death penalty in general and as applied to him.  Williams' twenty-second ground for relief is not actionable in federal habeas corpus.

**Twenty-third ground for relief**

**Procedural posture:**

As his twenty-third ground for relief Williams, for the first time in any court, contends that he was unconstitutionally prejudiced by Ohio's post-conviction treatment of **unidentified capital inmates other than Williams.**  As a consequence of his failure to raise this claim in state court at any stage of his appellate proceedings, Williams has totally deprived the Ohio courts of an opportunity to hear the claim.  Williams' procedural default satisfies the first and second prongs of the *Maupin* analysis.

The third *Maupin* criteria has also been met as the procedural rule of waiver is an adequate and independent state ground to bar habeas claims.  The state procedural rule serves the State's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.  *See, Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).  Fourth, since the Ohio appellate were given no opportunity whatsoever to consider Williams' allegations, Williams is now required to demonstrate that there was cause and that he was actually prejudiced by the alleged constitutional error.  To date, Williams has not even attempted to establish cause or prejudice for his procedural default.  The *Maupin* criteria has been entirely satisfied.

Beyond the four part *Maupin* analysis, this court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." *Murray*, 477 U.S. at 496.  As discussed below, Williams' unwarranted attack on Ohio's post-conviction

proceedings are entirely lacking in merit. Furthermore, the allegations bear no relationship whatsoever to a claim of actual innocence. Finally, as discussed with respect to Williams' eighth habeas corpus ground for relief, the record contains an abundance of evidence demonstrating Williams' guilt.

### Federal habeas corpus cannot be used to challenge alleged errors and deficiencies from state post-conviction proceedings.

Williams brazenly calls Ohio's capital post-conviction process "corrupt" because of its treatment of **unidentified capital inmates other than Williams.** However, since a post-conviction proceeding is civil, and not criminal in nature, Williams' claims regarding alleged errors in said proceedings are simply not cognizable under 28 U.S.C. Section 2254.

In *Kirby v. Dutton,* 794 F.2d 245 (6th Cir. 1986), the Court of Appeals for the Sixth Circuit rejected precisely the type of claims which Williams is now alleging. In *Kirby* the Sixth Circuit held at 247:

> In contrast, Kirby claims a denial of the Sixth Amendment right to effective assistance of counsel, a denial of due process, and a denial of equal protection in the State post-conviction proceedings-claims unrelated to his detention. Kirby has raised no other claims deriving from the conviction or sentencing proceeding. If we were to hold in favor of Kirby, the result would not be release or a reduction in Kirby's time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention.

> The analysis of the writ of habeas corpus in *Preiser* directs us to the conclusion that habeas corpus should not be available to Kirby...

> Our conclusion that habeas corpus is not applicable to Kirby is bolstered by the decision of other circuits facing the question of whether habeas corpus can be used to challenge state post-conviction proceedings. These courts have concluded, in agreement with the Preiser analysis, that the writ is not the proper means by which

> prisoners should challenge errors or deficiencies in state post-conviction proceedings such as Kirby claims here because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration.

*Id.* at 247. *See also Wise v. Armontrout*, 952 F.2d 221 (8th Cir. 1991); *Golston v. Attorney General of State of Alabama,* 947 F.2d 908 (11th Cir. 1991); *Williams-Bey v. Trickey,* 894 F.2d 314 (8th Cir. 1989), *cert. den.,* 495 U.S. 936 (1990); *Tillett v. Freeman*, 868 F.2d 106 (3rd Cir. 1989); *Bryant v. Maryland*, 848 F.2d 492 (4th Cir. 1988).

Williams' twenty-third ground for relief is not actionable in federal habeas corpus.

**Twenty-fourth ground for relief**

 **Procedural posture:**

 As his twenty-fourth ground for relief Williams brands the record "incomplete" based upon the proper Ohio Supreme Court denial of an **untimely** Williams motion to supplement the record. In its direct appeal denial of this Williams claim, the Ohio Supreme Court factually determined at *Williams*, 73 Ohio St. 3d 153, 160 that, "here, counsel for appellant failed to attempt to supplement the record until the case reached this court".

 Under the criteria of *Maupin*, this claim is procedurally defaulted. As quoted above, the Ohio Supreme Court expressly held that Williams had waived the right to bring his motion to supplement the record in state court. This Ohio Supreme Court determination satisfies the first and second prongs of *Maupin*.

 The third *Maupin* criteria has also been met as the procedural rule of waiver is an adequate and independent state ground to bar habeas claims. The state procedural rule serves the State's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. *See, Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). Fourth, since the Ohio appellate were given no opportunity whatsoever to consider Williams' allegations, Williams is now required to demonstrate that there was cause and that he was actually prejudiced by the alleged constitutional error. To date, Williams has not even attempted to establish cause or prejudice for his procedural default. The *Maupin* criteria has been entirely satisfied.

Beyond the four part *Maupin* analysis, this court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." *Murray*, 477 U.S. at 496. As discussed below and reflected by the binding factual determinations of the Ohio Supreme Court, Williams' motion to supplement the record is entirely lacking in merit. Furthermore, the allegations bear no relationship whatsoever to a claim of actual innocence. Finally, as discussed with respect to Williams' eighth habeas corpus ground for relief, the record contains an abundance of evidence demonstrating Williams' guilt.

