IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLIFFORD WILLIAMS, | ) | Case No. 1:99-cv-438 |
| | ) | |
| Petitioner, | ) | Judge Michael H. Watson |
| | ) | |
| vs. | ) | Magistrate Judge Kimberly A. |
| | ) | Jolson |
| BETTY MITCHELL, WARDEN | ) | |
| | ) | ***Death Penalty Case*** |
| Respondent. | ) | |

---

### Petitioner Williams's Motion to Alter/Amend Under Fed. Rule of Civil Procedure 59(e) and/or Motion for Relief Under Rule 60(b)

---

Petitioner Clifford Williams, pursuant to Fed. R. Civ. P. 59(e), respectfully moves this Court to alter or amend its judgment dismissing Williams' habeas corpus petition. In the alternative, Williams moves this Court to grant him relief from its judgment, pursuant to Federal Rule of Civil Procedure 60(b)(6). Williams's federal habeas counsel abandoned him at a crucial part of his habeas proceedings, and they completely failed to provide important, available evidence demonstrating the validity of his habeas claims. As a result, this Court was left without critical evidence necessary to decide Williams' habeas grounds for relief.

Williams asks the Court to vacate or suspend its April 14, 2022, final judgment with respect to specified claims, at which time Williams will file a motion to expand the record. A more detailed explanation of the basis for this motion is set forth in the attached Memorandum in Support.

Respectfully submitted,

Office of the Ohio Public Defender

*/s/Kimberly Rigby*
Kimberly Rigby [0078245]
*Kimberly.Rigby@opd.ohio.gov*
Managing Counsel, Death Penalty Department

*/s/Rachel Troutman*
Rachel Troutman [0076741]
*Rachel.Troutman@opd.ohio.gov*
Supervising Attorney, Death Penalty Department

250 East Broad St., Suite 1400
Columbus, Ohio 43215
(614) 466-5394 – voice
(614) 644-0708 – facsimile

**Counsel for Petitioner**

**Memorandum in Support**

## I.     Summary of Argument

Clifford Williams is the victim of his habeas counsel's abandonment, which prejudicially impacted his habeas action. This Court possesses the authority and discretion to correct this injustice under either Fed. R. Civ. P. 59(e) or 60(b)(6). *See Gonzalez v. Crosby*, 545 U.S. 524, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005); *Fuller v. Quire*, 916 F.2d 358 (6th Cir. 1990). "Rule 59(e) derives from a common-law court's plenary power to revise its judgment during a single term of court, before anyone could appeal," and it is a "one-time effort to bring alleged errors in a just-issued decision to a habeas court's attention, before taking a single appeal." *Banister v. Davis*, __ U.S. __, 140 S. Ct. 1698, 1709-10 (2020). "Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." *Gonzalez*, 545 U.S. at 528.

## II.    Underlying Facts

Williams' habeas counsel squandered Williams' opportunity to obtain relief from his death sentence. The record before this Court demonstrates the following.

On June 11, 1999, appointed counsel Tim Payne and W. Joseph Edwards filed Williams' habeas petition. Among other claims, the petition alleged that defense counsel were ineffective for failing to retain a mitigation specialist or cultural mitigation expert and failing to investigate and prepare for the mitigation hearing. The petition specifically referenced witnesses whom trial counsel should have interviewed, and who had provided affidavits during the habeas investigation—but those affidavits were not part of the record, and the petition made no reference to their existence. Doc. 18, PageID 5578-79.

After returning to state court to exhaust several claims, Williams notified this Court in 2004 that those proceedings were completed. Habeas counsel suggested that the Court "convene a status conference with the parties to discuss the current status of his federal habeas action and to clarify the proceedings to ensue." Doc. 57, Petitioner Williams' Status Report Regarding State Court Proceedings, p. 2.[1] On September 1, 2006, Greg Meyers substituted as counsel for Tim Payne, who had left the Office of the Ohio Public Defender (OPD). Edwards remained on the case. The Court held a status hearing on July 11, 2007, and then issued an agreed-upon scheduling order. Docs. 65, 66. Petitioner was ordered to notify the Court if he was going to seek leave to amend his habeas petition, and "to specify whether he will seek leave to conduct further discovery." Doc. 66.

---

[1] Because many filings in this case predate the implementation of the S.D. Ohio's current ECF system, those filings were not identified with PageID numbers. Some of the substantive filings were later affixed with PageID numbers, but because this was done retroactively, the order of the PageID numbers does not reflect the order in which the documents were initially filed.

