**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Clifford D. Williams,

             Petitioner, Petitioner,       Case No. 1:99-cv-438

     v.                         Judge Michael H. Watson

Betty Mitchell, Warden,         Magistrate Judge Jolson

             Respondent.

## OPINION AND ORDER

This Court entered final judgment dismissing this capital habeas corpus action on April 14, 2022. ECF Nos. 136 & 137. Petitioner, now represented by new counsel, moves to alter or amend the judgment under Rule 59(e), and/or seeks relief from judgment under Rule 60(B). ECF No. 143. For the reasons that follow, Petitioner's motion is **GRANTED IN PART**.

### I.    OVERVIEW

Petitioner seeks reconsideration of this Court's decision denying his habeas claims and dismissing his petition. Petitioner argues his prior federal habeas counsel "abandoned him at a crucial part of these proceedings, and they completely failed to provide important, available evidence demonstrating the validity of his habeas claims." ECF No. 140, at PAGEID # 5958. This argument stems in part from prior counsel's failure to supplement the record with affidavits and depositions that are potentially relevant to the resolution of Petitioner's claims. Petitioner asks the Court to vacate the April 14, 2022, final judgment and

permit him to file a motion to expand the record. *Id*.

## A. Relevant Background

After a trial by jury in Butler County, Ohio, Petitioner Williams was convicted of Aggravated Murder and sentenced to death for the August 3, 1990, shooting death of taxi-cab driver Wayman Hamilton. Petitioner was also convicted of Felonious Assault and Aggravated Robbery involving a separate victim, Jeffrey Wallace, that occurred three days later, on August 6, 1990. Less than four months elapsed between the time of Petitioner's Indictment, on September 19, 1990, and the beginning of his trial, on January 7, 1991. Petitioner had just turned eighteen years old at the time of the crimes.

On December 28, 1998, and after exhausting his state court remedies, Petitioner initiated the instant federal habeas proceedings by filing a notice of intention to file a habeas corpus petition. Doc. 1. On March 30, 1999, the Court entered an Order appointing Attorney Timothy R. Payne of the Ohio Public Defender's Office ("OPD") and Attorney W. Joseph Edwards as counsel for Petitioner. Doc. 11.

On June 11, 1999, Petitioner filed a petition for a writ of habeas corpus setting forth twenty-four grounds for relief. Petition, ECF No 18. In October 2000, Petitioner filed a motion for discovery that included a request to take the deposition of Jeffrey Wallace. The Court granted Petitioner's discovery request, including authorization to depose Wallace. ECF No. 32. Wallace was deposed on December 14, 2001. In his deposition, Wallace admitted that he was addicted

to crack cocaine, that he had used cocaine the day of the shooting, and that when he offered Petitioner a ride, he was looking to obtain cocaine or to rob Petitioner of drugs or money in order to buy cocaine. Wallace also stated that Petitioner may have shot him by accident. ECF No. 70, at PAGEID ## 43–75; ECF No. 71, at PAGEID ## 76–126; ECF No. 72, at PAGEID ## 127–133.

On February 12, 2002, Petitioner filed a motion for a new trial in state court, on the basis of the newly discovered evidence obtained during the Wallace deposition. On September 19, 2002, this Court stayed this case to allow Petitioner to litigate the state court issues. On December 4, 2002, the state trial court denied Petitioner's motion for a new trial as both untimely and without merit. ECF No. 73, at PAGEID # 212–28. On November 3, 2003, the Twelfth District Court of Appeals affirmed the decision of the trial court. *State v. Williams*, No. CA2003-01-001, 2003 WL 22470163 (Ohio App. 12th Dist. Nov. 3, 2003). The Ohio Supreme Court declined to exercise jurisdiction.

On August 10, 2004, Petitioner filed a status report notifying this Court that his state court proceedings were completed. ECF No. 57. On September 1, 2006, Petitioner filed a motion requesting the Court to substitute Senior Assistant Public Defender Gregory Meyers for Attorney Timothy Payne, as Attorney Payne had resigned from the OPD effective August 24, 2006. ECF No. 62. The Court granted the request and substituted Attorney Meyers as counsel. ECF No. 63. Attorney Edwards remained on the case.