### Williams' constitutional rights were not violated by the Ohio Supreme Court's proper denial of his motion to supplement.

As his twenty-fourth ground for relief, Williams contends that the Ohio Supreme Court erroneously denied his untimely motion to complete the record. Williams displeasure with the Ohio Supreme Court's denial of his motion fails set forth a constitutional deprivation. Indeed in *Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985), the Sixth Circuit recognized, "A district court is without jurisdiction to review a decision of the Supreme Court of Ohio. This is true even if the plaintiff seeks to raise federal constitutional issues".

Moreover, the Ohio Supreme Court's denial of Williams untimely motion to supplement was eminently correct. In its rejection of this Williams claim at *Williams*, 73 Ohio St. 3d 153, 160-61, the Ohio Supreme Court rendered the following binding factual determinations with respect to Williams assertion that he had a constitutional right to an unabridged transcript of all proceedings:

133

...this right may be waived. Pursuant to App.R. 9(B), the appellant bears the burden of ordering the transcript. In *Spirko* the defendant sought to supplement and complete the record in a timely manner. Here, counsel for appellant failed to attempt to supplement the record until the case reached this court. Furthermore, some of the matters that appellant now wishes to add were never part of the trial court's proceedings, and as to these items, a reviewing court may not supplement the record before it with new matter that was not part of the trial court's proceedings and then decide the appeal on the basis of the new matter. *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, paragraph one of the syllabus. Transcripts from appellant's initial appearance and the preliminary hearing were not before the trial court by way of evidence or otherwise, and should not be relied upon by this court in determining whether the trial court erred. Likewise, the arraignment in the court of common pleas was not part of the trial court's proceedings and should not be considered here.

Other items that appellant sought to add to the record pertain to the selection of the three-judge panel in the event appellant waived his right to a jury trial, a transcript of the scheduling conference, drawing of the special venire, jury questionnaires, polling of the jury at the conclusion of the guilt phase, a duplicate of a photograph that had been damaged while in the custody of the clerk of courts, and a presentence investigation report.

Appellant did not request that the selection of the three-judge panel, the drawing of special venire and the scheduling conference be transcribed. Appellant also failed to object to the failure to transcribe those proceedings. Appellant has thus waived any error in this regard. Furthermore, appellant did not make a timely motion in the court of appeals to supplement the record. See App. R. 9(E).

With regard to the jury questionnaires, there is no indication from the record that appellant attempted to proffer them for the record, although the questionnaires were utilized by appellant in jury selection. As appellant failed to raise a timely motion pursuant to App. R. 9(E) for their inclusion in the appellate record, appellant has waived all but plain error. Upon careful review of the record, we find that appellant has failed to demonstrate plain error.

Appellant requested a duplicate of State's Exhibit 27(A), a photograph that was allegedly damaged while in the custody of the clerk of courts. The record reflects that State's Exhibit 27(A) is a duplicate of State's Exhibit 27. The only difference between the two photographs

is that State's Exhibit 27 had a red circle around the area of comparison by the expert, while State's Exhibit 27(A) does not.  As the photographs were substantially the same and appellant has failed to demonstrate either prejudice or plain error, appellant's argument is without merit.

Appellant also complains that the actual polling of the jury at the conclusion of the guilt phase was not recorded.  This was apparently omitted by the court reporter.  Appellant's counsel did not make a timely motion to supplement the record, nor did appellant attempt to reconstruct the record. Furthermore, appellant has not demonstrated prejudice.

Finally, appellant requests that the record be supplemented with a presentence investigation report ("PSI").  The record is clear that the trial court was aware that it could not consider a PSI report on sentencing for the capital offense.  For this reason, the court did not order the report until after sentencing on the aggravated murder charge; the PSI report was to be used solely for sentencing on the noncapital offenses.

Since appellant did not make a timely motion to supplement the record, did not follow App. R. 9(C), and has not shown how he was prejudiced, we overrule this proposition of law.

The above Ohio Supreme Court determinations are neither based on an unreasonable determination of the facts in light of the evidence presented nor contrary to clearly established federal law as determined by the Court.  Williams' twenty-fourth ground for relief is not actionable in federal habeas corpus.

## CONCLUSION

For the foregoing reasons, Respondent respectfully requests this Court to dismiss Williams' application for writ of habeas corpus. Furthermore all of the issues presented before this Court can be decided upon the records of the state court proceedings. Therefore, an evidentiary hearing at the federal court level is not necessary nor can a hearing resolve any issue that was not resolved at the state court level.

A copy of all papers and transcripts relied upon by the parties have been indexed and filed with the Court under separate cover.

Respectfully submitted,

BETTY D. MONTGOMERY (0007102)
Attorney General

STUART A. COLE (0020237)
Assistant Attorney General
Capital Crimes Section
30 E. Broad Street, 26th Flr.
Columbus, Ohio  43215-3428
(614) 728-7055

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **RESPONDENT BETTY MITCHELL'S RETURN OF WRIT** has been forwarded by regular U.S. Mail, postage prepaid, this 29th day of, September 2000, to counsel, Timothy Payne, Ohio Public Defender's Office, 8 East Long Street, Columbus, Ohio, 43215 and William Joseph Edwards, 501 South High Street, Columbus, Ohio 43215.

STUART A. COLE (0020237)
Assistant Attorney General