Williams filed a motion to amend the petition on September 7, 2007. Doc. 81. The Court granted the motion to amend the habeas petition (Doc. 85), and the Warden filed a supplemental return of writ and motion to dismiss those amended claims on August 20, 2008. Doc. 93. The Court had previously issued an order granting Williams 45 days from the date of the Warden's filing to file his Traverse. Doc. 92.

Meyers and Edwards filed eight motions for an extension of time to file the Traverse, until it was due on April 30, 2009. *See* Docs. 95, 97, 99, 101, 103, 105, 107, 109. At that point, the Court noted that it would grant no further extensions of time. Doc. 110.

Meyers and Edwards filed Williams's Traverse on May 4, 2009. *See* Doc. 111, Motion for Order to File Traverse Instanter; Doc. 113, Traverse.

In their summary of the argument, habeas counsel acknowledged the following:

> Late into his habeas litigation while preparing this Traverse, his current habeas counsel realized that Williams record before this Court does not contain a motion to expand the record based primarily on matters developed during the discovery this Court authorized, plus some other matters. As a result, Williams, through counsel, will soon file a motion to expand the habeas record with facts to include the depositions of Wallace and defense counsel Davidson taken pursuant to this Court's orders granting discovery, along with a report by cultural mitigation specialist Kathleen Kostelny, Ph.D.

Doc. 113, Traverse, PageID 537. Habeas counsel faulted trial counsel for failing to present the wealth of available mitigating evidence that "would have helped to 'humanize' Williams before the eyes of the jury," and then repeated that same failure to present that evidence to the Court. Habeas counsel stated that "Dr. Kostelny's compelling discussion of how the various forces and influences during Williams' formative and teen years[2]

---

[2] Williams was just two months past his 18th birthday at the time of the offenses – these "formative and teen years" were, in fact, the entirety of his life.

combined to create a persuasive narrative in favor of mitigating a death sentence," but this narrative never made it out of counsel's files. *Id.* at PageID 564; *see* Ex. 5, Dr. Kostelny Report.

Counsel also named individuals who should have been interviewed during the mitigation investigation, just as they had done in the initial petition. *Id.* at PageID 562-563. While there are citations to the post-conviction record, affidavits from at least four of those witnesses—Williams' father, sister, paternal grandmother, and stepbrother—were never submitted in post-conviction. *See* Ex. 5, Affidavits of Clifford George, Sr., LaTanya Williams, Marie George, and David Bauniel. They were signed nearly ten years before the Traverse was filed, in 1999, but were never submitted to the Court. Two other witnesses who had provided post-conviction affidavits—Williams' mother and maternal aunt—had also signed more detailed affidavits in 1999, and those were not submitted to the Court either. *See* Ex. 5, Affidavits of Diane Bauniel and Larenda Jackson.

Counsel did include page citations to the deposition of trial counsel David Davidson, asserting that his testimony "reflect[ed] numerous delays and failures leading up to the mitigation hearing." Doc. 113, PageID 576-578. But the Court would never have been able to consider that testimony, because, like the report and affidavits, the deposition transcript was never submitted for the record. *See* Ex. 5, Deposition of David Davidson.

Williams' appointed habeas counsel had no reason for this failure. In fact, in the days preceding the filing of Williams' Traverse, Meyers noted specifically to Edwards that they needed to file "ASAP" a Habeas Rule 7 Motion to Expand the Record. Ex. 1, Affidavit of Greg Meyers, ¶ 7. Counsel apparently simply forgot to ever do it. *See id.* at ¶¶ 6-9, 19. *See also* Ex. 4, Affidavit of W. Joseph Edwards, ¶ 11.

The Court issued an Opinion and Order concerning procedural default matters on December 7, 2012. Doc. 119. At its conclusion, the Court directed the parties to file a status report indicating whether any additional merits briefing was necessary. *Id.* at PageID 673. Meyers acknowledges that "[t]he filing of the Status Report should have triggered my recollection that we need to supplement the record; but it did not." Ex. 1, ¶ 11. Edwards filed a status report stating that "that no additional merits briefing will be needed in this matter." Doc. 127, PageID 692.

After filing the January 21, 2013, motion asking the Court to reconsider its procedural default ruling on one sub-claim (Doc. 128), Meyers and Edwards did nothing further on the case.