On September 7, 2007, Petitioner filed a motion to amend his habeas petition to add three additional grounds for relief regarding the Wallace deposition testimony and his pursuit of a new trial. ECF No. 81. The new claims were set forth as claims twenty-five through twenty-seven. The Court granted Petitioner leave to amend, ECF No. 85, and on August 20, 2008, Respondent filed a supplemental return of writ and motion to dismiss procedurally defaulted claims. ECF No. 93. Pursuant to the Court's Scheduling Order, Petitioner had 45 days from the date of the Warden's filing to file his Traverse.

Petitioner sought eight extensions of time to file the Traverse, until it was due on April 30, 2009. ECF Nos. 95, 97, 99, 101, 103, 105, 107, 109. The Court informed Petitioner there would be no further extensions. ECF No. 110. Attorneys Meyers and Edwards filed the Traverse late, on May 4, 2009. ECF No. 111. The Traverse contained a brief reference to an evaluation and cultural mitigation report "developed by psychologist Kostelny" that "will be tendered as an attachment to Williams' forthcoming motion to expand the record." ECF No. 113, at PAGEID # 563. Counsel stated the following:

> Late into this habeas litigation while preparing this Traverse, his current habeas counsel realized that Williams record before this Court does not contain a motion to expand the record based primarily on matters developed during the discovery this Court authorized, plus some other matters. As a result, Williams, through counsel, will soon file a motion to expand the habeas record with facts to include the depositions of Wallace and defense counsel Davidson taken pursuant to this Court's orders granting discovery, along with a report by cultural mitigation specialist Kathleen Kostelny, Ph.D.

ECF No. 113, at PAGEID # 537.  No such motion to expand the record was ever filed, and the expert report and other documents do not appear anywhere in the record.

In a December 7, 2012, Opinion and Order, this Court dismissed as procedurally defaulted two sub-claims alleging the ineffective assistance of trial counsel at mitigation, on the basis that those sub-claims were never presented to the state courts during postconviction proceedings.  ECF No. 119.  Specifically, this Court dismissed sub-claim 10(a)(ii), wherein Petitioner alleged the ineffective assistance of trial counsel for failing to obtain a mitigation specialist, failing to adequately investigate and interview mitigation witnesses, and failing to develop mitigating evidence for the mitigation hearing.  The Court also dismissed sub-claim 10(a)(iii), which alleged trial counsel were ineffective because they failed to obtain a psychiatrist in a timely manner.  With respect to the three new claims for relief set forth in the Amended Petition as claims twenty-five through twenty-seven and pertaining to Petitioner's pursuit of a new trial in state court, the Court determined those claims were not fairly presented to the state courts as federal constitutional claims.  Finally, the Court directed the parties to file a status report indicating whether any additional merits briefing was necessary given the fact that Petitioner had narrowed and consolidated his claims in the Traverse.  *Id*. at PAGEID # 673.

Thereafter, Respondent filed a status report stating that no additional merits briefing was necessary.  ECF No. 121.  Petitioner also filed a status

report, requesting additional time to file a motion for reconsideration of the

Court's decision on procedural default, and also stating "Petitioner anticipates

that no additional merits briefing will be needed in this matter." ECF No. 127, at

PAGEID # 692. On January 21, 2013, Petitioner filed a motion asking the Court

to reconsider the procedural default ruling as to sub-claim 10(a)(ii), which alleged

that counsel failed to conduct a sufficient mitigation investigation and failed to

obtain a mitigation specialist. ECF No. 128. The Court denied Petitioner's

motion, finding again that Petitioner failed to raise those claims of ineffective

assistance of trial counsel during his state postconviction proceedings. ECF No.

131.

After the Court issued its decision finding sub-claims 10(a)(ii) and (iii)

defaulted, the Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1 (2012), and

*Trevino v. Thaler*, 569 U.S. 413 (2013). Those cases stood for the proposition

that the ineffective assistance of postconviction counsel may, in some cases,

excuse the procedural default of certain claims of ineffective assistance of trial

counsel where those claims must be raised in postconviction. Counsel for

Petitioner did not file a motion asking the Court to reconsider its default ruling in

light of these cases, as many other counsel did in other capital habeas cases.