By January 2016, Meyers was focused mainly on trial-level cases at OPD. He contacted Richard Cline, the then-head of OPD's Death Penalty Department, about Williams' case. Meyers asked Cline to reassign Williams' case to someone in the Death Penalty Department, because Meyers did not have the time to devote to the case. Ex. 1, ¶ 13. Meyers specifically stated that "Mr. Williams needs a seasoned DP attorney to work as co-counsel with Joe Edwards, who is no expert when it comes to capital habeas litigation." *Id.* In February 2016, Meyers sent a reminder email to Cline, to which he responded, "Will do. Thanks for the Reminder." *Id.* at ¶ 14.

On October 24, 2016, Meyers emailed Cline again, notifying him that Williams had called him and reminding Cline to assign someone else to the case. *Id.* at ¶ 15. Meyers noted that Williams was "saying (as he always does) he can't reach Joe Edwards." *Id.* That was the last correspondence Meyers had about Williams' case until this month. *Id.* at ¶ 16.

Cline believed that his "Department was gravely understaffed and those attorneys with significant habeas experience were overwhelmed." Ex. 2, Affidavit of Richard Cline, ¶ 10. He internally assigned Williams's habeas case to himself, despite his recognition that he had "limited experience in habeas matters at that time." *Id.*

Cline had a significant workload of his own and asked, "a new employee with no habeas experience at all, to gather copies of the documents in the habeas case and provide an index/summary of those documents." *Id.* at ¶ 13. That employee went to Rachel Troutman, one of the Department Supervisors,[3] with questions. *Id.* Cline received an email from Troutman shortly thereafter in which she provided Cline with several reasons why a review of Williams' case file was necessary. *Id.* at ¶ 14. However, Cline did not follow up on the potential concerns highlighted by Troutman. *Id.* at ¶ 15.

In early 2018, Cline reassigned the habeas case to another attorney as lead counsel. *Id.* at ¶ 17. That attorney resigned from OPD that same year, and Cline was left as the only attorney assigned internally to Williams's case. *Id.* at ¶ 18. Cline never filed a notice of appearance in Williams's habeas case. *Id.* at ¶ 26. Cline did not review the case files himself. *Id.* at ¶ 15. He never reviewed the entire habeas record in detail, though he acknowledges that he should have done so. *Id.* at ¶ 24. On May 5, 2022, Cline learned for the first time about the materials that Meyers and Edwards had forgotten to file in Williams' habeas action, when his Supervising Attorney[4] brought it to his attention. *Id.* at ¶ 21; Ex. 3, Affidavit of Melissa Jackson, ¶¶ 6, 20.

---

[3] Until October 1, 2021, Cline was the head of the Death Penalty Department, and the Death Penalty Supervising Attorneys reported to him.

[4] Starting October 1, 2021, Cline was no longer head of the Death Penalty Department. In his role as Agency Counsel, he now reports to Supervising Attorney Melissa Jackson.

Attorney Melissa Jackson began reviewing Williams' case in January 2022 for purposes of filing a petition for him under the new Serious Mental Illness (SMI) exemption to the death penalty in Ohio. Ex. 3, ¶ 5. She had agreed to co-counsel on the case with Cline. *Id.* It was during the course of familiarizing herself with Williams' case for the SMI petition that she came across multiple documents she believed to be significant to Williams's habeas case. *Id.* at ¶¶ 10-14. After ensuring that Williams's SMI petition was filed by the April 12, 2022, deadline, Jackson returned her attention to Williams' habeas case. *Id.* at ¶¶ 17-18.

Jackson then alerted the Death Penalty Department Manager and the other Supervising Attorneys to her concerns about Williams's habeas case. *Id.* at ¶ 18. In preparation for their May 5, 2022, meeting, Jackson logged into the CM/ECF system to check Williams's docket and saw that a final opinion and order denying the habeas petition had been issued on April 14, 2022. *Id.* at ¶ 19. Jackson appears to have been the first person to have learned of this opinion and order. *See* Ex. 1, ¶ 18 (Meyers "received electronic notice of the Court's April 14, 2022, Opinion and Order through the Court's CM/ECF System; however, it went to my "quarantine emails." I did not realize that this decision had been rendered until May 6, when my Supervisor, Joseph Medici, asked me whether I had received any electronic notice."); Ex. 2, ¶ 20 (Cline "was not aware that the Court had ruled on Mr. Williams's remaining habeas claims in R. 136, filed 04/14/22, until Ms. Jackson told me on May 5, 2022."). On May 10, 2022, Jackson informed Williams about the denial of his habeas case. Ex. 3, ¶ 20. She was the first person to give him that news. *Id.*

Williams was abandoned by his habeas counsel after the filing of the Traverse on May 4, 2009, if not sooner.