Nevertheless, in the final Opinion and Order dismissing this case, the Court

decided, sua sponte, to revisit the issue of whether cause existed to excuse the

procedural default of sub-claims 10(a)(ii) and (iii), on the basis of *Martinez* and

*Trevino*, as well as *White v. Warden*, 940 F.3d 270 (6th Cir. 2019). In so doing,

the Court determined that Petitioner could not establish cause and prejudice to excuse the default of these subclaims, because Petitioner could not meet the required showing of prejudice necessary to prevail on his underlying ineffective assistance of trial counsel claims. In making this determination, the Court noted that Petitioner never moved to supplement the record with any additional evidence establishing that he was prejudiced by trial counsel's failure to investigate mitigation. Specifically, this Court held as follows:

> Most significantly, even if counsel performed deficiently with respect to their preparation and investigation into the mitigation evidence, this Court's hands are tied. That is because Petitioner has failed to offer this Court anything suggesting prejudice ensued. The Petition and Traverse are heavy on allegations that counsel should have done more but woefully short on the details of what, exactly, counsel should have uncovered. In this regard, Petitioner's case contrasts sharply with those cases in which counsel's investigation has been deemed constitutionally insufficient.

ECF No. 136, at PAGEID # 5926.

## B.    Changes in Counsel

The Court issued the final decision dismissing the habeas petition on April 14, 2022. ECF No. 137. On May 12, 2022, several motions were filed in this case. First, Attorney W. Joseph Edwards filed a motion to withdraw as counsel for Petitioner. ECF No. 138. Next, Attorneys Kimberly Rigby and Rachel Troutman of the Office of the Ohio Public Defender filed a motion for substitution of counsel, requesting the Court substitute them for Attorney Meyers, also of the OPD, for the limited purpose of filing a motion to alter or amend the judgment pursuant to Rule 59(e). ECF No. 139. Attorneys Rigby and Troutman stated that

Attorney Meyers was no longer assigned to the Death Penalty Department of the OPD.  *Id.* at PAGEID # 5956.

Shortly after filing the motion to substitute counsel, Attorneys Rigby and Troutman filed a Motion to Alter/Amend Under Federal Rule of Civil Procedure 59(e) and/or Motion for Relief Under Rule 60(b).  ECF No. 140.  The primary basis for the motion to alter or amend is Attorneys Rigby and Troutman's assertion that Attorneys Edwards and Meyers "abandoned [Petitioner] at a crucial part of his habeas proceedings, and they completely failed to provide important, available evidence demonstrating the validity of his habeas claims."  *Id.* at PAGEID # 5958.  The motion summarizes the alleged abandonment by counsel, and Exhibits ECF No. 140-1 through ECF No. 140-4 detail the disorganized handling of Petitioner's case within the Office of the Ohio Public Defender.  This history includes several internal reassignments of the case to other attorneys within that office—and without any formal (or informal) notification to the Court. The affidavits paint a picture of a ship adrift with no one at the helm.

Finally, the Office of the Ohio Public Defender, through Attorneys Rigby and Troutman, filed a motion to withdraw as counsel for Petitioner and a request to appoint new counsel and to stay the proceedings.  ECF No. 141.  The motion requested the appointment of the Capital Habeas Unit ("CHU") for the Northern District of Ohio.

The Court granted Attorney Edwards's motion to withdraw, as well as the motion to withdraw filed by Attorneys Rigby and Troutman on behalf of the OPD.

The Court appointed the Capital Habeas Unit for the Northern District of Ohio as counsel for Petitioner. ECF No. 144. Subsequently, Attorneys Joseph E. Wilhelm and Alan Rossman of the Northern District CHU entered an appearance. After reviewing the case, Attorneys Wilhelm and Rossman filed a Reply to the Warden's Memorandum in Opposition to the pending Motion to Alter or Amend the Judgment. ECF No. 151.