### III.    Williams merits relief under Fed. R. Civ. Pro. 59(e).

A district court has considerable discretion when making a determination to reopen a case. *See Columbia Gas Transmission Corp. v. Limited Corp*., 951 F.2d 110, 112 (6th Cir. 1991); *McClendon v. B & H Freight Services, Inc.*, 910 F. Supp. 364, 365 (E.D. Tenn. 1995). A judgment should, in general, be altered or amended under Rule 59(e) for one of three reasons: (1) an intervening change of controlling law; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or to prevent manifest injustice. *Javetz v. Board of Control, Grand Valley State Univ*., 903 F. Supp. 1181, 1190 (W.D. Mich. 1995); *Keweenaw Bay Indian Community v. S*tate of Mich., 152 F.R.D. 562, 563 (W.D. Mich. 1992), *aff'd*, 11 F.3d 1341 (6th Cir. 1993).

"As applied to Rule 59(e), no general definition of manifest injustice has ever been developed; courts instead are directed to look at the matter on a case-by-case basis." *United States v. Jarnigan*, No. 3:08-CR-7, 2008 U.S. Dist. LEXIS 60395, at *6 (E.D.Tenn. July 25, 2008); *see also In re Henning*, No. 09-10421, 2009 Bankr. LEXIS 3853, at **27 (Bankr.W.D.Tenn., Nov. 6, 2009) ("The 'manifest injustice' contemplated by Rule 59(e) is an amorphous concept with no hard-line definition."). Essentially, "a showing of manifest injustice requires that there exists a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *McDaniel v. Am. Gen. Fin. Servs.,* 2007 U.S. Dist. LEXIS 52217, 2007 WL 2084277, *7 (W.D. Tenn. Jul. 17, 2007).

Here, the fundamental flaw is not of the Court's own making; it is wholly due to counsel's abandonment. Still, the impact of the absence of evidence on this Court's decision is obvious:

> Most significantly, even if counsel performed deficiently with respect to their preparation and investigation into the mitigation evidence, this Court's hands are tied. **That is because Petitioner has failed to offer this Court anything suggesting prejudice ensued.** The Petition and Traverse are heavy on allegations that counsel should have done more but woefully short on the details of what, exactly, counsel should have uncovered. In this regard, Petitioner's case contrasts sharply with those cases in which counsel's investigation has been deemed constitutionally insufficient.

Doc. 136, Opinion and Order Denying Habeas, PageID 5926 (emphasis added).

Williams can demonstrate that the underlying judgment caused him "some type of serious injustice which could be avoided if the judgment were reconsidered." *In re Henning*, 420 B.R. at 785. Had habeas counsel not abandoned Williams, the exhibits attached herein would have been available for consideration. *See* Ex. 5. They provide powerful evidence of the prejudice that ensued from trial counsel's ineffective assistance during the mitigation phase of Williams' capital trial—namely, that there was extensive, compelling evidence available that weighed in favor of a sentence less than death.

Moreover, preventing this type of manifest injustice is directly in line with the policy arguments concerning equity found in *Maples v. Thomas*, 565 U.S. 266, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012). As the Supreme Court opined there:

> A markedly different situation is presented, however, when an attorney abandons his client without notice, and thereby occasions the default. Having severed the principal-agent relationship, an attorney no longer acts, or fails to act, as the client's representative.

*Id*. at 281. Although that case dealt with determining "cause" in the procedural default context, it is still instructive. As is the Court's decision in *Holland v. Florida*, 560 U.S. 631, 651-52, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), where the Court found that "unprofessional attorney conduct" may count as an "extraordinary circumstance"

justifying equitable tolling. As it did in those cases, Williams' counsel's unprofessional conduct—their complete abandonment of his case—also mandates relief.

Williams' counsel have conceded their role in depriving the Court of the relevant evidence and creating this unjust result. Meyers has acknowledged that:

> Looking back at my emails involving Mr. Williams habeas litigation, it is obvious that I knew the record needed to be supplemented. I have no recollection of why this never happened. I did not intentionally fail to supplement the record. Looking back at my 2009 calendar, I was (like many lawyers) very busy with a large docket of trial level and post-trial clients. After getting Mr. Williams' Traverse filed, I failed to follow up by taking steps to supplement the record.