## II.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 59(e), a petitioner may move to alter or amend a judgment within twenty-eight days of the district court's entry of the judgment. It is "a one-time effort to bring alleged errors in a just-issued decision to a habeas court's attention, before taking a single appeal." *Banister v. Davis*, 140 S. Ct. 1698, 1710 (2020). The Rule is designed to allow a district court "the chance 'to rectify its own mistakes in the period immediately following' its decision." *Id.* at 1703, *quoting White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982).

A Rule 59(e) motion is proper only if there is (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Clark v. United States*, 764 F.3d 653, 661 (6th Cir. 2014) (citing *Leisure Caviar v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010)). The Supreme Court recently reiterated that "a prisoner may invoke the rule only to request 'reconsideration of matters properly encompassed in' the challenged judgment. . . . Courts will not entertain arguments that could

have been but were not raised before the just-issued decision." *Banister*, 140 S. Ct. at 1708 (quoting *White*, 455 U.S. at 451). Further, Rule 59(e) is "not meant to allow a disappointed litigant to attempt to persuade the Court to change its mind." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 809 (N.D. Ohio 2010) (citing *GenCorp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).

"A 'clear error of law' occurs where the original ruling 'overlooked or disregarded' some 'argument or controlling authority' or where the moving party 'successfully points out a manifest error. . . .'" *Penley v. NPC Int'l, Inc.*, No. 13-1031, 2014 WL 12634410, at *2 (W.D. Tenn. Dec. 3, 2014), *aff'd sub nom. Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261 (6th Cir. 2015) (*quoting United States v. Ladeau*, No. 3:10-CR-00242-1, 2012 WL 5838125, at *2 (M.D. Tenn. Nov. 15, 2012)). While not well defined, it "clearly indicate[s] that a high standard applies." *Forman v. Meridian Bioscience, Inc.*, 387 F.Supp.3d 791, 796 (S.D. Ohio 2019) (quoting *Lonardo v. Travelers Indem. Co.*, 706 F.Supp.2d 766, 809 (N.D. Ohio 2010)).

Recently, the Honorable Sarah D. Morrison recognized that "[m]anifest injustice is likewise not clearly defined in case law." *Johnson v. Bobby*, Case No. 2:08cv55, ECF No. 141, 2022 WL 1656762, *2 (S.D. Ohio May 24, 2022). Judge Morrison noted that the Sixth Circuit has previously looked to the plain meaning of the words to guide its application:

> Black's Law Dictionary defines the phrase "manifest injustice" to mean: "An error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds." BLACK'S LAW DICTIONARY 982 (8th ed. 2004). Of course, as the examples suggest, more than a clear error is required; injustice must also result.

*Id.* (quoting *Volunteer Energy Servs. v. Option Energy*, 579 F. App'x 319, 330–31 (6th Cir. 2014)).

Other district courts addressing the issue have held that "manifest injustice requires that there exist a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *Williams v. Shelby Cty. Bd. Educ.*, No. 217CV02050TLPJAY, 2021 WL 698861, at \*3 (W.D. Tenn. Feb. 23, 2021) (*quoting United States v. Allen*, No. 14-20191, 2020 WL 4592901, at \*1 (E.D. Mich. Aug. 11, 2020) (internal quotation marks omitted)). It is "a fact-specific analysis that falls squarely within the discretionary authority of the Court." *Lonardo*, 706 F.Supp.2d at 809 (*citing GenCorp*, 178 F.3d at 834). "[T]he Court should weigh the importance of bringing litigation to a firm conclusion and the need to render fair and just rulings." *Id.*

## III.   DISCUSSION

The allegations set forth in Petitioner's Rule 59(e) motion and the accompanying affidavits are serious. Attorneys from the Ohio Public Defender's Office admit to abandoning Petitioner during these habeas proceedings. This abandonment, they assert, should satisfy the manifest injustice gateway to

reopen this case in order to reconsider the Court's resolution of subclaims 10(a)(i) and (ii), as well as claims three and twenty-five through twenty-seven. ECF No. 151, at PAGEID # 6158.