Ex. 1 at ¶ 19.

Cline has acknowledged that:

> As counsel for Mr. Williams, I should have reviewed the entire habeas record in detail when I first became aware of his habeas case in 2016. Had I done that, I would have discovered the May 4, 2009, statement of prior habeas counsel in Mr. Williams' Traverse (R. 113, PageID#: 538) indicating the need to supplement the habeas court record. I would also have discovered that the anticipated motion to supplement the record was never filed, and I could have asked the Court for leave to supplement the record at that time. I did not do those things. Had I done them, the Court would have been able to review the supplementary materials before it decided the merits of Mr. Williams's undefaulted habeas claim 10(a)(i).
>
> Had I also reviewed the entire record of the case including the paper case file at OPD, I would have found the report of Dr. Kostelny, the affidavits of several lay witnesses, as well as the deposition transcripts, all of which it is now clear were never filed in the case. Had I discovered these, I would have moved the Court to supplement these into the record.

Ex. 2 at ¶¶ 24-25.

Edwards acknowledged that:

> Had I realized that we never filed the motion to supplement the record with the transcripts of the deposition of Wallace and defense counsel Davidson, and the report by cultural mitigation specialist Dr. Kostelny (as referred to in R. 113 at PageID#: 537) I would have alerted the Court to the fact that these documents still need to be added to the District Court's record.

Ex. 4 at ¶ 11.

By their own admissions, no attorney was acting on Williams's behalf in his federal habeas action for at least the past several years.

This is not a case where "a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered." *Ciralsky v. CIA*, 355 F.3d 661, 674 (D.C. Cir. 2004). Williams had no reason to suspect that his counsel had abandoned his habeas arguments or failed to present the available evidence. Counsel told the Court that they would "soon" be filing the motion to expand the record. *See* Doc. 113, PageID 537, 563. Locked up on death row, without access to the electronic case management system, Williams did not have the luxury to continually monitor whether his counsel had followed through with what they had assured the Court—and him—they were going to do.

Relief from judgment is justified in this case to prevent a manifest injustice. Furthermore, as this is a capital case, it would be extremely unjust to penalize Williams for uncorrected errors by his counsel when he had no idea that they were not doing their job. Under the Eighth Amendment, there is a heightened "need for reliability in the determination that death is the appropriate punishment in a specific case." *Caldwell v. Mississippi*, 472 U.S. 320, 330 (1985) (quoting *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)).

### IV.   Williams merits relief under Fed. R. Civ. Pro. 60(b).

Rule 60(b)(6), the alternative provision under which Williams brings this motion, permits reopening when the movant shows "any . . . reason justifying relief from the operation of the judgment" other than the more specific circumstances set out in Rules 60(b)(1)-(5). *Gonzalez*, 545 U.S. at 528-529.

Williams' motion for relief from judgment should be granted under Fed.R.Civ.Pro. 60(b)(6). The Sixth Circuit "adheres to the view that courts should apply Rule 60(b)(6) only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989). Williams' argument does not appear to fit within any of the first five sections of the rule, and as a result 60(b)(6) provides the appropriate framework:

> Rule 60(b) vests wide discretion in courts, but we have held that relief under Rule 60(b)(6) is available only in "extraordinary circumstances." *Gonzalez*, 545 U.S., at 535, 125 S.Ct. 2641, 162 L.Ed. 2d 480. In determining whether extraordinary circumstances are present, a court may consider a wide range of factors. These may include, in an appropriate case, "the risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988).

*Buck v. Davis*, 580 U.S. 100, 137 S.Ct. 759, 777-78 (2017). As in *Buck*, Williams's case presents extraordinary circumstances warranting relief under Rule 60(b)(6).

Rule 60(b)(6) is reserved for "other reasons justifying relief from the operation of judgment." *See* Fed. R. Civ. P. 60(b)(6). Inexcusable or gross neglect can constitute just such a reason. *See Fuller v. Quire*, 916 F.2d 358 (6th Cir. 1990); *U.S. v. Cirami*, 563 F.2d 26 (2nd Cir. 1977); *LP. Steuart, Inc. v. Matthews*, 329 F.2d 234 (D.C. Cir. 1964). While Williams recognizes that Rule 60(b)(6) is the catchall clause and is reserved for exceptional situations, Williams' capital case is the very type of exceptional situation for which it is reserved.