## A.    The Right to Counsel in Capital Habeas Proceedings

It is well settled that indigent capital defendants have a statutory right to the appointment of qualified counsel in federal habeas corpus proceedings. *McFarland v. Scott*, 512 U.S. 849 (1994). "By providing indigent capital defendants with a mandatory right to qualified legal counsel in these proceedings, Congress has recognized that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty." *Christeson v. Roper*, 135 S. Ct. 891, 893 (2015) (quoting *McFarland*, 512 U.S. at 859). In *Martel v. Clair*, 565 U.S. 648 (2012), the United States Supreme Court elaborated on the importance of this right in capital cases:

> In 1988, Congress enacted the legislation now known as § 3599 to govern appointment of counsel in capital cases, thus displacing § 3006A for persons facing execution (but retaining that section for all others). *See* Anti-Drug Abuse Act, 102 Stat. 4393–4394, 21 U.S.C. §§ 848(q)(4)–(10) (1988 ed.) (recodified at 18 U.S.C. § 3599 (2006 ed. and Supp. IV)). *The new statute grants federal capital defendants and capital habeas petitioners enhanced rights of representation, in light of what it calls "the seriousness of the possible penalty and . . . the unique and complex nature of the litigation."* § 3599(d) (2006 ed.). Habeas petitioners facing execution now receive counsel as a matter of right, not an exercise of the court's discretion. *See* § 3599(a)(2). And the statute aims in multiple ways to improve the quality of representation afforded to capital petitioners and defendants alike. Section 3599 requires lawyers in capital cases to have more legal experience than § 3006A demands. *Compare*

§§ 3599(b)–(d) *with* § 3006A(b). Similarly, § 3599 authorizes higher rates of compensation, in part to attract better counsel. *Compare* § 3599(g)(1) *with* § 3006A(d) (2006 ed. and Supp. IV). And § 3599 provides more money for investigative and expert services. *Compare* §§ 3599(f) (2006 ed.), (g)(2) (2006 ed., Supp. IV), *with* § 3006A(e) (2006 ed. and Supp. IV). As we have previously noted, those measures "reflec[t] a determination that quality legal representation is necessary" in all capital proceedings to foster "fundamental fairness in the imposition of the death penalty." *McFarland,* 512 U.S., at 855, 859, 114 S. Ct. 2568.

*Id.* at 657 (emphasis added). Because indigent capital defendants are not entitled to counsel of their choice, 18 U.S.C. § 3599 "leaves it to the court to select a properly qualified attorney." *Christeson*, 135 S. Ct. at 894.

## B.   Prior Counsel's Representation

Here, the failings of habeas counsel are stated with particularity in the accompanying affidavits attached to Petitioner's motion to alter or amend. *See* ECF No. 140-1 through 140-4. In the Rule 59(e) motion, Petitioner states:

Habeas counsel faulted trial counsel for failing to present the wealth of available mitigating evidence that 'would have helped to humanize Williams before the eyes of the jury,' and then repeated that same failure to present that evidence to the Court. Habeas counsel stated that 'Dr. Kostelny's compelling discussion of how the various forces and influences during Williams' formative and teen years combined to create a persuasive narrative in favor of mitigating a death sentence,' but this narrative never made it out of counsel's files."

ECF No. 140, at PAGEID # 5961–62.

The Court's docket reflects that after eight extensions of time, counsel filed the Traverse late, on May 4, 2009, and failed to move to supplement the record with important information despite a stated intention to do so within the text of the Traverse. ECF No. 111. An email from Attorney Meyers to Edwards dated April

30, 2009, states "we do not need an Appendix to the Traverse.  The documents we cite to will either already be in the record, or we will submit them ASAP as attachments to a Habeas Rule 7 Motion to Expand the Record (things like the juvenile records; the report from psychologist Kostelney; attorney Davidson's depo transcript."  ECF No. 140-4, at PAGEID # 5989.  Counsel did not file any such motion to expand the record.  In another email from Meyers to Edwards on October 9, 2012, Meyers states "I vaguely recall thinking years ago that we should have filed something else to perfect the arguments pending towards the end of Clifford's active litigation, but I can't for the life of me remember what it was . . . What I do know is that the docket reflects that our Traverse was the last substantive pleading filed in the case."  *Id*. at PAGEID # 5989.