The manner in which Williams' case was handled throughout his district court proceedings was grossly negligent. When, as here, there is gross neglect by counsel and an absence of neglect by the client, the district court is within its discretion under Rule 60(b)(6) to grant relief from its judgment. *See Fuller v. Quire*, 916 F.2d 358 (6th Cir. 1990).

Williams' case is very similar to *O'Brien v. Indiana Dept. of Correction*, S.D. Ind. No. 1:03-cv-0018-DFH-WTL, 2004 U.S. Dist. LEXIS 10159, at *5 (June 1, 2004). In *O'Brien*, the Court found that the attorney's "abandonment of his clients without notice to them or to the courts amounts to an exceptional situation calling for such relief." *Id.* at *10. Specifically, a prison inmate filed suit against the prison, and the court ordered him to file an amended complaint because there were defects in the original. Despite the five extensions that the court granted on the deadline for the amended complaint, the inmate's attorney failed to file it, and his complaint was dismissed. *Id.* at *2. The inmate eventually obtained a new attorney and filed for relief from judgment under Rule 60(b)(1) and (6). The court denied relief under 60(b)(1), since the attorney's negligence was not excusable, but it vacated the judgment because of inexcusable neglect under 60(b)(6).  *Id.* at *4-5.

The reasoning in *O'Brien* applies here. As in *O'Brien*, Williams is unable to explain the conduct of his attorneys, as the record is void of any reason for their failure to file the motion to expand the record. *See id.* *2. Also, like *O'Brien*, the premise of the general rule restricting 60(b)(1) relief from cases of inexcusable negligence does not apply to Williams, for a malpractice suit against his attorneys will do him no good. *Id.* He is subject to being executed, for which all the money in the world is no remedy. And like the petitioner in *O'Brien*, Williams "is incarcerated and has only limited abilities to protect his interests," but he has done all that he can in his limited circumstances. *Id.* at *7.

"The rule should be liberally construed in order to do substantial justice." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981). Williams does not imply that this Court should take lightly the finality of its own judgments. He does not seek a reopening in order to effect delay. He is simply asking for the chance to file that which his

counsel claimed they would file years ago. Finality at times must give way to the search for truth, for "although the desideratum of finality is an important goal, the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause." *Id.*

Since this is a capital case, it is particularly important that the balancing "between serving the ends of justice and preserving the finality of judgments" weigh in favor of Williams. *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). The United States Supreme Court has long recognized that capital cases demand heightened standards of reliability because of the unique severity and finality of the death penalty. *Beck v. Alabama*, 447 U.S. 625, 637-38, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *Harmelin v. Michigan*, 501 U.S. 957, 994, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (acknowledging the Court's additional imposed protections in capital cases because "death is different."); *Reid v. Covert*, 354 U.S. 1, 45-46, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) (advising to bear in mind that death is different, that "[t]he taking of human life is irrevocable"). *See also Andres v. United States*, 333 U.S. 740, 752, 68 S.Ct 880, 92 L.Ed. 1055 (1948) ("[i]n death cases, doubts … should be resolved in favor of the accused").

This Court should apply those heightened standards here and recognize the injustice to Williams in denying him the ability to present crucial evidence—of his trial counsel's ineffective assistance, and the prejudice that resulted in his death sentence—merely because his counsel neglected to submit it to this Court.

## V. Conclusion

For all the foregoing reasons, Clifford Williams is entitled to relief under Federal Rule of Civil Procedure 59(e) or 60(b).

Respectfully submitted,

Office of the Ohio Public Defender

*/s/Kimberly Rigby*
Kimberly Rigby [0078245]
*Kimberly.Rigby@opd.ohio.gov*
Managing Counsel, Death Penalty Department

*/s/Rachel Troutman*
Rachel Troutman [0076741]
*Rachel.Troutman@opd.ohio.gov*
Supervising Attorney, Death Penalty Department

250 East Broad St., Suite 1400
Columbus, Ohio 43215
(614) 466-5394 – voice
(614) 644-0708 – facsimile

**Counsel for Petitioner**

## Certificate of Service

I hereby certify that on May 12, 2022, Petitioner filed his **Motion to Alter/Amend Under Fed. Rule of Civil Procedure 59(e) and/or Motion for Relief Under Rule 60(b)** electronically. By operation of the Court's electronic filing system, notice is served to all parties listed on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/Rachel Troutman*
Rachel Troutman [0076741]
*Rachel.Troutman@opd.ohio.gov*
Supervising Attorney, Death Penalty Department

**Counsel for Petitioner**