Now, Attorney Meyers avers the following:

13.     By 2016 my primary duty at OPD was to represent indigent trial-level defendants facing capital indictments and other serious felony charges.  I no longer had time to devote to post-trial clients' litigation. I reached out to Richard Cline, who was then head of the Death Penalty Department at OPD.  In an email to Mr. Cline on January 28, 2016, I requested that he reassign this case to someone in the Death Penalty Department.  I specifically stated the following:

> Mr. Williams needs a seasoned DP attorney to work as co-counsel with Joe Edwards, who is no expert when it comes to capital habeas litigation.

14.     On February 4, 2016, I sent a reminder email to Mr. Cline, to which he responded, "Will do. Thanks for the reminder."

15.     On October 24, 2016, I emailed Mr. Cline again:

> Rich,

> Clifford Williams called me today (10-24-16) asking
> questions about Death Row moving; saying (as he
> always does) he can't reach Joe Edwards; asking if I or
> someone could see him before they move to help him
> understand what to expect and what if anything he needs
> to do when he arrives at Toledo; and he asked me about
> the status of his habeas case.
>
> I told him I had asked for another OPD lawyer to get on
> his team because I now travel for trial work so much; and
> I said I'd reach out to you to see if you could get someone
> from DP Dept. to contact Clifford.
>
> Over the years, Clifford has not been a pesky client; but
> it would be good if whomever is taking over for me could
> contact him soon.

ECF No. 140-1, at PAGEID # 5976–77.

Attorney Cline attests that after speaking with Attorney Meyers in early

2016, he agreed to "internally reassign" Petitioner's case as Attorney Meyers was

no longer in the death penalty unit.  ECF No. 140-2, at PAGEID # 5979, ¶ 10.

His internal records indicate that he assigned the case to himself, because "[a]t

that time, the Department was gravely understaffed and those attorneys with

significant habeas experience were overwhelmed.  I assigned the case to myself

to take the load off their shoulders and in the hopes that I would gain experience

in habeas cases.  I had limited experience in habeas matters at that time." *Id.*

Attorney Cline then attempted to involve other OPD attorneys at various

times to review and summarize the case for him as he remained engaged with

his duties as Chief Counsel of the Death Penalty Department.  In July of 2016,

Attorney Rachel Troutman conducted a limited review of Petitioner's case file and

alerted Attorney Cline by email that there were several motions dismissed without prejudice when the federal proceedings were stayed that were not refiled when the case was reactivated.  *Id.* at PAGEID # 5980, ¶ 14.  Attorney Troutman also described potential arguments to excuse procedural default.  *Id.*  Attorney Cline states that he believed another employee, Jessica Mysinger, was reviewing the case and gathering information.  However, her employment with OPD ended March 4, 2017.  *Id.* at ¶¶ 13–15.

Attorney Cline states that in 2017, he and other attorneys at OPD represented Petitioner and other capital clients in litigating state court claims based on *Hurst v. Florida*, 572 U.S. 92 (2016).  Attorney Cline avers that "[f]rom time to time, during the course of that representation, Mr. Williams would ask me about the status of his habeas case.  I told Mr. Williams what I understood to be the facts regarding his habeas case: the matter was fully briefed and we were awaiting the Court's decision."  ECF No.140-2, at PAGEID # 5981, ¶ 16.  By early 2018, the case was internally reassigned to Kandra Roberts as lead counsel, but she left her position at OPD at the end of 2018.  *Id.* at ¶¶ 17–18.

Attorney Cline states that effective April 21, 2021, Ohio adopted a new statute prohibiting capital punishment for certain individuals with serious mental illness ("SMI").  Attorneys within the OPD began reviewing the case records of various death row clients to see if they qualified for SMI relief.  *Id.* at ¶ 19.  In April 2022, attorneys within the OPD filed a postconviction petition in state court alleging that Petitioner qualified for SMI relief.  *Id.*  Attorney Melissa Jackson had

begun reviewing Petitioner's habeas case in preparation to file that state court

petition, and during her review of the Court's docket, she discovered the final

Opinion and Order dismissing this case. *Id.* at ¶ 20. Attorney Cline states:

> 20.    . . . I was not aware that the Court had ruled on Mr. Williams's remaining habeas claims in R. 136, filed 04/14/22, until Ms. Jackson told me on May 5, 2022.

> 21.    After my May 5, 2022 conversation with Ms. Jackson and after reviewing the Court's Opinion and Order I learned that, in 2009, prior counsel had represented to the Court that certain materials were not part of the district court record and that prior counsel intended to file a motion to supplement the record to include those items. Among the items identified is the report of cultural expert Kathleen Kostelny.

> 22.    I first learned of Dr. Kostelny's report (dated September 1, 1999) in March of 2022, when I was reviewing file documents for the SMI postconviction petition. At that time, I was not aware of habeas counsel's intention to move to supplement the habeas case record to include Dr. Kostelny's report (and to include other documents) nor was I aware that Dr. Kostelny's report was not part of the habeas record.

> 23.    In the press of work on the other issues for Mr. Williams and for other clients I did not return to Mr. William's federal habeas case. I did not personally do an in-depth review of the pleadings of his habeas case as planned. Consequently, I did not follow up on the issues that Ms. Troutman flagged in July of 2016 and I failed to take any action to address those issues.

> 24.    As counsel for Mr. Williams, I should have reviewed the entire habeas record in detail when I first became aware of his habeas case in 2016. Had I done that, I would have discovered the May 4, 2009 statement of prior habeas counsel in Mr. Williams' Traverse (R. 113, PageID # 538) indicating the need to supplement the habeas court record. I would also have discovered that the anticipated motion to supplement the record was never filed, and I could have asked the Court for leave to supplement the record at that time. I did not do those things. Had I done them, the Court would have been able to review the supplementary materials before it decided the merits of Mr. Williams's undefaulted habeas claim 10(a)(i).

ECF No. 140-2, at PAGEID # 5980–81.

## C.    Analysis

Petitioner argues that reopening the Court's final decision is necessary in order to prevent a manifest injustice resulting from habeas counsel's abandonment.  According to Petitioner, *Maples v. Thomas*, 565 U.S. 266 (2012), is instructive.  In that case, the United States Supreme Court found cause to excuse a procedural default which occurred when a capital inmate failed to appeal the denial of his state postconviction petition.  The petitioner had been represented in that proceeding *pro bono* by two associates at the New York law firm of Sullivan and Cromwell, who had filed the petition on his behalf in 2001.  The postconviction petition was not decided until 2003, by which time these attorneys had left Sullivan and Cromwell without withdrawing and without notifying Maples.  Later efforts to reopen the appeal period were unsuccessful.  The Supreme Court found cause to excuse the failure to appeal in what it characterized as the abandonment of Maples by his counsel.  *Id*. at 270–71.  The Supreme Court held that when an attorney "abandons his client without notice," the principal-agent relationship is "severed," and the attorney "no longer acts, or fails to act, as the client's representative."  *Id*. at 281.  Likewise, in *Holland v. Florida*, 560 U.S. 631, 651–52 (2010), the Supreme Court held that "unprofessional attorney conduct" may count as an "extraordinary circumstance" justifying equitable tolling.  Petitioner likens his situation to those cases and urges the Court to reopen the judgment in order to prevent a manifest injustice.

Petitioner submits that "[b]y their own admissions, no attorney was acting on Williams's behalf in his federal habeas action for at least the past several years." ECF No. 140, at PAGEID # 5969. According to Petitioner:

> Williams had no reason to suspect that his counsel had abandoned his habeas arguments or failed to present the available evidence. Counsel told the Court that they would "soon" be filing the motion to expand the record. Locked up on death row, without access to the electronic case management system, Williams did not have the luxury to continually monitor whether his counsel had followed through with what they had assured the Court—and him—they were going to do.
>
> Relief from judgment is justified in this case to prevent a manifest injustice. Furthermore, as this is a capital case, it would be extremely unjust to penalize Williams for uncorrected errors by his counsel when he had no idea that they were not doing their job. Under the Eighth Amendment, there is a heightened "need for reliability in the determination that death is the appropriate punishment in a specific case. *Caldwell v. Mississippi*, 472 U.S. 320, 330 (1985).

*Id*.

Respondent opposes Petitioner's request to alter or amend the judgment. ECF No. 142. According to Respondent, the ineffectiveness or incompetence of counsel during federal or state collateral postconviction proceedings is not a proper ground for relief in habeas corpus. Respondent contends that "[t]he Sixth Circuit has held repeatedly that 2254(i) precludes post-judgment relief based on habeas counsel's alleged ineffectiveness." *Id*. at PAGEID # 6129 (citing *Brooks v. Bobby*, 660 F.3d 959, 963 (6th Cir. 2011)).

Although the Undersigned did not personally appoint the counsel previously assigned to represent Petitioner in this case, the Undersigned knows counsel to be competent, attentive and professional. However, the Court is

particularly troubled by the many admitted failings of counsel in this case. This Court was not made aware that Attorney Greg Meyers was no longer internally assigned to Petitioner's case or acting as counsel for Petitioner, beginning as early as 2016. Although it is apparent that Attorney Meyers requested a formal reassignment of the case, no one at the OPD entered an appearance, notified the Court, or informally took ownership of this case in any meaningful way. At best, Petitioner's case seems to have fallen through the cracks during critical stages of these proceedings, and for years at a time. At worst, Petitioner was abandoned when he believed his case was in competent hands.

Additionally, the Court does not agree with Respondent's characterization of Petitioner's manifest injustice argument as an attempt to raise an entirely new ground for relief involving the ineffective assistance of federal habeas counsel. Petitioner does not present a new legal theory through his Rule 59(e) motion. Rather, the alleged abandonment is offered as the basis for the manifest injustice that threatens these proceedings. The Court has a statutory duty to provide Petitioner with experienced, competent counsel in order to ensure fundamental fairness in the imposition of the death penalty. This is what the *Martel* Court referred to as "enhanced rights of representation, in light of . . . the seriousness of the possible penalty and the unique and complex nature of the litigation." *Martel*, 565 U.S. at 657.

To be sure, a motion filed pursuant to Rule 59(e) should only be granted in highly unusual circumstances. These are the circumstances here. This Court

has a responsibility to ensure its decision is both equitable and in line with applicable policy aimed at guaranteeing qualified, competent counsel for federal petitioners in capital habeas corpus proceedings.  In light of the many admissions of the OPD, the Court finds it necessary to exercise its discretion to reconsider the final Opinion and Order dismissing this case.

For the foregoing reasons, the Court **GRANTS** Petitioner's timely filed Rule 59(e) motion **IN PART**, to the extent that the Court will reconsider its final decision as to subclaims 10(a)(i) and (ii) and claims three, and twenty-five through twenty-seven.  Petitioner has asserted a defect in the collateral review process that causes this Court to question whether a manifest injustice has occurred.  However, the Court is unable to determine, based on the record and briefing to date, whether Petitioner can establish that he is entitled to habeas relief and therefore entitled to an amended judgment.  The Court is of the belief that additional merits briefing is necessary.  Accordingly, the Court hereby **DIRECTS** the parties to submit a proposed briefing schedule within 15 days of the date of this Opinion and Order.  The Court further **DIRECTS** that all additional merits briefing must address the impact of the United States Supreme Court's recent decision in *Shinn v. Martinez Ramirez*, -- U.S. --, 142 S.Ct. 1718 (2022), and its applicability to the Court's consideration of any new evidence relevant to Petitioner's claims.  The briefing schedule should also include a timeline for filing a formal motion to expand the record.

## IV.    CONCLUSION

For the foregoing reasons, this Court **GRANTS** Petitioner's Motion to Alter or Amend, ECF No. 140, **IN PART**.  The Court agrees to reconsider its Opinion and Order dismissing subclaims 10(a)(i) and (ii), as well as claims three and twenty-five through twenty-seven.  The Court **DIRECTS** the parties to submit an agreed briefing schedule within 15 days of the date of this Order.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**